Alan R. Plutzik (State Bar No. 077785)
L. Timothy Fisher (State Bar No. 191626)
BRAMSON, PLUTZIK, MAHLER &
BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

Scott A. Bursor
LAW OFFICES OF SCOTT A. BURSOR
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 989-9113
Facsimile: (212) 989-9163

Anthony Vozzolo (*pro hac vice*)
Christopher Marlborough (*pro hac vice*)
FARUQI & FARUQI, LLP
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

***Attorneys for Plaintiff and the Class***

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES THOMAS, on behalf of himself and all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT N. DEBENEDICTIS, *et al.*<br><br>Defendants. | Case No. C09-05664 MHP<br><br><u>Class Action</u><br><br>**STIPULATION AND [PROPOSED] ORDER RE: 4TH MODIFIED TEMPORARY RESTRAINING ORDER** |

1

**STIPULATION**

2          WHEREAS, the parties have reached a settlement that would resolve this action and the

3   claims against defendant Robert N. DeBenedictis in the underlying action *Thomas v. Global Vision*

4   *Products, Inc.*, Alameda County Superior Court Case No. RG03091195;

5          WHEREAS, a copy of the Stipulation and Settlement Agreement is attached as Exhibit A,

6   hereto;

7          WHEREAS, Article III(A) of the Stipulation and Settlement Agreement provides as

8   follows:

9               As soon as practicable, the parties shall submit to Judge Patel in the UFTA
                Action a Fourth Modified Temporary Restraining Order ("4th Modified
10              TRO") which shall be identical to the 3rd Modified TRO except that it shall
                permit transfers provided (i) that the transfer is made for the purpose of
11              effectuating this Settlement Agreement, and (ii) that Class Counsel have
                provided prior written consent for the transfer.  Plaintiff and DeBenedictis
12              shall stipulate to the entry of the 4th Modified TRO.

13         WHEREAS, a copy of the 4th Modified Temporary Restraining Order is attached as Exhibit

14  B hereto;

15         NOW THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by plaintiff James

16  Thomas and defendant Robert DeBenedictis as follows:

17         1.     The parties hereby stipulate to the entry of the 4th Modified Temporary Restraining

18  Order.

19

20  Dated:  May 26, 2010              BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
                                      Alan R. Plutzik (State Bar No. 077785)
21                                    L. Timothy Fisher (State Bar No. 191626)
                                      2125 Oak Grove Road, Suite 120
22                                    Walnut Creek, CA  94598

23

24

25                                    By:_____/s/_____
                                                  L. Timothy Fisher
26

27                                    Counsel for Plaintiff James Thomas

28

Dated:  May 26, 2010

LECLAIR RYAN, LLP
Peter M. Hart (State Bar No. 107920)
Michael T. Conway (State Bar No. 164004)
Joseph A. Whitecavage (State Bar No. 154879)
44 Montgomery Street, 18th Floor
San Francisco, CA  94104


By:_____/s/_____
        Michael T. Conway

Counsel for Defendants Robert N. BeBenedictis, The Robert N. DeBenedictis Foundation, Gina Harrison, Susan Martino, Maryetta Sunni Prekup, Julie Martino, Avacor Products, LLC, East Side Club, LLC, 230 E. 58th Associates, LLC, Sunchaser Properties, LLC, 9th Avenue Wilton Manors, LLC, B&B Realty Development, LLC, Hanford and Henderson, LLC, 234 Townhouse, LLC, West Side Club, LLC, River Street Club, LLC, CND Properties, LLC, Blue Lagoon Motel, LLC, 3016 Windamar, LLC, 227 E. 56th Company, LLC, 835 River Bend, LLC, 1215 LLC, 511-404, LLC, 511-405, LLC, 505 Orton, LLC, 533 Orton, LLC, 543 Breakers, LLC, 717 Breakers, LLC, 528 Antioch, LLC, 2909 Vistamar, LLC, 710 N. Birch, LLC, 1164 Associates, LLC, Hollywood Acquisitions, LLC and Lorelei Property Management

## Attestation Pursuant To General Order 45

I, L. Timothy Fisher, attest that concurrence in the filing of this document has been obtained from the other signatories.  I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 26th day of May, 2010 at Walnut Creek, California.

_____/s/ L. Timothy Fisher_____

*     *     *     *     *

## ORDER

Pursuant to the parties' stipulation, IT IS SO ORDERED.  The Court will enter the 4th Modified Temporary Restraining Order

Dated:  _5/28/2010_____

THE HONORABLE
UNITED STATES D

IT IS SO ORDERED
Judge Marilyn H. Patel

# EXHIBIT A

Scott A. Bursor (*pro hac vice*)
LAW OFFICES OF SCOTT A. BURSOR
369 Lexington Ave., 10th Floor
New York, NY 10017-6531
Telephone: (212) 989-9113
Facsimile: (212) 989-9163

Anthony Vozzolo (*pro hac vice*)
Christopher Marlborough (*pro hac vice*)
FARUQI & FARUQI, LLP
369 Lexington Ave., 10th Floor
New York, NY 10017-6531
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

Alan R. Plutzik (State Bar No. 077785)
L. Timothy Fisher (State Bar No. 191626)
BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP
2125 Oak Grove Road, Suite 120
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792

Attorneys for Plaintiffs

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| JAMES THOMAS, on behalf of himself and all those similarly situated, | Case No. RG-03-091195 |
| Plaintiff, | **CLASS ACTION** |
| v. | **STIPULATION AND SETTLEMENT AGREEMENT** |
| GLOBAL VISION PRODUCTS, INC., ANTONY IMBRIOLO, DERRIKE COPE, DAVID L. GORDON, POWERTEL TECHNOLOGIES, INC., CRAIG DIX, HENRY EDELSON and ROBERT DEBENEDICTIS, | |
| Defendant. | |

1   It is hereby stipulated and agreed by and among the undersigned Parties, subject to

2   the approval of the Court pursuant to Rule 3.769 of the *California Rules of Court*, that the

3   settlement of this Action shall be effectuated pursuant to the terms and conditions set forth in this

4   Stipulation and Settlement Agreement (this "Settlement Agreement").

5   ARTICLE I.

6   PREAMBLE

7   A.   WHEREAS, plaintiff James Thomas brought this class action against the

8   marketers of the Avacor hair regrowth system on behalf of a class of California residents that

9   purchased Avacor.  The named defendants include Global Vision Products, Inc. ("Global"),

10   Anthony Imbriolo, Derrike Cope, David L. Gordon, Powertel Technologies, Inc. ("Powertel"),

11   Craig Dix, Henry Edelson ("Edeleson"), and Robert DeBenedictis ("DeBenedictis").

12   B.   WHEREAS, by order dated February 2, 2007, this Court certified a class of "all

13   California residents that purchased Avacor" (the "Class").  Subsequent orders directed the

14   provision of notice to the Class and defined the class period from January 1, 2000 through April

15   12, 2007 (the "Class Period").

16   C.   WHEREAS, Global filed for bankruptcy on August 17, 2007, resulting in an

17   automatic stay of the claims against Global pursuant to 11 U.S.C. § 362, and thereafter, the

18   bankruptcy court, on Global's motion, extended the stay to encompass the claims asserted in this

19   action against two of Global's principals, DeBenedictis and Edelson, pursuant to 11 U.S.C. §§

20   105(a) and 362(a).

21   D.   WHEREAS, on November 14, 2008, the judge in Global's bankruptcy proceeding,

22   the Honorable Robert D. Drain, approved plaintiff's settlement with Global and lifted the

23   bankruptcy stay to permit the continued litigation of the remaining claims against DeBenedictis

24   and Edelson in this Court.

25   E.   WHEREAS, the Court also granted final approval of plaintiff's settlement with

26   Global on June 5, 2009.

27   F.   WHEREAS, on October 26, 2009, this matter proceeded to trial on two counts

28   against the remaining defendants, DeBenedictis and Edelson (the "Second Trial").  Count I

- 2 -

1    asserts claims for violations of the unlawful, unfair and deceptive prongs of the UCL in

2    connection with the marketing and sale of Avacor.  These UCL claims were tried to the Court.

3    Count II asserts claims for violation of the CLRA in connection with the marketing and sale of

4    Avacor.  These claims were tried to a jury.

5          G.     WHEREAS, after a three week trial, a second jury (the "Second Jury") returned a

6    special verdict form finding (i) that DeBenedictis and Edelson both violated the CLRA directly

7    (Verdict Form Answers to Questions 1-4, and 12-15), (ii) that DeBenedictis and Edelson both

8    aided and abetted violations of the CLRA by Gordon, Imbriolo, DeBenedictis and/or Edelson

9    (Verdict Form Answers to Questions 5 and 16), (iii) that both DeBenedictis and Edelson were

10   liable for violations committed by Imbriolo, Gordon, Edelson and/or DeBenedictis under and

11   agency theory (Verdict Form Answers to Questions 6 and 17), (iv) that Edelson participated in a

12   conspiracy to violate the CLRA with Imbriolo, Gordon and/or DeBenedictis (Verdict Form

13   Answers to Question 18), (v) that Edelson furnished the means for violations of the CLRA

14   committed by Imbriolo, Gordon and/or DeBenedictis (Verdict Form Answers to Question 19),

15   and (vi) that both DeBenedictis and Edelson were liable under a theory of respondeat superior for

16   violations of the CLRA committed by Imbriolo, Gordon, Edelson and/or DeBenedictis (Verdict

17   Form Answers to Questions 9 and 20).  The Second Jury awarded the Class compensatory

18   damages of $50,024,611 against both DeBenedictis and Edelson (Verdict Form Answers to

19   Questions 10, 21 and 23).

20         H.     WHEREAS, the Court has not yet issued a statement of decision on the bench-

21   tried claims in the Second Trial, and has not yet issued a final judgment with respect to any of the

22   claims.

23         I.     WHEREAS, during the second trial, on November 3, 2009, plaintiff filed a second

24   related action against DeBenedictis and thirty-five (35) co-defendants, Case No. RG09482587,

25   California Superior Court, Alameda County asserting claims under the Uniform Fraudulent

26   Transfer Act (the "UFTA Case"), alleging that these defendants fraudulently transferred tens of

27   millions of dollars in assets out of DeBenedictis's possession, which rendered DeBenedictis

28   insolvent and unable to pay the anticipated judgment from the Second Trial.

- 3 -

1    J.    WHEREAS, on November 20, 2009, Judge Robert Freedman granted plaintiff's

2    motion for a Temporary Restraining Order (TRO) freezing DeBenedictis's assets to prevent

3    further fraudulent transfers.

4    K.    WHEREAS, on December 2, 2009, the UFTA Case defendants removed the

5    UFTA Case to the United States District Court for the Northern District of California, where it is

6    now pending as case no. 09-05664-MHP;

7    L.    WHEREAS, Judge Marilyn H. Patel of the United States District Court for the

8    Northern District of California has modified and renewed the asset-freeze TRO from time to time,

9    and the most recent version of the TRO, the Third Modified Temporary Restraining Order,

10   entered February 12, 2010, is presently in effect;

11   M.    WHEREAS, the parties to this Stipulation And Settlement Agreement have

12   engaged in extensive arms-length negotiations spanning more than three years, and have

13   participated in numerous mediation sessions with Judge Jon S. Tigar and Judge Nicholas H.

14   Politan (Ret.);

15   N.    WHEREAS, the plaintiff and Class Counsel counsel believe that their claims are

16   meritorious, but have concluded that, in light of the costs, risks, and delay that will necessarily be

17   entailed by post-trial and appellate proceedings in this Action, litigation of the related UFTA

18   Case, and the difficulties of collection, and in the desire to provide relief to the Settlement Class

19   sooner rather than later, this Settlement is fair, reasonable, adequate, and in the best interests of

20   the Settlement Class.

21   O.    WHEREAS, DeBenedictis denies any liability and expressly preserves his rights to

22   appeal, but have concluded, in light of the costs, disruption, and risks of continued litigation, that

23   this Settlement is appropriate on the terms and conditions set forth herein.

24   NOW THEREFORE, it is hereby stipulated and agreed that, in consideration of

25   the agreements, promises, and covenants set forth in this Stipulation and Settlement Agreement,

26   and subject to approval of the Court, all claims asserted by the Releasing Parties against the

27   Released Party shall be fully and finally settled and dismissed with prejudice under the following

28   terms and conditions:

- 4 -

1

### ARTICLE II.

2

### DEFINITIONS

3        As used in this Agreement and the related documents attached hereto as exhibits,

4    the following terms shall have the meanings set forth below:

5        A.      "Class Action" means the civil action now titled *Thomas v. Global Vision*

6    *Products, Inc., et al.,*  Alameda County Superior Court, Case No. RG-03-091195.

7        B.       "Class Counsel" means Law Offices of Scott A. Bursor, Bramson, Plutzik,

8    Mahler, & Birkhaeuser, LLP, and Faruqi & Faruqi, LLP.

9        C.      "Class Representatives" means plaintiff James Thomas and class members Chris

10   Monet, Butch Watson, and Chris Gray.

11       D.      "Court" means the Superior Court of the State of California for the County of

12   Alameda.

13       E.      "Defendant's Counsel" means LeClairRyan LLP.

14       F.       "Effective Date" means the first day by which all of the following events shall

15   have occurred: (a) the Court has entered the Preliminary Approval Order as set forth in Article

16   VII.A of this Agreement; (b) the Court has entered the Final Approval Order and Judgment as set

17   forth in Article VII.C of this Agreement; (c) the Final Approval Order and Judgment has become

18   Final as defined in Article II of this Agreement; and (d) the Settlement Trustee has paid all

19   claims.

20       G.       "Fee and Expense Application" means that written motion or application by

21   which Class Counsel requests that the Court award them fees and/or expenses and grant incentive

22   awards to the Class Representatives.

23       H.      "Final," with respect to the Final Approval Order and Judgment (as defined in

24   Article II of this Agreement), means that such order has been entered on the docket in the Class

25   Action, and (a) the time to appeal from such order has expired and no appeal has been timely

26   filed, (b) if such an appeal has been filed, it has finally been resolved and has resulted in an

27   affirmation of the Final Approval Order and Judgment, or (c) this Court following the resolution

28   of the appeal enters a further order or orders approving settlement on the terms set forth herein,

- 5 -

1 and either no further appeal is taken from such order(s) or any such appeal results in affirmation

2 of such order(s). Neither the Fee and Expense Application in this Court nor any appeal pertaining

3 solely to a decision on the Fee and Expense Application shall in any way delay or preclude the

4 Final Approval Order and Judgment from being Final.

5      I.      "Final Approval Hearing" means the hearing at which the Court shall: (a)

6 determine whether to grant final approval to this Settlement Agreement; and (b) consider any

7 timely objections to this Settlement and all responses to objections by the Parties.

8      J.      "Final Approval Order and Judgment" means the order, substantially in the form

9 attached hereto as Exhibit B, in which the Court grants final approval of this Settlement

10 Agreement and authorizes the entry of a final judgment and dismissal of the Class Action.

11      K.      "Notice" means the Court-approved form of Notice of the Settlement Agreement

12 to the Settlement Class for publication in national newspapers and/or periodicals, substantially in

13 the form of Exhibit E hereto.

14      L.      "Parties" means the plaintiff, James Thomas and DeBenedictis.

15      M.      "Person" or "Persons" means any natural person, firm, corporation, unincorporated

16 association, partnership or other form of legal entity or government body, including its agents and

17 representatives.

18      N.      "Preliminary Approval Order" means the order, substantially in the form of

19 Exhibit A hereto, in which the Court grants its preliminary approval to this Settlement

20 Agreement, and authorizes dissemination of Notice to the Settlement Class.

21      O.      "Released Claims" means any and all actions, causes of action, claims, demands,

22 liabilities, obligations, fees, costs, sanctions, proceedings and/or rights of any nature and

23 description whatsoever, whether liquidated or unliquidated, known or unknown, in law, equity,

24 arbitration, or otherwise, whether or not concealed or hidden, that in any way relate to, in whole

25 or in part, or arise out of, any of the allegations, claims, and/or theories raised in or that could

26 have been asserted against the Released Parties in the Class Action or UFTA Action.

27      P.      "Released Parties" means DeBenedictis and Edelson.

28

- 6 -

1    Q.    "Releasing Parties" means Class Representatives and each Settlement Class

2    Member.

3    R.    "Request for Exclusion" means a request for exclusion from the Settlement Class,

4    submitted pursuant to the instructions set forth in the Notice, postmarked at least thirty (30) days

5    prior to the date set for the Final Approval Hearing.  To be valid, a Request for Exclusion must

6    (a) be submitted by the member of the Settlement Class, if the submitter is a natural person, or by

7    an authorized representative, if the submitter is an association or entity other than a natural

8    person; (b) be timely submitted to Defendant's Counsel and the administrator selected by Class

9    Counsel; and (c) contain the submitter's name, address and telephone number.

10    S.    "Settlement Agreement," "Settlement," or "Agreement" means this Stipulation

11    and Settlement Agreement, including the attached Exhibits.

12    T.    "Settlement Class" means the class certified by the Court's Order of February 2,

13    2007, and as modified by subsequent orders, defined as "All California residents that purchased

14    Avacor from January 1, 2000 through April 12, 2007."

15    U.    "Settlement Class Member(s)" means any Person within the Settlement Class who

16    does not submit a timely and valid Request for Exclusion.

17    V.    "Settlement Trust" means the trust established by the Settlement Trust Agreement,

18    annexed hereto as Exhibit C.

19    W.    'Settlement Trust Agreement" means the agreement annexed hereto as Exhibit C.

20    X.    "Settlement Trustee" means the individual and/or entity identified as such in the

21    Settlement Trust Agreement annexed hereto as Exhibit C.

22    Y.    "UFTA Action" means *Thomas v. DeBenedictis, et al.*, Case No. 09-05664-MHP,

23    now pending before the United States District Court for the Northern District of California.

24    Z.    "Valid Claim" means a claim submitted by a Settlement Class Member that is

25    received by the Settlement Administrator on or before December 31, 2010, complies with the

26    terms of this Settlement Agreement, and which includes the Settlement Class Member's full

27    name, current address, and a statement under penalty of perjury attesting that the Settlement Class

28

- 7 -

1     Member is a member of the Settlement Class and has not received a refund from any other source

2     in connection with his or her purchase of Avacor.

ARTICLE III.

SETTLEMENT CLASS RELIEF

5           In consideration of a full, complete, and final settlement of the Released Claims, and

6     subject to the Court's approval, the Parties agree to the following:

7           A.      As soon as practicable, the parties shall submit to Judge Patel in the UFTA Action

8     a Fourth Modified Temporary Restraining Order ("4th Modified TRO") which shall be identical to

9     the 3rd Modified TRO except that it shall permit transfers provided (i) that the transfer is made for

10     the purpose of effectuating this Settlement Agreement, and (ii) that Class Counsel have provided

11     prior written consent for the transfer.  Plaintiff and DeBenedictis shall stipulate to the entry of the

12     4th Modified TRO.

13           B.      Within five (5) days after notice of entry of the Preliminary Approval Order is

14     provided to Defendant's Counsel via e-mail, DeBenedictis shall transfer to the Settlement Trust

15     the cash and assets specified in the Settlement Trust Agreement, and/or shall otherwise grant

16     to the Settlement Trustee, pursuant to an Irrevocable Power of Attorney in a form substantially

17     similar to that which is attached hereto as Exhibit D, the exclusive and irrevocable authority to

18     sell any or all of the assets specified in the Settlement Trust Agreement upon terms and

19     conditions set forth in the Settlement Trust Agreement or otherwise approved by joint written

20     instruction of the Class Counsel and DeBenedictis.  DeBenedictis shall also commence providing

21     to the Settlement Trustee his full cooperation and best efforts to assist the Settlement Trustee in

22     liquidating these assets in accordance with the terms of the Settlement Trust Agreement.

23           C.      The proceeds of the Settlement Trust shall be distributed at the following times in

24     the following order of priority:

25              1.      The costs of notice and administration of the Settlement Class Relief shall

26     be paid when due.

27

28

- 8 -

1           2.      The compensation and expenses of the Settlement Trustee (as defined in

2    the Settlement Trust Agreement) shall be paid as provided in Articles 2 and 7 of the Settlement

3    Trust Agreement.

4           3.      Attorneys' Fees and Expenses in the amounts approved by the Court shall

5    be paid as soon as funds become available after the Settlement Trustee receives notice of the

6    Court's Order approving the amounts of Attorneys' Fees and Expenses.

7           4.      Class Representative Incentive Awards in the amounts approved by the

8    Court shall be paid as soon as funds become available after the Settlement Trustee receives notice

9    of the Court's Order approving the amounts of the Class Representative Incentive Awards.

10          5.      The claims of Settlement Class Members shall be paid as follows:

11   (a) Within 30 days after the end of the Claims Period, the Settlement Administrator shall provide

12   to the parties and to the Settlement Trustee a report stating the number of Valid Claims filed by

13   members of the Settlement Class; (b) As soon as funds become available after receiving the report

14   of the Settlement Administrator, the Settlement Trustee shall make payment to the Settlement

15   Administrator in the amount of the product of $190 and the number of Valid Claims, in

16   accordance with the provisions set forth in Article III.C.6; (c) within a reasonable time after

17   receiving funds from the Settlement Trustee the Settlement Administrator shall make payment to

18   class members in the amount of $190 per Valid Claim.

19          6.      The sum of one million dollars ($1,000,000.00), without interest, shall be

20   paid to the Estate of Global Vision Products, Inc. pursuant to the settlement agreement among and

21   between Robert N. DeBenedictis and Hobart G. Truesdell, in his capacity as chapter 11 trustee of

22   the Estate of Global Vision Products, Inc., attached hereto as Exhibit F, in the following manner:

23   After $300,000 has been paid to the Settlement Administrator under Article III.C.5, the

24   Bankruptcy Estate of Global Vision Products, Inc. and the Settlement Administrator shall receive

25   the proceeds of the Settlement Trust from the Settlement Trustee such that the Estate receives

26   twenty-five percent (25%) of said proceeds and the Settlement Administrator receives seventy-

27   five percent (75%) of said proceeds (to be used for the payment of Valid Claims) until such time

28   as the payment to the estate referenced in this Article III.C.6 has been satisfied in full.

- 9 -

1        7.      Upon the payment in full of all amounts due under Articles III.C.1-7, the

2   Settlement Trustee shall wind up the affairs of the Settlement Trust and terminate it in accordance

3   with the provisions of Article 9 of the Settlement Trust Agreement.

4                                    ARTICLE IV.

5                        NOTICE AND REQUESTS FOR EXCLUSION

6        A.      Notice.  Notice to the Settlement Class shall be provided in the form approved by

7   the Court in the Preliminary Approval Order, in newspapers, periodicals and/or other related print

8   media as set forth in the Preliminary Approval Order, and by regular mail to all class members

9   who can be identified through reasonable effort.  The Notice shall be substantially in the same

10  form as the exemplar submitted as Exhibit E.  The Notice will begin promptly after entry of the

11  Preliminary Approval Order on a date to be agreed upon by the Parties so as to provide the best

12  practical notice to the Settlement Class. The dissemination of the Notice shall be administered by

13  an administrator selected by Class Counsel.

14       B.      Proof of Notice.  Class Counsel, or the administrator selected by Class Counsel,

15  shall attest to the measures undertaken to provide the Notice to Class Members, no later than 30

16  days after the publication of the Notice.

17       C.      Costs of Notice and Administration.  The Settlement Trust shall pay all costs

18  associated with Notice as provided in the Settlement Trust Agreement.

19       D.      Best Notice Practicable.  As set forth in the Preliminary Approval Order,

20  compliance with the procedures described in this Article is the best notice practicable under the

21  circumstances and shall constitute due and sufficient notice to the Settlement Class of the terms of

22  the Settlement Agreement and the Final Approval Hearing, and shall satisfy the requirements of

23  the California Rules of Court, the California Code of Civil Procedure, the Constitution of the

24  State of California, the United States Constitution, and any other applicable law.

25       E.      Inquiries From Settlement Class Members.  It shall be the responsibility of Class

26  Counsel to respond to all inquiries from Settlement Class Members with respect to this

27  Settlement.

28       F.      Report On Requests For Exclusion.  It is the responsibility of Class Counsel, or the

                                         - 10 -

1   administrator selected by Class Counsel to determine which individuals have filed a valid and

2   timely Request for Exclusion.  At least twenty-one (21) days before the date of the Final

3   Approval Hearing, Class Counsel shall file with the Court a report stating the total number of

4   Persons who have submitted a timely and valid Request for Exclusion from the Settlement Class,

5   and the names of such Persons.

6

7                                        ARTICLE V.
    PAYMENT OF ADMINISTRATIVE EXPENSES, ATTORNEYS' FEES AND EXPENSES,
8                 AND CLASS REPRESENTATIVE INCENTIVE AWARDS

9                  The administrative expenses of this Settlement, the attorneys' fees and costs of

10  Class Counsel, and Class Representatives' incentive awards shall be paid as follows:

11         A.     Costs Of Notice.  The Settlement Trustee shall pay all costs of providing notice of

12  the proposed Settlement to the Settlement Class from the proceeds of the Settlement Trust.  No

13  party shall seek to recover the costs of providing notice in the event, for any reason, the proposed

14  Settlement is not approved.

15         B.     Costs Of Administering Settlement.  The Settlement Trustee shall pay all costs of

16  administering the proposed Settlement from the proceeds of the Settlement Trust.  No party shall

17  seek to recover the costs of administration in the event, for any reason, the proposed Settlement is

18  not approved.

19         C.     Attorneys' Fees And Expenses.  Class Representatives will make a Fee and

20  Expense Application to be heard at the Final Approval Hearing.  Class Counsel shall apply to the

21  Court for an award of attorneys' fees and reimbursement of expenses in an amount not to exceed

22  $9,963,000, to be paid from the proceeds of the Settlement Trust in accordance with the terms of

23  the Settlement Trust Agreement.  Mr. DeBenedictis will not oppose or undermine the application

24  or solicit others to do so.  Class Counsel shall not apply for any fees or expenses in excess of

25  $9,000,000 if such fees or expenses would result in the aggregate amount of fees, expenses,

26  incentive awards, and costs of notice and administration to exceed $10,000,000.

27         D.     Class Representative Incentive Awards.  Class Representatives will make an

28  application for incentive awards in an amount not to exceed $37,000 in the aggregate ($25,000 for

                                            - 11 -

1   James Thomas, $5,000 for Chris Monet, $5,000 for Butch Watson, and $2,000 for Chris Gray), to

2   be paid from the proceeds of the Settlement Trust in accordance with the terms of the Settlement

3   Trust Agreement.  Mr. DeBenedictis will not oppose or undermine the application or solicit

4   others to do so.

5         E.      Effect On Settlement.  The Parties agree that the rulings of the Court regarding the

6   amount of attorneys' fees or costs, class representative incentive awards, and any claim or dispute

7   relating thereto, will be considered by the Court separately from the remaining matters to be

8   considered at the Final Approval Hearing as provided for in this Settlement Agreement.  Any

9   order or proceedings relating to the amount of attorneys' fees, including any appeals from or

10   modifications or reversals of any order related thereto, shall not operate to modify, reverse,

11   terminate, or cancel the Settlement Agreement, affect the Releases provided for in the Settlement

12   Agreement, or affect whether the Final Approval Order and Judgment are final.

13

14   ARTICLE VI.<br>RELEASES

15

16         In order to effectuate the Parties' desire to fully, finally and forever settle,

17   compromise, and discharge all disputes arising from or related to the Class Action and UFTA

18   Action by way of compromise rather than by way of further litigation, the Parties enter into the

19   following releases:

20         A.      On the Effective Date, Class Representatives and each and every Settlement Class

21   Member shall be bound by this Settlement Agreement and shall have recourse exclusively to the

22   benefits, rights and remedies provided hereunder.  No other action, demand, suit or other claim

23   may be pursued against the Released Parties with respect to the Released Claims by the Releasing

24   Parties.

25         B.      On the Effective Date, the Releasing Parties shall be deemed to have, and by

26   operation of this Agreement shall have, fully, finally and forever released, relinquished and

27   discharged the Released Parties from any and all of the Released Claims that the Releasing

28   Parties now have, own or hold, or claim to now have, own, or hold against the Released Parties at

- 12 -

1   any time heretofore have had, owned, or held, or claimed to have had, owned or held against the

2   Released Parties, or that the Releasing Parties may or could have, own or hold against the

3   Released Parties.

4        C.      On the Effective Date, the Releasing Parties shall be deemed to have, and by

5   operation of this Agreement shall have, with respect to the subject matter of the Released Claims,

6   expressly waived the benefits of any statutory provisions or common law rule that provides, in

7   sum or substance, that a general release does not extend to claims which the party does not know

8   or suspect to exist in its favor at the time of executing the release, which if known by it, would

9   have materially affected its settlement with any other party.  In particular, but without limitation,

10  the Releasing Parties waive the provisions of Cal. Civ. Code § 1542 (or any like or similar statute

11  or common law doctrine), and do so understanding the significance of that waiver.  Section 1542

12  provides:

13

14     **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
    WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT
15     TO EXIST IN HIS OR HER FAVOR AT THE TIME OF
    EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
16     OR HER MUST HAVE MATERIALLY AFFECTED HIS OR
    HER SETTLEMENT WITH THE DEBTOR.**

17

18        D.      In entering into this Settlement Agreement, the Parties each assume the risk of any

19  mistake of fact or law.  If they, or any of them, should later discover that any fact which they

20  relied upon in entering this Agreement is not true, or that their understanding of the facts or law

21  was incorrect, they shall not be entitled to modify, reform, or set aside this Settlement Agreement,

22  in whole or in part, by reason thereof.

23        E.      This Settlement Agreement may be pled as a full and complete defense to any

24  Released Claims that may be instituted, filed, prosecuted, or attempted.  The Releasing Parties

25  covenant that they will not institute or prosecute, against the Released Parties, or any of them, any

26  action, suit or other proceeding based in whole or in part upon any of the Released Claims.

27        F.      The Parties, and each of them, covenant and agree that this Settlement Agreement

28  may be used as a basis for a temporary restraining order, preliminary injunction and permanent

injunction against any breach of this Agreement.  The Parties judicially admit hereby for all purposes that time is of the essence as to all terms and conditions of the Settlement Agreement and that damages for a breach of this Settlement Agreement would be inadequate.

**ARTICLE VII.**
**COURT APPROVAL OF THE SETTLEMENT**

The Parties shall use their respective best efforts to obtain Court approval of this Settlement Agreement.  The process for obtaining Court approval of this Settlement Agreement shall be as follows:

A.    Preliminary Approval.  As soon as practicable after the execution of this Settlement Agreement, Class Counsel and Defense Counsel shall jointly apply for entry of the Preliminary Approval Order in the form of Exhibit A hereto.  The Preliminary Approval Order shall include provisions: (1) preliminarily certifying the Settlement Class for settlement purposes only; (2) preliminarily approving this Settlement and finding this Settlement sufficiently fair, reasonable and adequate to allow Notice to be disseminated to the Settlement Class; (3) approving the form of the Notice; (4) setting a schedule for proceedings with respect to final approval of this Settlement; and (5) providing that, pending entry of a Final Approval Order and Judgment, neither the Class Representatives nor any Settlement Class Member (either directly, in a representative capacity, or in any other capacity) shall commence or continue any action against a Released Party asserting any of the Released Claims and that all proceedings in the Class Action are stayed, other than such proceedings as are related to this Settlement.

B.    Objections To Settlement.  Any Settlement Class Member wishing to object to or oppose the approval of this Settlement, the Fee and Expense Application, and/or the Class Representative Incentive Awards shall inform the Court and the Parties in writing of his or her intent to so object or oppose, and the bases therefore, by following the procedure set forth in the Notice.  Such papers submitted in support of said objections shall be considered by the Court at the Final Approval Hearing only if, on or before the date(s) specified in the Notice and Preliminary Approval Order, such objector files with the Court a notice of the objector's intention

- 14 -

1    to appear, submits documentary proof that the objector is a Class Member, states the basis for

2    such objections, and serves copies of the foregoing and any other papers in support of such

3    objections upon Defense Counsel and Class Counsel so that such papers are actually received by

4    said counsel by the date specified in the Notice.  Any Settlement Class Member who fails to file

5    such a written statement of his or her intention to object or oppose, and the bases therefore, shall

6    be foreclosed from making such objection or opposition, except as permitted by the Court.  The

7    Class Representatives will file with the Court their motion in support of final settlement approval

8    and in response to any objections, Fee and Expense Application, and supporting papers, at least

9    seven (7) days before the date of the Final Approval Hearing.

10        C.    Final Approval Hearing.  Class Counsel and Defendant's Counsel shall jointly

11    request that the Court, on the date set forth in the Preliminary Approval Order, which shall be

12    approximately sixty (60) days after the publication of Notice, conduct a Final Approval Hearing

13    in order to: (1) determine whether to grant final approval to this Settlement Agreement; (2)

14    consider any timely objections to this Settlement and the Parties' responses to such objections; (3)

15    rule on the Fee and Expense Application, and (4) rule on the application for Class Representative

16    Incentive Awards.  At the Final Approval Hearing, the Parties shall ask the Court to give final

17    approval to this Settlement Agreement.  If the Court grants final approval to this Settlement

18    Agreement, then the Parties shall jointly ask the Court to enter a Final Approval Order and

19    Judgment, substantially in the form of Exhibit B hereto, which approves this Settlement,

20    authorizes entry of a final judgment, dismisses the Class Action with prejudice, directs the

21    dismissal or withdrawal of the UFTA Action with prejudice, and dismisses the Released Claims

22    with prejudice.

23        D.    Disapproval, Cancellation, Termination, Or Nullification Of Settlement.  Except as

24    otherwise provided herein, if either (i) the Court, by a final ruling not subject to reconsideration,

25    appellate review, or other further proceedings seeking judicial approval of this Settlement

26    Agreement, denies preliminary approval or final approval to this Settlement Agreement, or (ii) the

27    Final Approval Order and Judgment does not become Final, then the plaintiff (acting through

28    Class Counsel) and DeBenedictis each shall have the right to terminate this Settlement

- 15 -

1  Agreement.  If a Party elects to terminate this Agreement under this paragraph, that Party must

2  provide written notice ("Termination Notice") to the other Parties' counsel within thirty (30) days

3  of the occurrence of the condition permitting termination.  Termination Notice shall be provided

4  by hand delivery or first-class mail to the Parties' counsel as identified in Article II.

5      If this Settlement Agreement is terminated pursuant to its terms, then: (i) this Settlement

6  Agreement shall be rendered null and void; (ii) this Settlement Agreement and all negotiations

7  and proceedings relating hereto shall be of no force or effect, and without prejudice to the rights

8  of the Parties, and (iii) all Parties shall be deemed to have reverted to their respective status in the

9  Class Action and the UFTA Action as of the date and time immediately preceding the execution

10 of this Settlement Agreement and, except as otherwise expressly provided, the Parties shall stand

11 in the same position and shall proceed in all respects as if this Settlement Agreement and any

12 related orders had never been executed, entered into, or filed, except that the Parties shall not seek

13 to recover from one another any fees, costs or expenses incurred in connection with this

14 Settlement.

15

16                     ARTICLE VIII.
       STAY AND DISMISSAL OF UFTA ACTION

17

18     A.      Within ten (10) court days after execution of this Stipulation And Settlement

   Agreement, Class Counsel shall take all necessary steps to stay the UFTA Action.

19

20     B.      Within ten (10) court days after the Effective Date, Class Counsel shall take all

   necessary steps to vacate the 4th Modified TRO and to dismiss or withdraw the UFTA Action

21 with prejudice.

22

23                      ARTICLE IX.
      LIMITATIONS ON USE OF SETTLEMENT AGREEMENT

24

25     The Parties' use of the settlement agreement shall be limited as follows:

26     A.      No Admission.  Neither the acceptance by DeBenedictis of the terms of this

27 Settlement Agreement nor any of the related negotiations or proceedings is or shall be construed

28 as or deemed to be legal evidence of an admission by a Released Party with respect to the merits

                          - 16 -

1  of the claims alleged in the Class Action, UFTA Action, or bankruptcy proceedings.

2  DeBenedictis specifically denies any liability or wrongdoing of any kind associated with the

3  claims alleged in the Class Action or the UFTA Action.

4          **B.**     **No Evidentiary Use.**  This Agreement shall not be used, offered or received into

5  evidence in the Class Action, UFTA Action, or bankruptcy proceedings for any purpose other

6  than to enforce, construe or finalize the terms of the Settlement Agreement and/or to obtain the

7  preliminary and final approval by the Court of the terms of the Settlement Agreement.  Neither

8  this Agreement nor any of its terms shall be offered or received into evidence in any other action

9  or proceeding.

10

11  **ARTICLE X.**<br>**MISCELLANEOUS PROVISIONS**

12

13          **A.**     **No Assignment.**  Each Party represents, covenants and warrants that he, she or it

14  has not directly or indirectly assigned, transferred, encumbered or purported to assign, transfer, or

15  encumber to any person or entity any portion of any liability, claim, demand, cause of action or

16  rights that he or she herein releases.

17          **B.**     **Binding On Assigns.**  This Agreement shall be binding upon and inure to the

18  benefit of the Parties and their respective heirs, trustees, executors, successors and assigns.

19          **C.**     **Captions And Interpretations.**  Paragraph titles or captions contained herein are

20  inserted as a matter of convenience and for reference, and in no way define, limit, extend or

21  describe the scope of this Agreement or any provision hereof.  Each term of this Agreement is

22  contractual in nature and form a material part of this Stipulation of Settlement and is not merely a

23  recital.

24          **D.**     **Construction.**  The Parties agree that the terms and conditions of this Settlement

25  Agreement are the result of lengthy, intensive arms'-length negotiations between the Parties and

26  that this Agreement shall not be construed in favor or against any Party by reason of the extent to

27  which any Party, or his, her or its counsel, participated in the drafting of this Agreement.

28

- 17 -

1    E.    Counterparts.  This Agreement, and any amendments hereto, may be executed in

2    any number of counterparts, and any Party may execute any such counterpart, each of which

3    when executed and delivered shall be deemed to be an original and all of which counterparts

4    taken together shall constitute one and the same instrument.  A signature transmitted by electronic

5    mail or facsimile shall be deemed an original signature for purposes of this Settlement

6    Agreement.

7    F.    Governing Law.  Construction and interpretation of the Agreement shall be

8    determined in accordance with the laws of the State of California, irrespective of the State of

9    California's choice of law principles.

10    G.    Integration Clause.  This Agreement, including the Exhibits referred to herein,

11    which form an integral part hereof, contains the entire understanding of the Parties in respect of

12    the subject matter contained herein. There are no promises, representations, warranties, covenants

13    or undertakings governing the subject matter of this Agreement other than those expressly set

14    forth in this Agreement.  This Agreement supersedes all prior agreements and understandings

15    among the Parties with respect to the settlement of the Class Action and UFTA Action.  This

16    Agreement may not be changed, altered or modified, except in a writing signed by the Parties and

17    approved by the Court.  This Agreement may not be discharged except by performance in

18    accordance with its terms or by a writing signed by the Parties.

19    H.    Jurisdiction.  The Court shall retain jurisdiction, after entry of the Final Approval

20    Order, with respect to enforcement of the terms of this Settlement, and all Parties and Settlement

21    Class Members submit to the exclusive jurisdiction of the Court with respect to the enforcement

22    of this Settlement and any dispute with respect thereto.

23    I.    No Collateral Attack.  This Agreement shall not be subject to collateral attack by

24    any Settlement Class Member at any time on or after the Effective Date.  Such prohibited

25    collateral attacks shall include claims that a Settlement Class Member's claim was improperly

26    denied, that the payment to a Settlement Class Member was improperly calculated, and/or that a

27    Settlement Class Member failed to receive timely notice of the Settlement Agreement.

28

- 18 -

1    J.    Parties' Authority.  The signatories hereto hereby represent that they are fully

2    authorized to enter into this Agreement and bind the Parties to the terms and conditions hereof.

3    K.    Prior Settlements.  The terms of prior settlements in this action shall remain in

4    effect to the extent they are not expressly modified by this Settlement Agreement and are not

5    otherwise inconsistent with the terms of this Settlement Agreement.

6    L.    Receipt Of Advice Of Counsel.  The Parties acknowledge, agree, and specifically

7    warrant to each other that they have read this Settlement Agreement, have received legal advice

8    with respect to the advisability of entering into this Settlement, and fully understand its legal

9    effect.

10    M.    Waiver Of Compliance.  Any failure of any Party to comply with any obligation,

11    covenant, agreement or condition herein may be expressly waived in writing, to the extent

12    permitted under applicable law, by the Party or Parties entitled to the benefit of such obligation,

13    covenant, agreement or condition.  A waiver or failure to insist upon strict compliance with any

14    representation, warranty, covenant, agreement or condition shall not operate as a waiver of, or

15    estoppel with respect to, any subsequent or other failure.

16

17

18

19

20

21

22

23

24

25

26

27

28

STIPULATION AND SETTLEMENT AGREEMENT

1    IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS

2    SETTLEMENT AGREEMENT ON THE DATES SET FORTH BELOW:

3

4

5    DATED: May  21  , 2010

6                                             _____
                                              Robert N. DeBenedictis
7

8

9    DATED: May _____, 2010

10                                            _____
                                              James Thomas, Class Representative
11

12               APPROVED AS TO FORM AND CONTENT.

13   DATED: May  21  , 2010              LAW OFFICES OF SCOTT A. BURSOR

14

15                                       By: _____
                                              Scott A. Bursor
16

17   DATED: May _____, 2010            BRAMSON, PLUTZIK, MAHLER, &
                                         BIRKHAEUSER, LLP
18

19                                       By: _____
                                              Alan. R. Plutzik
20

21   DATED: May _____, 2010            FARUQI & FARUQI LLP

22

23                                       By: _____
                                              Anthony Vozzolo
24

25   DATED: May  21  , 2010              LECLAIR RYAN LLP

26

27                                       By: _____
                                              Michael T. Conway

28

                                 - 20 -
          STIPULATION AND SETTLEMENT AGREEMENT

IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS

SETTLEMENT AGREEMENT ON THE DATES SET FORTH BELOW:


DATED: May 21, 2010

_____
Robert N. DeBenedictis


DATED: May 24, 2010

_____
James Thomas, Class Representative


APPROVED AS TO FORM AND CONTENT.

DATED: May 21, 2010                         LAW OFFICES OF SCOTT A. BURSOR

                                            By: _____
                                                Scott A. Bursor

DATED: May _____, 2010                      BRAMSON, PLUTZIK, MAHLER, &
                                            BIRKHAEUSER, LLP

                                            By: _____
                                                Alan. R. Plutzik

DATED: May 24, 2010                         FARUQI & FARUQI LLP

                                            By: _____
                                                Anthony Vozzolo

DATED: May 21, 2010                         LECLAIR RYAN LLP

                                            By: _____
                                                Michael T. Conway

- 20 -
STIPULATION AND SETTLEMENT AGREEMENT

1    IN WITNESS WHEREOF, THE PARTIES HAVE EXECUTED THIS

2    SETTLEMENT AGREEMENT ON THE DATES SET FORTH BELOW:

3

4

5    DATED: May _21_, 2010

6                                               _____
                                                Robert N. DeBenedictis
7

8

9    DATED: May _____, 2010

10                                              _____
                                                James Thomas, Class Representative
11

12              APPROVED AS TO FORM AND CONTENT.

13   DATED: May _21_, 2010                      LAW OFFICES OF SCOTT A. BURSOR

14
                                                By: _____
15                                                  Scott A. Bursor

16
     DATED: May _21_, 2010                      BRAMSON, PLUTZIK, MAHLER, &
17                                              BIRKHAEUSER, LLP

18
                                                By: _____
19                                                  Alan. R. Plutzik

20

21   DATED: May _____, 2010                   FARUQI & FARUQI LLP

22

23                                              By: _____
                                                    Anthony Vozzolo
24

25   DATED: May _21_, 2010                      LECLAIR RYAN LLP

26
                                                By: _____
27                                                  Michael T. Conway

28

                              - 20 -
     STIPULATION AND SETTLEMENT AGREEMENT

**EXHIBIT A**

1
2
3
4
5
6
7
8                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9                         IN AND FOR THE COUNTY OF ALAMEDA
10

| | |
|---|---|
| 11   JAMES THOMAS, on behalf of himself and all those similarly situated, | Case No. RG03-091195 |
| 12                          Plaintiffs, | Assigned to: Judge Robert B. Freedman |
| 13        v. | **[PROPOSED] ORDER RE: PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT** |
| 14   GLOBAL VISION PRODUCTS, INC., ANTHONY IMBRIOLO, DERRIKE COPE, DAVID L. GORDON, POWERTEL TECHNOLOGIES, INC., CRAIG DIX, HENRY EDELSON and ROBERT DEBENEDICTIS, | |
| 15 16 17 | |
| 18                          Defendants. | |

19
20
21
22
23
24
25
26
27
28

1     WHEREAS, Plaintiff James Thomas and Defendant Robert N. DeBenedictis have reached a

2 proposed settlement and compromise of the disputes between them in this action (the

3 "Settlement"), which is embodied in the Stipulation and Settlement Agreement (the "Settlement

4 Agreement") filed with the Court;

5     WHEREAS, the parties have applied to the Court for preliminary approval of the proposed

6 Settlement of this action, the terms and conditions of which are set forth in the Settlement

7 Agreement;

8     AND NOW, the Court, having read and considered the Settlement Agreement and

9 accompanying documents and the Motion for Preliminary Settlement Approval and supporting

10 papers, and the parties to the Settlement Agreement having consented to the entry of this order, and

11 all capitalized terms used herein having the meaning defined in the Settlement Agreement, IT IS

12 HEREBY ORDERED AS FOLLOWS:

13     1.    Subject to further consideration by the Court at the time of the Final Approval

14 Hearing, the Court preliminarily approves the Settlement as fair, reasonable, and adequate to the

15 Settlement Class, as falling within the range of possible final approval, and as meriting submission

16 to the Settlement Class for its consideration.

17     2.    For purposes of the Settlement only, the Court certifies the Settlement Class, which

18 consists of all California residents that purchased Avacor from January 1, 2000 through April 12,

19 2007.

20     3.    The Court preliminarily finds, solely for purposes of considering this Settlement,

21 that the requirements of Code of Civil Procedure § 382 appear to be satisfied, including

22 requirements for the existence of an ascertainable class, a community of interest, and manageability

23 of a settlement class, that common issues of law and fact predominate, and that a settlement class is

24 superior to alternative means of resolving the claims and disputes at issue in this action.

25     4.    The Court appoints the Law Offices of Scott A. Bursor, Bramson, Plutzik, Mahler,

26 & Birkhaeuser, LLP and Faruqi & Faruqi, LLP as Class Counsel for purposes of this Settlement.

27 The Court preliminarily finds that the Class Representatives and Class Counsel fairly and

28

1  adequately represent and protect the interests of the absent Settlement Class Members in

2  accordance with Code of Civil Procedure § 382.

3       5.     A Final Approval Hearing shall be held before this Court at _____ a.m. on

4  _____, 2010 in Department 20 of the Alameda County Superior Court, to address: (a)

5  whether the proposed Settlement should be finally approved as fair, reasonable and adequate; (b)

6  whether the Final Approval Order and Judgment should be entered; (c) whether Class Counsel's

7  application for attorneys' fees, expenses and incentive awards should be approved; and (d) any

8  other matters that the Court deems appropriate.

9       6.     With the exception of such proceedings as are necessary to implement, effectuate

10  and grant final approval to the terms of the Settlement Agreement, all proceedings are stayed in this

11  action and all Settlement Class Members are enjoined from commencing or continuing any action

12  or proceeding in any court or tribunal asserting any claims encompassed by the Settlement

13  Agreement, unless the Settlement Class Member timely files a valid Request for Exclusion as

14  defined in the Settlement Agreement.

15       7.     The Court approves, as to form and content, the Notice, substantially in the form

16  attached as Exhibit A hereto.  On or before _____, 2010, Class Counsel is directed to

17  cause to be published the Notice substantially in the form of Exhibit A hereto as follows:

18            Los Angeles Times – four (4) consecutive weeks;

19            San Francisco Chronicle – four (4) consecutive weeks;

20            San Diego Tribune – four (4) consecutive weeks;

21            Sacramento Bee – four (4) consecutive weeks;

22            Modesto Bee – four (4) consecutive weeks;

23            Fresno Bee – four (4) consecutive weeks;

24            Press-Enterprise – four (4) consecutive weeks;

25            Orange County Register – four (4) consecutive weeks.

26  No later than thirty (30) days after the completion of the publication notice, Class Counsel shall file

27  with the Court declarations attesting to compliance with this Order.

28

[PROPOSED] ORDER RE: PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

8.    The Court finds that the Parties' plan for providing notice to the Settlement Class (the "Notice Plan") described in Article IV of the Settlement Agreement constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this action, certification of the Settlement Class, the terms of the Settlement Agreement and the Qualifying Settlement Trust Agreement, and the Final Approval Hearing, and complies fully with the requirements of the California Rules of Court, the California Code of Civil Procedure, the Constitution of the State of California, the United States Constitution, and any other applicable law.

9.    The Court further finds that the Notice Plan described in Article IV of the Settlement Agreement will adequately inform members of the Settlement Class of their right to exclude themselves from the Settlement Class so as not to be bound by the terms of the Settlement Agreement. Any member of the Settlement Class who desires to be excluded from the Settlement Class, and therefore not bound by the terms of the Settlement Agreement, must submit to Defendant's Counsel and Class Counsel, pursuant to the instructions set forth in the Notice, a timely and valid written Request for Exclusion, submitted online or postmarked at least thirty (30) days prior to the date set for the Final Approval Hearing in paragraph 5 above.

10.    Any member of the Settlement Class who elects to be excluded shall not be entitled to receive any of the benefits of the Settlement, shall not be bound by the release of any claims pursuant to the Settlement Agreement, and shall not be entitled to object to the Settlement or appear at the Final Approval Hearing. The names of all Persons timely submitting valid Requests for Exclusion shall be provided to the Court.

11.    Any Settlement Class Member who does not submit a valid and timely Request for Exclusion may object to the Settlement Agreement, to Class Counsel's application for attorneys' fees and costs, or to the proposed Final Approval Order and Judgment. Any such Settlement Class Member shall have the right to appear and be heard at the Final Approval Hearing, either personally or through an attorney retained at the Settlement Class Member's own expense. Any such Settlement Class Member must file with the Court and serve, no later than thirty (30) days prior to

the date of the Final Approval Hearing, a written notice of intention to appear together with supporting papers including a detailed statement of the specific objections made.

12.     Service of all papers on counsel for the Parties shall be made as follows: for Class Counsel, to Scott A. Bursor, Esq., Law Offices of Scott A. Bursor, 369 Lexington Avenue, 10th Floor, New York, NY 10017 and L. Timothy Fisher, Esq., Bramson, Plutzik, Mahler, & Birkhaeuser, LLP, 2125 Oak Grove Rd., Suite 120, Walnut Creek, CA 94598; and for Defendant's Counsel, to Michael T. Conway, LeClairRyan LLP, 830 3rd Avenue, Fifth Floor, New York, NY 10022. Only Settlement Class Members who have filed and served valid and timely notices of intention to appear, together with supporting papers, shall be entitled to be heard at the Final Approval Hearing.

13.     Any Settlement Class Member who does not make an objection in the time and manner provided shall be deemed to have waived such objection and forever shall be foreclosed from making any objection to the fairness or adequacy of the proposed settlement as incorporated in the Settlement Agreement, the payment of attorneys' fees and costs, or the Final Approval Order and Judgment.

14.     In the event that the proposed Settlement is not approved by the Court, or in the event that the Settlement Agreement becomes null and void pursuant to its terms, this Order and all orders entered in connection therewith shall become null and void, shall be of no further force and effect and shall not be used or referred to for any purposes whatsoever in this action or in any other case or controversy; in such event the Settlement Agreement and all negotiations and proceedings directly related thereto shall be deemed to be without prejudice to the rights of any and all of the Parties, who shall be restored to their respective positions as of the date and time immediately preceding the execution of the Settlement Agreement.

15.     The Court may, for good cause, extend any of the deadlines set forth in this Order without further notice to the Settlement Class Members. The Final Approval Hearing may, from time to time and without further notice to the Settlement Class, be continued by order of the Court.

**IT IS SO ORDERED.**

1    Dated: _____        _____
2                                           Honorable Robert B. Freedman
                                            Judge of the Alameda County Superior Court
3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER RE: PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT

**EXHIBIT B**

1

2

3

4

5

6

7

8                    IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        IN AND FOR THE COUNTY OF ALAMEDA

10

11   JAMES THOMAS, on behalf of himself and        Case No. RG03-091195
     all those similarly situated,
12                                                 Assigned to: Judge Robert B. Freedman
                                   Plaintiffs,
13                                                 **[PROPOSED] FINAL APPROVAL ORDER
          v.                                       AND JUDGMENT**
14
     GLOBAL VISION PRODUCTS, INC.,
15   ANTHONY IMBRIOLO, DERRIKE COPE,
     DAVID L. GORDON, POWERTEL
16   TECHNOLOGIES, INC., CRAIG DIX,
     HENRY EDELSON and ROBERT
17   DEBENEDICTIS,

18                                 Defendants.

19

20

21

22

23

24

25

26

27

28

1    WHEREAS, on _____, 2010, an Order Re: Preliminary Approval of Proposed

2    Settlement ("Preliminary Approval Order") was entered by this Court, preliminarily approving the

3    proposed settlement of this action pursuant to the terms of the Settlement Agreement and directing

4    that notice be given to the members of the Settlement Class;

5    WHEREAS, pursuant to the Parties' plan for providing notice to the Settlement Class (the

6    "Notice Plan"), the Settlement Class was notified by publication of the terms of the proposed

7    Settlement and of a Final Approval Hearing to determine, *inter alia*: (1) whether the terms and

8    conditions of the Settlement Agreement are fair, reasonable and adequate for the release of the

9    Released Claims against the Released Parties; (2) whether the Final Approval Order and Judgment

10   should be entered; and (3) whether the Court should approve the provisions of the Settlement

11   Agreement with respect to incentive awards and Class Counsel's application for attorneys' fees and

12   expenses;

13   WHEREAS, a Final Approval Hearing was held on _____. Prior to the

14   Final Approval Hearing, proof of completion of the Notice Plan was filed with the Court, along

15   with declarations of compliance as prescribed in the Preliminary Approval Order.  Settlement Class

16   Members were therefore notified of their right to appear at the hearing in support of or in

17   opposition to the proposed Settlement, the award of attorneys' fees and expenses to Class Counsel,

18   and the payment of incentive awards;

19   NOW, THEREFORE, the Court, having heard the oral presentations made at the Final

20   Approval Hearing, and having reviewed all of the submissions presented with respect to the

21   proposed Settlement, and having determined that the Settlement is fair, adequate, and reasonable,

22   and having considered the provisions of the Settlement Agreement with respect to incentive awards

23   and Class Counsel's application for attorneys' fees and expenses, and having reviewed the

24   materials in connection therewith, it is hereby ORDERED, ADJUDGED and DECREED THAT:

25   1.    The capitalized terms used in this Final Approval Order and Judgment shall have the

26   same meaning as defined in the Settlement Agreement except as may otherwise be ordered.

27   2.    The Court has jurisdiction over the subject matter of this action and over all claims

28   raised therein and all Parties thereto, including the Settlement Class.

3.      The Court finds, solely for purposes of considering this Settlement, that the requirements of Code of Civil Procedure § 382 are satisfied, including requirements for the existence of an ascertainable class, a community of interest, and manageability of a settlement class, that common issues of law and fact predominate, and that a settlement class is superior to alternative means of resolving the claims and disputes at issue in this action.

4.      The Settlement Class, which will be bound by this Final Approval Order and Judgment, shall include all members of the Settlement Class who did not submit a timely and valid Request for Exclusion.  The members of the Settlement Class who have requested exclusion are identified on Exhibit A hereto.

5.      For purposes of the Settlement and this Final Approval Order and Judgment, the Settlement Class shall consist of all California residents that purchased Avacor from January 1, 2000 through April 12, 2007.

6.      The Court finds that Notice Plan set forth in Article IV of the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of this action, certification of the Settlement Class for settlement purposes only, the terms of the Settlement Agreement, and the Final Approval Hearing, and satisfies the requirements of California law and federal due process of law.

7.      The Settlement, as set forth in the Settlement Agreement and the Qualifying Settlement Trust Agreement, is in all respects fair, reasonable, adequate and in the best interests of the Settlement Class, and it is approved.  The Parties shall effectuate the Settlement Agreement and the Qualifying Settlement Trust Agreement according to their terms.  The Settlement Agreement and the Qualifying Settlement Trust Agreement and every term and provision of those agreements shall be deemed incorporated herein as if explicitly set forth and shall have the full force of an Order of this Court.

8.      Upon the Effective Date, the Class Representatives and all Settlement Class Members shall have, by operation of this Order and Final Judgment, fully, finally and forever

1   released, relinquished, and discharged all Released Parties from all Released Claims pursuant to
2   Article VI of the Settlement Agreement.

3         9.      Settlement Class Members, including the Class Representatives, and the successors,
4   assigns, parents, subsidiaries, affiliates or agents of any of them, are hereby permanently barred and
5   enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any
6   Released Claim against any of the Released Parties.

7         10.     This Final Approval Order and Judgment, the Settlement Agreement, the Settlement
8   which it reflects, and any and all acts, statements, documents or proceedings relating to the
9   Settlement are not, and shall not be construed as, or used as an admission by or against Defendants
10  or any other Released Party of any fault, wrongdoing, or liability on their part, or of the validity of
11  any Released Claim or of the existence or amount of damages.

12        11.     The Settlement Agreement's provisions for the payment of incentive awards to the
13  Class Representatives are hereby approved.

14        12.     The provisions of the Settlement Agreements with respect to Class Counsel's
15  application for an award of attorneys' fees, costs and expenses and the disposition thereof are
16  hereby approved.  The said application shall be resolved and Class Counsel or their designee(s)
17  shall be paid $_____ in the manner and according to the schedule set forth in the
18  Settlement Agreement.

19        13.     This action is hereby dismissed in its entirety with prejudice.  Except as otherwise
20  provided in this Order, the parties shall bear their own costs and attorneys' fees.  Without affecting
21  the finality of the Judgment hereby entered, the Court reserves jurisdiction over the implementation
22  of the Settlement, including enforcement and administration of the Settlement Agreement,
23  including any releases in connection therewith, and any other matters related or ancillary to the
24  foregoing.

25        **IT IS SO ORDERED.**

26

27  Dated:                                          _____
28                                                          Honorable Robert B. Freedman
                                                    Judge of the Alameda County Superior Court

**EXHIBIT C**

## QUALIFYING SETTLEMENT TRUST AGREEMENT

This Qualifying Settlement Trust Agreement ("Settlement Trust Agreement" or "Agreement"), dated as of May 21, 2010, by Robert N. DeBenedictis ("DeBenedictis"), and Simon Kimmelman, not individually but solely in his capacity as trustee hereunder (the "Settlement Trustee" or "Trustee") is hereby being executed to facilitate the implementation of that certain Stipulation and Settlement Agreement dated May 21, 2010 in connection with Case No. RG-03-091195 in the Superior Court of the State of California in and for the County of Alameda ("Court") (as amended, modified or supplemented, the "Settlement Agreement"), which provides for the establishment of the Settlement Trust (as defined below) created by this Settlement Trust Agreement, and the liquidation and disposition of the Settlement Trust Assets (as defined below), all for the benefit of the Settlement Class Members (as defined in the Settlement Agreement) as set forth in the Settlement Agreement (the "Beneficiaries").   The Settlement Trustee's powers and duties are as set forth herein.

WHEREAS, DeBenedictis and the Class Representatives (as defined in the Settlement Agreement) are parties to the Settlement Agreement, which provides for the full, complete and final settlement of certain claims that the Settlement Class Members have against DeBenedictis;

WHEREAS, as part of the settlement of said claims, DeBenedictis has agreed to implement the Settlement Trust and authorize the Settlement Trustee to sell, subject to the terms and conditions set forth in this Agreement, those certain assets listed on Exhibit 1 attached hereto (the "Settlement Trust Assets");

WHEREAS, Simon Kimmelman, Esq. of Sills Cummis & Gross P.C. is hereby being appointed Settlement Trustee;

WHEREAS, the Settlement Agreement provides, inter alia, that DeBenedictis shall authorize the Settlement Trust to sell or liquidate any and all of the Settlement Trust Assets pursuant to the terms and conditions hereof (the terms "sale" and "liquidate" and various permutations thereof shall be used interchangeably throughout this Agreement);

WHEREAS, unless the context otherwise requires, all capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Settlement Agreement;

NOW, THEREFORE, pursuant to the Settlement Agreement and in consideration of the premises, the mutual agreements of the parties contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties hereby agree as follows:

## ARTICLE 1

## DECLARATION OF TRUST

**1.1     Purpose of the Settlement Trust.**  DeBenedictis and the Settlement Trustee, pursuant to the Settlement Agreement and in accordance with applicable tax statutes, rules and

regulations, to the extent incorporated in this Agreement, hereby constitute and create a trust (the "Settlement Trust") for the purpose of liquidating the Settlement Trust Assets for the benefit of the Beneficiaries, with no objective to continue or engage in the conduct of a trade or business. In particular, the Settlement Trust, through the Settlement Trustee, shall (i) use commercially reasonable efforts to liquidate the Settlement Trust Assets within the time and in the manner set forth in Section 1-3(d) of the Settlement Trust Agreement, for the purpose of converting the Settlement Trust Assets to cash, shall receive, disburse and distribute the proceeds thereof to the Beneficiaries, Class Representatives (as defined in the Settlement Agreement) Claims Administrator (as defined in the Settlement Agreement) and Class Counsel (as defined in the Settlement Agreement), which liquidation efforts may include, without limitation, the sale of any and all real and personal property which constitutes a portion of the Settlement Trust Assets, on then current market terms and conditions, as determined by the Settlement Trustee and approved by the Trust Governing Committee (as hereafter defined), (ii) make distributions pursuant to this Agreement and the Settlement Agreement, and (iii) take such steps as are reasonably necessary to accomplish such purposes, all as more fully provided in, and subject to the terms and provisions of, the Settlement Agreement and this Agreement. In the Settlement Trustee's discretion, any cash received from DeBenedictis or cash proceeds received from the liquidation of a Settlement Trust Asset may be held in an interest bearing trust account until distributed. The Settlement Trust shall not have authority to engage in a trade or business, and no portions of the Settlement Trust Assets shall be used in the conduct of a trade or business, except as is reasonably necessary for the prompt and orderly collection and reduction to Cash of the Settlement Trust Assets, with the goal of maximizing such assets for the benefit of the Beneficiaries.

**1.2     Name of the Settlement Trust.**  The Settlement Trust established hereby shall be known as the "Qualified Settlement Trust." In connection with the exercise of its powers, the Settlement Trustee may use such name or such variation thereof as it sees fit, and may transact the business and affairs of the Settlement Trust in such name.

**1.3     Grant of Authority of Sell.**

(a)     DeBenedictis shall irrevocably grant to the Settlement Trust, as of the date of entry of the Preliminary Approval Order (as defined in the Settlement Agreement) (the "Effective Date"), to have and to hold unto the Settlement Trustee and his successors in trust and to be applied as specified in the Settlement Agreement and this Agreement, a Power of Attorney for each of the States in which any of the Settlement Trust Assets are located (or for which the disposition of same is otherwise governed by such State's law). A form of the Power of Attorney for each of the States of New York, New Jersey, Florida, Massachusetts and California are attached hereto as Exhibits 2-A, 2-B, 2-C, 2-D and 2-E respectively. Upon the issuance of the Powers of Attorney, and in accordance with this Agreement and the Settlement Agreement, DeBenedictis shall relinquish any and all right to (i) sell, transfer, convey, assign, pledge, mortgage or encumber any Settlement Trust Assets, (ii) engage any broker or other agent or representative for the sale, transfer, encumbrance or conveyance of any Settlement Trust Asset, or (iii) otherwise market or solicit offers for the sale or encumbrance any Settlement Trust Asset. From and after the Effective Date and from time to time, DeBenedictis shall execute and deliver or cause to be executed and delivered to or upon the order of the Settlement Trustee any and all such documents, in recordable form where necessary or appropriate, and DeBenedictis

shall take or cause to be taken such further or other action, as the Settlement Trustee may reasonably deem appropriate, to vest or perfect in or confirm to the Settlement Trustee, the irrevocable sole and exclusive authority and right to sell, assign, transfer and convey all of the Settlement Trust Assets. In connection herewith, the Settlement Trustee shall be responsible for establishing and maintaining such accounts as the Settlement Trustee shall deem necessary and appropriate to carry out the provisions of this Settlement Trust Agreement, and to perform all obligations specified for the Settlement Trustee under the Settlement Agreement and this Settlement Trust Agreement. Notwithstanding the above, the cash flow from the Settlement Trust Assets, in particular, the expected cash flow from the assets in Category E of the Settlement Trust Assets, will be retained by DeBenedictis and used to pay his personal obligations including, without limitation, his obligations set forth in Section 3.2 hereof, below. Moreover, in the event that the Court denies a motion for entry of the Final Approval Order and Judgment (as defined in the Settlement Agreement), the authority by DeBenedictis as set forth herein will cease and the Powers of Attorney described herein and in Exhibits 2-A through 2-E shall be null and void.

(b)     Notwithstanding the Effective Date, DeBenedictis hereby expressly authorizes the Settlement Trustee, pursuant to the power of attorney granted to the Settlement Trustee as of the Effective Date, to complete, if necessary, the sale of those certain Settlement Trust Assets known as the Monte Carlo Hotel located at 717 Breakers Ave., Ft. Lauderdale, FL, and the 3 Palms Hotel, located at 710 N. Birch Rd., Ft. Lauderdale, FL (both properties being owned by Sand Homes, LLC), or if said sale has already occurred, to turn over to the Settlement Trustee all cash proceeds of same, less costs of sale. The Settlement Trustee shall distribute the net sale proceeds thereof in accordance with the terms and conditions of the Settlement Agreement and this Agreement.

(c)     DeBenedictis shall not, at any time, revoke, terminate or seek to limit any of the powers of attorney granted to the Settlement Trustee pursuant to this Agreement and the Settlement Agreement. DeBenedictis acknowledges and agrees that the granting of the powers of attorney to the Settlement Trustee to liquidate the Settlement Trust Assets is a material inducement to Class Counsel and the Class Representatives to entering into the Settlement Agreement, and that any attempt on the part of DeBenedictis to revoke, terminate or limit the authority of the Settlement Trustee to liquidate the Settlement Trust Assets shall constitute a material breach by DeBenedictis of the terms of the Settlement Agreement.

(d)     The Settlement Trustee shall liquidate the Settlement Trust Assets as necessary to pay the amounts specified in Article III of the Settlement Agreement as follows:

(e)     The Settlement Trustee shall endeavor to liquidate the assets listed in Category A of the Settlement Trust Assets (the "Category A assets") as soon as practical after the Effective Date. In the event ninety (90) days elapses without a purchase offer for any such asset, and assuming the proceeds from the sale of such Category A assets as the Settlement Trustee is able to sell are insufficient to pay the amounts specified in Article III of the Settlement Agreement, the Settlement Trustee may add to the remaining unsold Category A Assets a corresponding number of assets from Category B of the Settlement Trust Assets (the "Category B Assets") to be marketed and sold by the Settlement Trustee in the order listed on Exhibit A attached hereto (e.g., asset B1 shall be the first added asset, and so on until the requisite number

of Category B assets have each been added) (all assets that are added to the unsold assets in each category preceding them sometimes referred to herein as "Added Asset(s)"). It is understood that the addition of any Added Asset will not affect the right of the Settlement Trustee to continue to market and liquidate the remaining Category A Assets. In the event that a period of one hundred fifty (150) days from the Effective date has elapsed and the proceeds from liquidation of the Category A assets and Category B assets are insufficient to pay the amounts specified in Article III of the Settlement Agreement, the Settlement Trustee may add to the remaining unsold assets in Categories A and B a corresponding number of assets from Category C of the Settlement Trust Assets in the manner described above. In all events, and in the Settlement Trustee's discretion, the Settlement Trustee may market and liquidate any Category A Assets at any time and in any order or sequence and may market and liquidate any Settlement Trust Asset at any time and in any order or sequence on and after said asset becomes an Added Asset.

(f)     In the event that a period of two hundred and seventy (270) days from the Effective date has elapsed and the proceeds from liquidation of the Category A assets, Category B assets and Category C assets are insufficient to pay the amounts specified in Article III of the Settlement Agreement, the Settlement Trustee may market and sell any asset listed in Category D of the Settlement Trust Assets (the Category D assets") subject to the following qualification: The Settlement Trust Asset known as 2-4 Bank Street has a current estimated market value of $5 million, but it is subject to an option contract which would allow a third party (the "Option Holder") to purchase the property in 2012 for the price of approximately $3.1 million. If the Settlement Trustee is able to obtain a purchase price for the 2-4 Bank Street property in excess of the price set forth in the option contract, he may solicit and close on such sale at any time after one year from the Effective Date. Should the Option Agreement be terminated or expire for any reason, the Settlement Trustee may market and sell 2-4 Bank Street at any time (assuming prior sales of Settlement Trust Assets are insufficient to fully satisfy the payments required under Article III of the Settlement Agreement).

(g)     In the event that a period of two years from the Effective date has elapsed and the proceeds from liquidation of the Category A assets, Category B assets, Category C assets and Category D assets are insufficient to pay the amounts specified in Article III of the Settlement Agreement, the Settlement Trustee may (i) market any asset listed in Category E of the Settlement Trust Assets; and (ii) liquidate each such asset for a gross sales price that is the lesser of: the Estimated Net Equity for such asset as shown as Exhibit A attached hereto or the fair market value asset established by an appraisal conducted in 2009 or later.

(h)     The Settlement Trustee shall consider using John E. Aurelius, Esq. ("Aurelius") as attorney for seller in the case of any sale of a Settlement Trust Asset located in Florida but, in his sole discretion, he may utilize any attorney to represent the Settlement Trustee in any sale or liquidation of Settlement Trust Assets. The Settlement Trustee shall use CND Properties LLC ("CND") and/or Hanford & Henderson Corp. ("H&H") as the real estate broker or co-broker for Seller in the case of any sale of a Settlement Trust Asset located in Florida or New York unless, in the Trustee's sole discretion, he determines that the Settlement Trust would be better served by using a different broker or co-broker. In the latter case, the Settlement Trustee shall provide advance written notice to the parties hereto describing the basis for his decision not to use CND or H&H as broker or co-broker.

(i)      DeBenedictis shall have a right of first refusal (the "Right Of First Refusal") to redeem any "ROFR Asset." "ROFR Asset" shall mean any Settlement Trust Asset other than those Settlement Trust Assets listed in Group A on Exhibit A.  In the event the Settlement Trustee decides to sell a ROFR Asset or receives a bona fide offer from a third party to purchase a ROFR Asset (such decision to sell or offer, an "Offer") which the Settlement Trustee intends to accept:

(i)      The Settlement Trustee shall promptly deliver to DeBenedictis a written notice containing the terms of such Offer and DeBenedictis may, within thirty (30) days after receipt thereof, offer in writing to redeem the subject ROFR Asset on the same terms as those set forth in such notice.  If DeBenedictis fails to reply to the Settlement Trustee's notice within such thirty (30) day period, then the Settlement Trustee may proceed to sell the subject ROFR Asset in accordance with the terms set forth in the notice to DeBenedictis.

(ii)     If by DeBenedictis's reply to such notice DeBenedictis shall agree to meet the Offer, then the Settlement Trustee and DeBenedictis shall promptly enter into a formal contract for the redemption of the subject ROFR Asset on the terms and conditions contained in such election and in accordance with subsection (iii) hereof..

(iii)    In the event that the Settlement Trustee and DeBenedictis engage in a redemption or in ROFR Asset pursuant to the terms hereof, the redemption shall occur in accordance with the following terms and conditions:

(A)     The redemption price is to be paid in immediately available funds at closing;

(B)     Closing is to occur on or before twenty (20) days from the date the Settlement Trustee receives DeBenedictis' notice of redemption;

(C)     DeBenedictis shall be solely responsible for all fees, costs and expenses, including, without limitation, reasonably attorneys' fees and disbursements, incurred by him in connection with his exercise of the Right of First Refusal and the closing in connection therewith; and

(D)     DeBenedictis' redemption of any ROFR Asset shall be on an "as is, where is" basis with no representation or warranty of any kind with respect to said asset by the Settlement Trustee.

(j)      In addition to, and without limiting DeBenedictis' Right of First Refusal, as described above, DeBenedictis may redeem any one or more Settlement Trust Assets at any time during the term of the Settlement Trust, regardless of whether an offer to purchase said Asset has been made, pursuant to the following terms and conditions:

(i)      DeBenedictis shall notify the Settlement Trustee in writing of his intent to redeem the subject Settlement Trust Asset(s), and such notice shall identify the Settlement Trust Asset(s) which DeBenedictis wishes to redeem (the "Purchase Option Notice").

5

(ii)    The redemption price of the subject Settlement Trust Asset(s) shall be an amount equal to the lesser of (A) the Estimated Net Equity stated for such asset in Exhibit A, hereto; or (B) the fair market value of the subject Settlement Trust Asset(s), established by an appraisal pursuant to the following procedure:

(A)    Within twenty (20) days after the Settlement Trustee's receipt of the Purchase Option Notice, DeBenedictis and the Settlement Trustee shall confer and attempt to agree upon one appraiser whose decision as to the fair market value of the subject Settlement Trust Asset shall be binding; and

(B)    If the Settlement Trustee and DeBenedictis are unable to agree upon an appraiser within such twenty (20) day period; the following national licensed appraiser may be used without objection by either party: The Weitzman Group.  The selected appraiser shall establish a fair market value for the subject Settlement Trust Asset(s) identified in the Purchase Option Notice.  A decision as to the fair market value by the appraiser shall be binding upon both parties.  The appraisal report shall be in writing and addressed and delivered to DeBenedictis and the Settlement Trustee.  All expenses of the appraisal shall be paid by DeBenedictis.  Any appraiser appointed pursuant to this Section shall be an MAI appraiser or equivalent.

(iii)    DeBenedictis shall remit the full redemption price of the subject Settlement Trust Asset(s) to the Settlement Trustee in immediately available funds on or before ten (10) days after the redemption price has been determined as set forth above.

(iv)    If DeBenedictis fails to remit the redemption price as required above within said ten (10) day period, then DeBenedictis shall not have any right to redeem such Settlement Trust Asset, unless otherwise agreed to, in writing, by the Settlement Trustee and the Trust Governing Committee.

(v)    DeBenedictis shall be solely responsible for all fees, costs and expenses, including, without limitation, reasonably attorneys' fees and disbursements, incurred by him in connection with each redemption made by him pursuant to this Section.

(k)    DeBenedictis' purchase of any Settlement Trust Asset pursuant to the exercise of his right of redemption shall be on an "as is, where is" basis with no representation or warranty of any kind with respect to said asset by the Settlement Trustee.

**1.4    Acceptance by Settlement Trustee.**  The Settlement Trustee hereby accepts (a) the appointment to serve as Settlement Trustee; (b) the Power of Attorney on behalf of the Settlement Trust; and (c) the trust imposed on him by this Settlement Trust Agreement. The Settlement Trustee agrees to sell the Settlement Trust Assets and distribute the sale proceeds derived therefrom, if any, pursuant to the terms of the Settlement Agreement and this Agreement. The Settlement Trustee agrees to accomplish all activities reasonably necessary to ensure the granting of the Power of Attorney to the Settlement Trustee on behalf of the Settlement Trust.

## ARTICLE 2

## SETTLEMENT TRUSTEE - GENERALLY

**2.1    Appointment.** The initial Settlement Trustee shall be Simon Kimmelman.

**2.2    Term of Service.** The Settlement Trustee shall serve until (a) the termination of the Settlement Trust in accordance with Article 9 of this Agreement, or (b) the Settlement Trustee's resignation, death, or removal, all in accordance with the provisions hereof.

**2.3    Services.** The Settlement Trustee shall be entitled to engage in such other activities as he deems appropriate that are not in conflict with the Settlement Agreement, this Agreement, the Settlement Trust or the interests of the Beneficiaries. The Settlement Trustee shall devote such time as is necessary to fulfill all of his duties as Settlement Trustee.

**2.4    Resignation, Death or Removal of Settlement Trustee.** The Settlement Trustee may resign at any time upon ninety (90) days' written notice to Class Counsel. Such resignation may become effective prior to the expiration of such ninety (90) day notice period upon the appointment of a permanent or interim successor Settlement Trustee. The Settlement Trustee may be removed by the Trust Governing Committee. In event the Settlement Trustee position becomes vacant, the vacancy shall be filled by the Trust Governing Committee upon submissions from any interested party or parties. Upon appointment pursuant to this Section 2.4, and upon the execution of an instrument accepting the appointment and delivering said acceptance instrument to the Trust Governing Committee, the successor Settlement Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his, her or its predecessor.

**2.5    Trust Continuance.** The death, resignation or removal of the Settlement Trustee shall not terminate the Settlement Trust or revoke any existing agency (other than any agency of such Settlement Trustee as a Settlement Trustee) created pursuant to this Settlement Trust Agreement or invalidate any action theretofore taken by the Settlement Trustee, and the successor Settlement Trustee agrees that the provisions of this Settlement Trust Agreement shall be binding upon and inure to the benefit of the successor Settlement Trustee and all its heirs and legal and personal representatives, successors or assigns.

**2.6    Compensation and Expenses of Settlement Trustee.** The Settlement Trustee shall be entitled to receive reimbursement of reasonable, actual and necessary costs, fees (including attorneys' fees) and expenses incurred by the Settlement Trustee in connection with the performance of his duties hereunder, and compensation on the following schedule:

(a)    an amount equal to two and one half percent (2.5%) of the gross proceeds of sales of the Settlement Trust Assets (the "Gross Sales Proceeds") for all sales of up to but not exceeding Ten Million Dollars ($10,000,000.00);

(b)    an amount equal to two percent (2.0%) of the Gross Sales Proceeds for all sales in excess of Ten Million Dollars ($10,000,000.00);

(c)      an amount equal to two percent (2.0%) of the Gross Sales Proceeds in connection with the proceeds and/or payments received as a result of the sale of certain assets by DeBenedictis to Robert Malta, regardless of the time of sale;

(d)      an amount equal to one and one-half percent (1.5%) of the sum of all cash and cash equivalents received by the Settlement Trustee other than from the cash and cash equivalents generated from the sale of real estate;

(e)      an amount equal to no less than one percent (1.0%) and no greater than two percent (2.0%), to be determined by the Settlement Trustee and approved by the Trust Governing Committee on a case-by-case basis, of the Gross Sales Proceeds of any sale for which DeBenedictis is the sole procuring source.

**2.7      Retention of Professionals.**  The Settlement Trustee may retain and engage such attorneys, accountants and other professionals and persons as may be necessary to carry out his duties under this Agreement, including any law firm of which Settlement Trustee or any successor Settlement Trustee is a partner or otherwise affiliated from time to time. The fees and expenses of all such professionals shall be borne exclusively by the Settlement Trust, and such professionals may be compensated monthly upon submission of invoices to the Settlement Trustee. All fees and expenses incurred by the Settlement Trustee on behalf of the Settlement Trust in connection with the duties of the Settlement Trustee under this Agreement, including, without limitation, the retention of professionals and persons pursuant to this Section 2.7, the liquidation of the Settlement Trust Assets, and representation of the Settlement Trustee, shall be paid from the Gross Sales Proceeds.

**2.8      Prior Approval for Payment.** The foregoing paragraphs 2.6 and 2.7 notwithstanding, the Settlement Trustee may but is not required to seek authorization from the Trust Governing Committee before the payment of any fees to the Settlement Trustee or professionals.

**2.9      Settlement Trustee Exclusive Authority**. Subject to the terms of this Agreement, the Settlement Trustee has the sole and exclusive authority to liquidate the Settlement Trust Assets, and thus, after the Effective Date, any and all such sales of the Settlement Trust Assets shall be executed by the Settlement Trustee on behalf of DeBenedictis. In furtherance thereof, DeBenedictis hereby agrees that neither he nor any entity in which he owns a majority or controlling legal or beneficial interest shall sell, convey, transfer, pledge or encumber any Settlement Trust Asset or any interest, whether direct or indirect, in or to any Settlement Trust Asset, during the term of the Settlement Trust absent the prior written approval of the Settlement Trustee or the Trust Governing Committee.  DeBenedictis consents to recordation and shall execute a notice of restrictive covenant in a form prepared by or acceptable to the Settlement Trustee which provides notice that DeBenedictis is prohibited from making any sale, conveyance, transfer, pledge or encumbrance of his interest in the subject Settlement Trust Asset during the term of the Settlement Trust. The Settlement Trustee may not materially amend or alter the terms and provisions of this Agreement or the Settlement Agreement without the approval of the Trust Governing Committee and DeBenedictis or an order of the New Jersey Court (as hereinafter defined).

## ARTICLE 3

### POWERS AND LIMITATIONS OF SETTLEMENT TRUSTEE

**3.1** **General Powers of Settlement Trustee.** In connection with the administration of the Settlement Trust, except as otherwise set forth herein, the Settlement Trustee is authorized to perform only those acts necessary and desirable to accomplish the purposes of the Settlement Trust. The Settlement Trust shall succeed only to those rights of DeBenedictis as necessary to liquidate the Settlement Trust Assets as quickly as reasonably practicable consistent with the purposes of the Settlement Trust. Subject to the limitations set forth in this Agreement and the Settlement Agreement and in addition to any powers and authority conferred by law, by the Settlement Agreement, or by any other section or provision of this Agreement, the Settlement Trustee shall exercise all powers granted him hereunder related to, or in connection with, the liquidation of the Settlement Trust Assets, and distribution of the net sale proceeds derived therefrom to the Claims Administrator for the benefit of the Beneficiaries; Class Representatives; Class Counsel; and the Claims Administrator for expenses of noticing and administration, all in accordance with and in the sequence provided in the Settlement Agreement and pursuant to written distribution instructions from Class Counsel. Without limiting, but subject to, the foregoing, the Settlement Trustee shall be expressly authorized:

          (a)    To sell, convey or otherwise dispose of all of the Settlement Trust Assets, including other powers necessary or incidental thereto, subject to the terms of this Agreement and the Settlement Agreement.

          (b)    To pay all costs and expenses of liquidating the Settlement Trust Assets after the Effective Date, including the power to employ and compensate Persons to assist the Settlement Trustee in carrying out the duties hereunder, and any other powers necessary or incidental thereto.

          (c)    To implement the terms and conditions of the Settlement Agreement, including any other powers necessary or incidental thereto.

          (d)    To open and maintain bank accounts on behalf of or in the name of the Settlement Trust, calculate and make distributions and take other actions consistent with the Settlement Agreement and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Settlement Trust.

          (e)    To enter into sales contracts and any other business arrangements in connection with the liquidation of the Settlement Trust Assets.

          (f)    To represent the Settlement Trust before governmental and other regulatory bodies.

          (g)    To make decisions regarding the retention or engagement of professionals, employees and consultants by the Settlement Trust and to pay, from the Gross Sales Proceeds, all fees, costs, expenses and charges incurred by the Settlement Trust on or after the Effective Date in connection with the sale of each Settlement Trust Asset, including, without

limitation, all closing costs, brokerage commissions and, if applicable, transfer taxes, and fees of professionals, disbursements, expenses or related support services relating to the implementation of the Settlement Agreement and this Agreement.

(h)     To pay all lawful expenses, debts, charges and liabilities of the Settlement Trust.

(i)     To withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge that the Settlement Trustee has determined, in his sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of his discretion and judgment, the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(j)     To enter into any agreement or execute any document required by or consistent with the Settlement Agreement and the purposes of the Settlement Trust and perform all obligations thereunder.

(k)     If any performance under this Agreement by the Settlement Trustee is subject to the laws of any state or other jurisdiction in which the Settlement Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee that security as designated by the Settlement Trustee; confer upon such trustee any and all of the rights, powers, privileges and duties of Settlement Trustee, subject to the conditions and limitations of this Agreement and applicable law; require such trustee to be answerable to the Settlement Trustee for all monies, assets and other property that may be received in connection with the sale of any property; and remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the other Settlement Trustee of a written instrument declaring such trustee removed from office, and specifying the effective date and time of removal.

(l)     To invest cash as deemed appropriate by the Settlement Trustee (with the approval of Trust Governing Committee) in cash equivalents.

(m)     To hold title to any investment in his name as Settlement Trustee or in a nominee name.

(n)     To collect amounts due, and to exercise all voting and other rights (including, without limitation, any foreclosure or similar rights) under or attendant to any notes, accounts receivable, general partnership interests, limited partnership interests, stock holdings, settlement agreements or other contracts or contract rights or other assets comprising Settlement Trust Assets or proceeds thereof.

(o)     To sue and be sued.

(p)     To delegate any or all of the discretionary power and authority herein conferred at any time with respect to any portion of the Settlement Trust Assets or other powers enumerated herein to any one or more reputable individuals or recognized institutional

advisors or investment managers or consultants without any liability for any action taken or omission made because of such delegation, except for liability specifically provided for in this Settlement Trust Agreement.

(q)    To take all other actions consistent with the provisions of this Agreement and the Settlement Agreement that the Settlement Trustee deems reasonably necessary or desirable to administer the Liquidation Trust for the purpose thereof.

3.2    **Limitations on the Settlement Trustee.**    Anything in this Agreement to the contrary notwithstanding, the Settlement Trustee shall not do or undertake any of the following:

(a)    Operate or manage, or have any duty or responsibility to operate or manage, in any respect, any of the Settlement Trust Assets.  By way of example, the Settlement Trustee shall have no responsibility of liability with respect to payroll, taxes, maintenance, repairs, insurance, day to day operations, finances, financial reporting, payment or "carrying charges" including mortgage payments and utilities, cash management and compliance with statutes, ordinances, regulations or laws pertaining to such assets or the ownership thereof.  The operation and management of the Settlement Trust Assets shall be the sole responsibility of the owners of the Settlement Trust Assets.  DeBenedictis shall ensure that the Settlement Trust Assets are operated and maintained in the ordinary course of business, shall bear all costs and expenses for such operation and maintenance, and shall not suffer or permit any default or foreclosure with respect to any Settlement Trust Asset.

(b)    Take any action in contravention of the Settlement Agreement or this Agreement.

(c)    Take any action that would significantly jeopardize treatment of the Settlement Trust as a "qualified settlement fund" for federal income tax purposes.

(d)    Lend any Settlement Trust Assets to the Settlement Trustee.

(e)    Purchase Settlement Trust Assets from the Settlement Trust.

(f)    Transfer Settlement Trust Assets to another trust with respect to which the Settlement Trustee serves as trustee.

(g)    Grant liens on any of the Settlement Trust Assets.

(h)    Guaranty any debt incurred by any third party.

3.3    **Settlement Trustee Conflicts of Interest.**

(a)    If the Settlement Trustee determines, in the exercise of the Settlement Trustee's discretion, that he has a material conflict of interest with respect to any matter, the Trust Governing Committee may exercise the Settlement Trustee's rights and authorities with respect to such matter. If neither the Settlement Trustee nor the Class Counsel is able to act on behalf of the Settlement Trust with respect to any particular matter, the Settlement Trustee, may request the New Jersey Court to approve the Settlement Trustee's choice of a

11

designee to act on behalf of the Settlement Trust solely with respect to such matter, with such designee's authority to act on behalf of the Settlement Trust to terminate upon the matter's conclusion.

(b)     It is acknowledged and agreed by all of the Parties to the Settlement Agreement and this Agreement that in addition to and notwithstanding their duties under this Agreement and the Settlement Agreement, the Settlement Trustee and Sills Cummis & Gross P.C., may continue to act as legal counsel for the Class Representatives and Class Counsel in any and all matters and such representation shall not constitute a conflict of interest for the Settlement Trustee or Sills Cummis & Gross P.C., or be grounds for removal of the Settlement Trustee.

## ARTICLE 4

## LIABILITY OF SETTLEMENT TRUSTEE

**4.1     Trustee Standard of Care; Exculpation; Limitation on Liability.**  Neither the Settlement Trustee, nor any partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Settlement Trustee shall be personally liable for any act or omission in connection with the affairs of the Settlement Trust to any Beneficiary of the Settlement Trust, the Settlement Trust, or any other Person, except for such of the Settlement Trustee's acts or omissions as shall constitute fraud, willful misconduct or gross negligence. Persons dealing with the Settlement Trustee, or seeking to assert claims against the Settlement Trustee, shall have recourse only to the Settlement Trust Assets (excluding any fund to pay administrative costs) to satisfy any liability incurred by the Settlement Trustee to such persons in carrying out the terms of this Agreement.

**4.2     Indemnification.**  Except as otherwise set forth in the Settlement Agreement, the Settlement Trustee and any partner, director, officer, affiliate, employee, employer, attorney, accountant, agent or representative of the Settlement Trustee shall be defended, held harmless and indemnified from time to time by the Settlement Trust against any and all losses, claims, damages, taxes, suits, costs, expenses (including attorney's fees and disbursements) and liabilities to which such indemnified parties may be subject by reason of such indemnified party's execution in good faith and in a manner that the Person reasonably believed to be consistent with the terms of the Settlement Agreement and this Agreement of its duties pursuant to the discretion, power and authority conferred on such Person by this Agreement or the Settlement Agreement; provided, however, that the indemnification obligations arising pursuant to this section shall indemnify neither the Settlement Trustee nor any partner, director, officer, affiliate, employee, employer, professional, agent or representative of the Settlement Trustee for any actions taken by such indemnified parties that constitute fraud, willful misconduct or gross negligence. Satisfaction of any obligation of the Settlement Trust arising pursuant to the terms of this section shall be payable only from the Settlement Trust Assets and such right to payment shall be prior and superior to any other rights to receive on behalf of Beneficiary any distribution of Settlement Trust Assets or proceeds thereof.  In addition thereto, DeBenedictis and owners of the Settlement Trust Assets shall indemnify and hold harmless the above indemnified parties for and against all claims, losses, damages and attorneys' fees incurred by said indemnified parties

and arising out of or relating to or pertaining to the operation and management of the Settlement Trust Assets.

**4.3    No Bond.**  The Settlement Trustee shall not be obligated to give any bond or surety for the performance of any of his duties.

**4.4    No Liability for Acts of Predecessor Settlement Trustees.**  No successor Settlement Trustee shall be in any way liable for the acts or omissions of any predecessor Settlement Trustee unless a successor Settlement Trustee expressly assumes such responsibility in writing.

**4.5    Reliance by Settlement Trustee on Documents, Mistake of Fact or Advice of Counsel.**  Except as may be otherwise provided in this Agreement, the Settlement Trustee may rely, and shall be protected from liability for acting, upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document reasonably believed by the Settlement Trustee to be genuine and to have been presented by an authorized party. Also, the Settlement Trustee shall not be liable if he acts based on a mistake of fact before having actual knowledge of an event. The Settlement Trustee shall not be liable for any action taken or suffered by the Settlement Trustee in reasonably relying upon the advice of counsel or other professionals engaged by the Settlement Trustee in accordance with this Agreement.

**4.6    Insurance.**  The Settlement Trustee may purchase errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs and expenses he may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions, or consequences of such actions or omissions, other than as a result of its gross negligence or willful misconduct, with respect to the implementation and administration of the Settlement Trust and this Agreement. The cost of such insurance may be paid from the Settlement Trust in the Settlement Trustee's discretion.

## ARTICLE 5

## DUTIES OF SETTLEMENT TRUSTEE

**5.1    General.**  The Settlement Trustee shall have all duties specified in the Settlement Agreement and this Agreement.

**5.2    Books and Records.**  The Settlement Trustee shall maintain in respect of the Settlement Trust books and records relating to the Settlement Trust Assets and proceeds realized from the sale thereof and the payment of expenses of and claims against or assumed by the Settlement Trust in such detail and for such period of time as may be necessary to enable him to make full and proper reports in respect thereof. Except as expressly provided in this Agreement or the Settlement Agreement, nothing in this Agreement is intended to require the Settlement Trustee to file any accounting or seek approval of any court with respect to the administration of the Settlement Trust, or as a condition for making any payment or distribution out of the Settlement Trust Assets or proceeds therefrom.

**5.3    Final Accounting of Settlement Trustee.**  The Settlement Trustee shall within sixty (60) days after the termination of the Settlement Trust or his resignation, removal,

13

liquidation or death (in which case, the obligation contained in this section shall pass to the Settlement Trustee's estate), render a final accounting containing at least the following information:

       (a)    A summary description of the Settlement Trust Assets.

       (b)    A summarized accounting in sufficient detail of all gains, losses, receipts, disbursements and related transactions in connection with the Settlement Trust and the Settlement Trust Assets during the Settlement Trustee's term of service, including their source and nature.

       (c)    Separate entries for all receipts of principal, income or other proceeds.

       (d)    The ending balance of all Settlement Trust Assets (including any proceeds thereof) as of the date of the Settlement Trustee's accounting, including the Cash balance on hand and the name and location of the depository where it is kept.

       (e)    All known liabilities owed by the Settlement Trust.

The final accounting shall be presented to the Trust Governing Committee for approval, which approval shall not be unreasonably withheld.

    **5.4**    **Consultation with Trust Governing Committee and Class Counsel.**  The Settlement Trustee shall consult with the Trust Governing Committee concerning all aspects of the liquidation of the Settlement Trust Assets.  The "Trust Governing Committee" shall mean, collectively Class Counsel and specifically: (i) Scott A. Bursor, (ii) Anthony Vozzolo, and (iii) Alan R. Plutzik.  All decisions by the Trust Governing Committee shall require a majority vote (i.e., 66%).  Two committee members shall constitute a quorum for voting purposes.  If any such vote on a decision results in a tie, then Scott Bursor shall cast the deciding vote.  The Settlement Trustee shall obtain the approval of the Trust Governing Committee with respect to every sale or other disposition of all or any portion of the Settlement Trust Assets and the disbursement of the net sale proceeds thereof.

## ARTICLE 6

## BENEFICIARIES

    **6.1**    **Effect of Death, Incapacity or Bankruptcy of Beneficiary.**  The death, incapacity or bankruptcy of a Beneficiary during the term of the Settlement Trust shall not operate to terminate the Settlement Trust during the term of the Settlement Trust nor shall it entitle the representative or creditors of the deceased, incapacitated or bankrupt Beneficiary to an accounting or to take any action in any court or elsewhere for the distribution of the Settlement Trust Assets or for a petition thereof nor shall it otherwise affect the rights and obligations of the Beneficiary under this Settlement Trust Agreement or in the Settlement Trust.

14

6.2     **Standing of Beneficiary.**  Except as expressly provided in this Agreement or the Settlement Agreement, a Beneficiary does not have standing to direct the Settlement Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any party (other than the Settlement Trustee) upon or with respect to the Settlement Trust Assets.

## ARTICLE 7

## DISTRIBUTIONS

7.1     **Distributions from Settlement Trust Assets.**  All payments to be made by the Settlement Trustee to any Person shall be made only in accordance with the Settlement Agreement and this Agreement and from the net sale proceeds and/or available cash resulting from the operations of the Settlement Trust Assets by the Class Defendants of the Settlement Trust Assets and only to the extent that the Settlement Trust has sufficient cash to make such payments in accordance with and to the extent provided for in the Settlement Agreement and this Agreement.  Any distribution made by the Settlement Trustee in good faith shall be binding and conclusive on all interested parties, absent manifest error.

7.2     **Distributions; Withholding.**  The Settlement Trustee shall make distributions of net sale proceeds received by the Settlement Trustee within thirty (30) days after the sale of the Settlement Trust Asset to which such net sale proceeds relate; provided, however that the Settlement Trust may retain such amounts (a) as are reasonably necessary to meet known and contingent liabilities relating to the sales of the Settlement Trust Assets, (b) to pay reasonable administrative expenses including, without limitation, closing costs, brokerage commissions, transfer taxes, and the compensation and the reimbursement of reasonable, actual and necessary costs and fees (including attorneys' and other professional fees) and expenses of the Settlement Trustee in connection with the performance of his duties in connection with this Settlement Trust Agreement, and (c) to satisfy all other liabilities incurred or assumed by the Settlement Trust (or to which the Settlement Trust Assets are otherwise subject) in accordance with the Settlement Agreement, and this Agreement.  Any interest earned on the net proceeds while on deposit with the Settlement Trustee shall be paid to the Class Representatives and Class Counsel.  All such distributions shall be made, subject to any withholding or reserve, in accordance with written disbursement instructions delivered to the Settlement Trustee from Class Counsel.   In furtherance of Section 4.5 hereof, the Settlement Trustee may rely on each such disbursement instruction without inquiry, and Class Counsel shall indemnify and hold harmless the Settlement Trustee from and against any and all claims made against the Settlement Trustee in connection with or related to acts or omissions by the Settlement Trustee in reliance upon such written disbursement instructions.  Additionally, the Settlement Trustee may withhold from amounts otherwise distributable on behalf of Beneficiaries any and all amounts, determined in the Settlement Trustee's reasonable sole direction, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

7.3     **Method of Cash Distributions.**  Any cash payment to be made by the Settlement Trust pursuant to the Settlement Agreement or this Agreement will be in U.S. dollars and may be made, at the sole discretion of the Settlement Trust, by draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law.

**7.4 Rounding.** Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent.

**7.5. Settlement Agreement Controls.** The Stipulation and Settlement Agreement dated May 21, 2010 in connection with Case No. RG-03-091195 in the Superior Court of the State of California in and for the County of Alameda ("Court") (as amended, modified or supplemented, the "Settlement Agreement") shall govern and control the timing and priority of distributions to be made from the Settlement Trust. Furthermore, the Settlement Agreement shall be controlling in all matters should there be any inconsistency between this Settlement Trust Agreement and the Settlement Agreement.

## ARTICLE 8

## TAXES

**8.1**

(a)    It is the intent of DeBenedictis, the Beneficiaries and the Settlement Trustee that the Settlement Trust created by this Settlement Trust Agreement will qualify as, and remain, a "qualified settlement fund" within the meaning of Section 468B of Internal Revenue Code of 1986, as amended (the "Tax Code"), as codified at 26 U.S.C. Section 468B and the Treasury Regulations promulgated pursuant to the Tax Code (the "Treasury Regulations") specifically those codified at 26 C.F.R. Section 1.468B-1. DeBenedictis shall be classified as the "transferor" to the Settlement Trust within the meaning of Treasury Regulations Section 1.468B-1(d)(1). The Settlement Trustee shall be classified as the "administrator" within the meaning of Treasury Regulations Section 1.468B-2(k)(3).

(b)    DeBenedictis hereby agrees to make an election (a grantor trust election) pursuant to Section 1.468B-1(k) of the Treasury Regulations to treat the Settlement Fund as a trust all of which is owned by DeBenedictis under Section 671 of the Tax Code and the Treasury Regulations promulgated thereunder.    Accordingly, it is the intention of DeBenedictis, the Beneficiaries and the Trustee that all of the income of the Settlement Trustee will be taxed to DeBendictis and that DeBenedictis will take into account in computing his income tax liability all items of income, deduction, and credit of the Settlement Trust in accordance with Section 1.671-3(a)(1) of the Treasury Regulations.

(c)    Upon establishment of the Trust, the Settlement Trustee shall apply for an employer identification number for the Settlement Trust pursuant to Internal Revenue Service Form SS-4.

(d)    The Settlement Trustee shall cause to be filed, on behalf of the Settlement Trust, all required federal, state, and local tax returns in accordance with the provisions of Treasury Regulations Section 1.468B-2(k)(1) as modified by Treasury Regulations Section 1.468B-1(k)(3). The Settlement Trustee may retain an independent, certified public accountant to consult with and advise the Settlement Trustee with respect to the preparation of the returns.

(e)     The taxable year of the Trust shall be the calendar year.

(f)     The Settlement Trustee shall be empowered to take all such actions, including such actions as may be inconsistent with those expressly set forth above, as he deems necessary to ensure that the Settlement Trust is treated as a "qualified settlement fund" under Section 468B of the Tax Code and the Treasury Regulations promulgated pursuant thereto. Further, the Settlement Trustee may amend, either in whole or in part, any administrative provision of this Trust Agreement which causes unanticipated tax consequences or liabilities inconsistent with the foregoing.

## ARTICLE 9

## TERMINATION OF TRUST

**9.1     Term**. The Settlement Trust shall terminate upon the earlier of (a) the date on which all net sale proceeds of the Settlement Trust Assets are distributed in the manner specified in Article III of the Settlement Agreement; or (b) five (5) years from the date of creation of the Settlement Trust, unless extended by the Court as provided herein. The Settlement Trustee shall at all times endeavor to liquidate expeditiously the Settlement Trust Assets and distribute the net sale proceeds thereof, and in no event shall the Settlement Trustee unduly prolong the duration of the Settlement Trust. The foregoing notwithstanding, in the event that the Settlement Trustee determines that all of the Settlement Trust Assets will not, despite reasonable efforts, be liquidated by the date which is five (5) years from the date of creation of the Settlement Trust, or for any other reason consistent with this Agreement and the Settlement Agreement. This term may be extended by the Trust Governing Committee with the approval of the Settlement Trustee. Upon final liquidation pursuant to this Agreement, the Settlement Trustee shall retain the books, records and files that shall have been delivered to or created by the Settlement Trustee. At the Settlement Trustee's discretion, all of such records and documents may be destroyed at any time after two years from such final liquidation.

**9.2     Event upon Termination.** Upon the termination of the Settlement Trust, the Powers of Attorney granted to the Settlement Trustee shall terminate and the Settlement Trust Assets shall be returned to DeBenedictis or such persons or entities as he designates. The Settlement Trustee shall be entitled to rely solely upon the written instructions of DeBenedictis as to whom the remaining assets are to be returned.

**9.3     Winding Up and Discharge of the Settlement Trustee.** For the purposes of winding up the affairs of the Settlement Trust at its termination, the Settlement Trustee shall continue to act as Settlement Trustee until his duties have been fully discharged. After doing so, the Settlement Trustee, its agents and employees shall have no further duties or obligations hereunder, except as required by this Agreement, the Settlement Agreement, or applicable law concerning the termination of a trust.

## ARTICLE 10

## ADMINISTRATIVE EXPENSES

**10.1   Funding.**  The cost and expenses of the Settlement Trust, including, without limitation, the compensation to and the reimbursement of reasonable, actual and necessary costs, fees (including attorneys' and other professional fees) and expenses of the Settlement Trustee in connection with the performance of his duties in connection with this Agreement, shall be paid from the Gross Sales Proceeds of the Settlement Trust Assets (the "Trustee's Administrative Expense Fund"), prior to any distribution of net sale proceeds. The Trustee's Administrative Expense Fund shall not be subject to charge for claims against the Settlement Trust or the Settlement Trust Assets (including any proceeds thereof), including, without limitation, any claims under Sections 4.1 and 4.2 of this Agreement. Any funds remaining in the Settlement Trustee's Administrative Expense Fund after completion of the Settlement Trustee's activities shall be paid over pursuant to the terms of the Settlement Agreement.

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

**11.1   Amendments.**   The Settlement Trustee (after consultation with the Trust Governing Committee) may propose to the New Jersey Court (as hereafter defined) the modification, supplementation or amendment of this Settlement Trust Agreement. Such proposed modification, supplementation or amendment shall be made in writing and filed, together with any necessary pleadings, with the New Jersey Court. Unless otherwise ordered by the New Jersey Court, at least fourteen (14) days notice of such filing shall be served on the Class Counsel and DeBenedictis. No modification, supplementation or amendment of this Agreement shall be effective except as provided in Article 2.9 of this Agreement or upon a Final Order of the New Jersey Court.

**11.2   Waiver.**  No failure by the Settlement Trustee to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof, or of any other right, power or privilege.

**11.3   Cumulative Rights and Remedies.**  The rights and remedies provided in this Agreement are cumulative and are not exclusive of any rights under law or in equity.

**11.4   No Bond Required.**   Any state law to the contrary notwithstanding, the Settlement Trustee (including any successor Settlement Trustee) shall be exempt from giving any bond or other security in any jurisdiction.

**11.5   Irrevocability.**  The Settlement Trust is irrevocable.

**11.6   Division of Trust.**  Under no circumstances shall the Settlement Trustee have the right or power to divide the Settlement Trust unless authorized to do so by the Court.

**11.7    Governing Law.**  This Agreement shall be governed and construed in accordance with the laws of the State of New Jersey, without giving effect to rules governing the conflict of laws.

**11.8    Jurisdiction.**  To the fullest extent permitted by law (except that the Court shall have continuing concurrent jurisdiction over the Settlement Trust to the extent required under Treasury Regulation Section 1.468B-1(c)(i)),) the Superior Court of New Jersey, Essex County ("New Jersey Court") shall have exclusive jurisdiction over the Settlement Trust after the Effective Date, including, without limitation, jurisdiction to resolve any and all controversies, suits and issues that may arise in connection therewith, or this Agreement, or any entity's obligations incurred in connection therewith or herewith, including without limitation, any action against the Settlement Trustee or any professional retained by the Settlement Trustee or the Settlement Trust, in each case in its capacity as such. Each party to this Agreement hereby irrevocably consents to the exclusive jurisdiction of the New Jersey Court in any action to enforce, interpret or construe any provision of this Agreement or of any other agreement or document delivered in connection with this Agreement, and also hereby irrevocably waives any defense of improper venue, forum non conveniens or lack of personal jurisdiction to any such action brought in the New Jersey Court. Each party further irrevocably agrees that (i) any action to enforce, interpret or construe any provision of this Agreement will be brought only in the New Jersey Court and (ii) all determinations, decisions, rulings and holdings of the New Jersey Court shall be final and non-appealable and not subject to reargument or reconsideration. Each party hereby irrevocably consents to the service by certified or registered mail, return receipt requested, to be sent to its address set forth in Section 11.11 of this Agreement or such other address as such party may designate from time to time by notice given in the manner provided above, of any process in any action to enforce, interpret or construe any provision of this Agreement.

**11.9    Severability.**  In the event that any provision of this Agreement or the application thereof to any person or circumstance shall be determined by the Court or another court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this of this Agreement, or the application of such provision to persons or circumstances, other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

**11.10  Limitation of Benefits.**  Except as otherwise specifically provided in this Agreement or the Settlement Agreement, nothing herein is intended or shall be construed to confer upon or to give any person other than the parties hereto and the Beneficiaries any rights or remedies under or by reason of this Agreement.

**11.11  Notices.**  All notices, requests, demands, consents and other communication hereunder shall be in writing and shall be deemed to have been duly given, if delivered in person or by e-mail with an electromechanical report of delivery or if sent by overnight mail or by registered or certified mail with postage prepaid, return receipt requested, to the following addresses.

| | |
|---|---|
| If to DeBenedictis: | Robert N. DeBenedictis<br>511 Bayshore Drive, Unit 405<br>Ft. Lauderdale, FL 33304<br>Attn: Robert N. DeBenedictis<br>E-mail: THROFNY@aol.com |
| with copies to: | Michael T. Conway, Esq.<br>LeClairRyan, a Professional Corporation<br>830 Third Avenue, Fifth Floor<br>New York, New York 10022<br>E-mail: Michael.conway@LeClairRyan.com |
| If to the Settlement Trustee: | Simon Kimmelman, Esq.<br>Sills Cummis & Gross P.C.<br>650 College Road East<br>Princeton, NJ 08540<br>Facsimile:  (609) 227-4646<br>E-Mail:  skimmelman@sillscummis.com |
| If to the Class Counsel: | Scott A. Bursor, Esq.<br>Law Offices of Scott A. Bursor<br>369 Lexington Avenue<br>10th Floor<br>New York, New York 10017<br>Facsimile: (212) 989-9163<br>E-Mail:  scott@bursor.com |

The parties may designate in writing from time to time other and additional places to which notices may be sent. All demands requests, consents, notices and communications shall be deemed to have been given (a) at the time of actual delivery thereof, (b) if given by certified or registered mail, five (5) business days after being deposited in the United States mail, postage prepaid and properly addressed, or (c) if given by overnight courier, the next business day after being sent, charges prepaid and properly addressed.

**11.12  Further Assurances.**  From and after the Effective Date, the parties hereto covenant and agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes of this Agreement, and to consummate the transactions contemplated hereby.

**11.13  Integration.**  This Agreement and the Settlement Agreement constitute the entire agreement with, by and among the parties with respect to the subject matter hereof, and there are no representations, warranties, covenants or obligations except a set forth herein or in the Settlement Agreement. This Agreement, together with the Settlement Agreement, supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to any transaction contemplated hereunder.

**11.14  Successors or Assigns**.  The terms of this Agreement shall be binding upon, and shall inure to the benefit of the parties hereto and their respective successors and assigns.

**11.15  Interpretation.**   The enumeration and section headings contained in this Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Agreement or of any term or provision hereof. Unless context otherwise requires, whenever used in this Agreement the singular shall include the plural and the plural shall include the singular, and words importing the masculine gender shall include the feminine and the neuter, if appropriate, and vice versa, and words importing persons shall include partnerships, associations and corporations. The words herein, hereby, and hereunder and words with similar import, refer to this Agreement as a whole and not to any particular section or subsection hereof unless the context requires otherwise.

**11.16  Relationship to the Settlement Agreement.**   The principal purpose of this Settlement Trust Agreement is to aid in the implementation of the Settlement Agreement, particularly the liquidation of the Settlement Trust Assets, and, therefore, this Agreement incorporates and is subject to the provisions of the Settlement Agreement. In the event that any provision of this Agreement is found to be inconsistent with a provision of the Settlement Agreement, the provisions of the Settlement Agreement shall control.

**11.17  Counterparts.**   This Agreement may be signed by the parties hereto in counterparts, which, when taken together, shall constitute one and the same document. Facsimile or scanned signatures of the parties hereto on the Agreement shall be deemed as original signatures.

[ SIGNATURE PAGE FOLLOWS ]

IN WITNESS WHEREOF, the parties hereto have either executed this Agreement, or caused it to be executed on its behalf by its duly authorized officer all as of the date first above written.

_____

ROBERT N. DeBENEDICTIS, individually



_____

James Thomas, Class Representative



_____

SIMON KIMMELMAN, as Trustee

SILLS CUMMIS & GROSS P.C.,
Counsel for Settlement Trustee


_____

Simon Kimmelman, Esq.

LAW OFFICES OF SCOTT A. BURSOR,
Co-Counsel for Plaintiffs

By: _____

Scott A. Bursor, Esq.,

FARUQI & FARUQI, LLP,
Co-Counsel for Plaintiffs

By: _____

Anthony Vozzolo, Esq.,

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP,
Co-Counsel for Plaintiffs

By: _____

Alan R. Plutzik, Esq.,

22

IN WITNESS WHEREOF, the parties hereto have either executed this Agreement, or caused it to be executed on its behalf by its duly authorized officer all as of the date first above written.

_____

ROBERT N. DeBENEDICTIS, individually


_____

James Thomas, Class Representative


_____

SIMON KIMMELMAN, as Trustee

SILLS CUMMIS & GROSS P.C.,
Counsel for Settlement Trustee

_____

Simon Kimmelman, Esq.


LAW OFFICES OF SCOTT A. BURSOR,
Co-Counsel for Plaintiffs

By: _____

    Scott A. Bursor, Esq.,


FARUQI & FARUQI, LLP,
Co-Counsel for Plaintiffs

By: _____

    Anthony Vozzolo, Esq.,


BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP,
Co-Counsel for Plaintiffs

By: _____

    Alan R. Plutzik, Esq.,


22

IN WITNESS WHEREOF, the parties hereto have either executed this Agreement, or caused it to be executed on its behalf by its duly authorized officer all as of the date first above written.

_____
ROBERT N. DeBENEDICTIS, individually

_____
James Thomas, Class Representative

_____
SIMON KIMMELMAN, as Trustee

SILLS CUMMIS & GROSS P.C.,
Counsel for Settlement Trustee

_____
Simon Kimmelman, Esq.

LAW OFFICES OF SCOTT A. BURSOR,
Co-Counsel for Plaintiffs

By: _____
Scott A. Bursor, Esq.,

FARUQI & FARUQI, LLP,
Co-Counsel for Plaintiffs

By: _____
Anthony Vozzolo, Esq.,

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP,
Co-Counsel for Plaintiffs

By: _____
Alan R. Plutzik, Esq.,

22

IN WITNESS WHEREOF, the parties hereto have either executed this Agreement, or caused it to be executed on its behalf by its duly authorized officer all as of the date first above written.

_____
ROBERT N. DeBENEDICTIS, individually


_____
James Thomas, Class Representative


_____
SIMON KIMMELMAN, as Trustee

SILLS CUMMIS & GROSS P.C.,
Counsel for Settlement Trustee

_____
Simon Kimmelman, Esq.

LAW OFFICES OF SCOTT A. BURSOR,
Co-Counsel for Plaintiffs

By: _____
      Scott A. Bursor, Esq.,

FARUQI & FARUQI, LLP,
Co-Counsel for Plaintiffs

By: _____
      Anthony Vozzolo, Esq.,

BRAMSON, PLUTZIK, MAHLER & BIRKHAEUSER, LLP,
Co-Counsel for Plaintiffs

By: _____
      Alan R. Plutzik, Esq.,

22

**Exhibit 1**
**Settlement Trust Assets**
**Market Values Calculated as of 12/31/2009***

| CATEGORY | ASSET | FORM OF OWNERSHIP | PERCENT OF OWNERSHIP | TYPE | MARKET VALUE | MORTGAGE BALANCE | ESTIMATED NET EQUITY |
|---|---|---|---|---|---|---|---|
| | Held in Escrow | | | | 877,581 | | 877,581 |
| | | | | | | | |
| A | 202 Eighth Ave, NYC | NYS S-Corp | 50% | MIXED USE | 1,315,672 | 715,672 | 600,000 |
| A | 635 Ninth Ave, NYC | NYS S-Corp | 50% | MIXED USE | 1,653,463 | 1,053,463 | 600,000 |
| A | 654 Ninth Ave, NYC | NYS S-Corp | 50% | MIXED USE | 1,515,672 | 715,672 | 800,000 |
| A | Chelsea Tomato, Inc. | NYS S-Corp | 50% | RESTAURANT | 0 | | 0 |
| A | Ninth Avenue Tomato, Inc. | NYS S-Corp | 50% | RESTAURANT | 0 | | 0 |
| A | 654 Ninth Avenue Restaurant Corp. | NYS S-Corp | 50% | RESTAURANT | 0 | | 0 |
| A | 20 Orchard Hill Dr. | Private | 100% | PVT HOUSE | 1,200,000 | 755,490 | 444,510 |
| A | 638 Bayway Ave, NJ | NJ LLC | 50% | COMMERCIAL | 500,000 | 331,928 | 168,072 |
| A | 1077 Elizabeth Ave, NJ | NJ LLC | 50% | MIXED USE | 500,000 | 327,095 | 172,905 |
| A | 221 East 50th St # 5E | Private | 100% | CO-OP | 350,000 | - | 350,000 |
| A | 2909 Vistamer, LLC | FL LLC | 100% | HOTEL | 2,300,000 | 1,425,093 | 874,907 |
| A | 1164 E Oakland Park Blvd, FL | FL LLC | 100% | COMMERCIAL | 1,700,000 | 594,538 | 1,105,462 |
| A | 2301 NE 16th St, FL | FL S-CORP | 50% | COMMERCIAL | 600,000 | 320,000 | 280,000 |
| A | 3801 N. Ocean Blvd | FL LLC | 50% | HOTEL | 700,000 | 552,605 | 147,395 |
| A | 501 Orton Ave | FL LLC | 33.33% | HOTEL | 500,000 | 388,967 | 111,033 |
| A | 3016 Windamar Ave | FL LLC | 50% | HOTEL | 1,100,000 | 904,749 | 195,251 |
| A | 505 Orton, LLC | FL LLC | 50% | HOTEL | 750,000 | 395,452 | 354,548 |
| A | 528 Antioch Avenue | FL LLC | 50% | APT BLDG | 650,000 | | 650,000 |
| A | 1215 N. Ocean Dr | FL LLC | 50% | HOTEL | 1,250,000 | 668,860 | 581,140 |
| A | 533 Orton, LLC | FL LLC | 50% | HOTEL | 1,250,000 | 567,466 | 682,534 |
| A | Next Printing & Design, Inc. | NYS S-Corp | 50% | PRINTING CO | 10,000 | | 10,000 |
| A | RND Enterprises, Inc. | NYS S-Corp | 50% | MAGAZINE | 20,000 | | 20,000 |
| A | RevClick, LLC | MA LLC | 10% | WEB SERVICES | 15,000 | | 15,000 |
| | | | | | | | |
| | SUB TOTAL GROUP A | | | | 18,757,388 | 9,717,050 | 9,040,338 |

| CATEGORY | ASSET | FORM OF OWNERSHIP | PERCENT OF OWNERSHIP | TYPE | MARKET VALUE | MORTGAGE BALANCE | ESTIMATED NET EQUITY |
|---|---|---|---|---|---|---|---|
| B 1 | 620 NE 20th St | FL LLC | 100% | LAND ONLY | 400,000 | 706,909 | (306,909) |
| B 2 | 2041 NE 9th Ave | FL LLC | 50% | LAND ONLY | 212,500 | 183,628 | 28,872 |
| B 3 | 3209 Pleasant Ave, NJ | NJ LLC | 100% | MIXED USE | 350,000 | | 350,000 |
| B 4 | 511 Bayshore Drive # 404 | FL LLC | 100% | CONDO | 400,000 | 247,878 | 152,122 |
| B 5 | 2801 Rio Mar St. | FL LLC | 50% | HOTEL | 950,000 | 681,035 | 288,965 |
| B 6 | 543 Breakers Ave | FL LLC | 50% | HOTEL | 1,000,000 | 289,340 | 710,660 |
| B 7 | 230 East 58th St, NYC | NYS LLC | 50% | MIXED USE | 1,500,000 | 0 | 1,500,000 |
| B 8 | 550 NE 20th St, FL | FL LLC | 50% | APT BLDG | 700,000 | 368,089 | 331,911 |
| B 9 | 835 NE 18th Ct, FL | FL LLC | 50% | APT BLDG | 600,000 | 316,177 | 283,823 |
| | | | | | | | |
| | SUB TOTAL GROUP B | | | | 6,112,500 | 2,793,056 | 3,319,444 |

| CATEGORY | ASSET | FORM OF OWNERSHIP | PERCENT OF OWNERSHIP | TYPE | MARKET VALUE | MORTGAGE BALANCE | ESTIMATED NET EQUITY |
|---|---|---|---|---|---|---|---|
| C 1 | Avacor Products, LLC | NYS LLC | 33.33% | | 175,000 | | 175,000 |
| C 2 | 540 River St, NY | NYS LLC | 50% | COMMERCIAL | 150,000 | - | 150,000 |
| C 3 | 5 Executive Park Dr., NY | NYS LLC | 20% | COMMERCIAL | 140,000 | - | 140,000 |
| C 4 | 3036 El Cajon Blvd, CA | CA LLC | 28% | COMMERCIAL | 325,800 | 300,841 | 24,959 |
| C 5 | 45 Tudor City Pl. # 1618, NYC | Private | 100% | CO-OP | 300,000 | - | 300,000 |
| C 6 | 321 East 43rd St. # PH12, NYC | Private | 100% | CO-OP | 350,000 | - | 350,000 |
| C 7 | Maracas Greenwich Partners, LLC | NYS LLC | 22.072% | RESTAURANT | 100,000 | | 100,000 |
| C 8 | Maracas Ft. Lauderdale, Inc. | FL Corp | 23% | RESTAURANT | 100,000 | | 100,000 |
| C 9 | Lips Lauderdale Partners, LLC | FL LLC | 19% | RESTAURANT | 200,000 | | 200,000 |
| C10 | 321 West 13th St. # 1C NYC | NYS LLC | 100% | CONDO | 800,000 | - | 800,000 |
| | SUB TOTAL GROUP C | | | | 2,640,800 | 300,841 | 2,339,959 |

| CATEGORY | ASSET | FORM OF OWNERSHIP | PERCENT OF OWNERSHIP | TYPE | MARKET VALUE | MORTGAGE BALANCE | ESTIMATED NET EQUITY |
|---|---|---|---|---|---|---|---|
| D 1 | 2-4 Bank Street** | NYS LLC | 50.00% | COMMERCIAL | 5,000,000 | 491,422 | 4,508,578 |
| | SUB TOTAL GROUP D | | | | 5,000,000 | 491,422 | 4,508,578 |
| | SUB TOTAL GROUPS  A TO D | | | | 32,510,688 | 13,302,369 | 19,208,319 |

| CATEGORY | ASSET | FORM OF OWNERSHIP | PERCENT OF OWNERSHIP | TYPE | MARKET VALUE | MORTGAGE BALANCE | ESTIMATED NET EQUITY |
|---|---|---|---|---|---|---|---|
| E 1 | Cowo, Inc. | CA S-Corp | 26% | RESTAURANT | 500,000 | | 500,000 |
| E 2 | River Street Club, Inc. | NYS S-Corp | 50% | PVT CLUB | 1,500,000 | | 1,500,000 |
| E 3 | East Side Club, LLC | NYS LLC | 31.66% | PVT CLUB | 2,500,000 | | 2,500,000 |
| E 4 | House Laundry Inc. | NYS S-Corp | 75% | LAUNDRY | 40,000 | | 40,000 |
| E 5 | W S Club, LLC | NYS LLC | 33.75% | PVT CLUB | 2,500,000 | | 2,500,000 |
| E 6 | Upstairs, Downstairs of NY Inc. | NYS S-Corp | 50% | BAR | 1,000,000 | | 1,000,000 |
| E 7 | Hanford & Henderson Management, LLC | NYS LLC | 100% | RE MGMT | 3,000,000 | | 3,000,000 |
| | SUB TOTAL GROUP E | | | | 11,040,000 | 0 | 11,040,000 |
| | GRAND TOTAL ALL GROUPS | | | | 43,550,688 | 13,302,369 | 30,248,319 |

* Category E values based on independent estimate of Class Counsel
** There is an option to purchase in 24 months at $3,133,578, but the option holder has expressed interest in purchasing sooner which could result in a closer to
market value purchase

<u>EXHIBIT 2-A</u>

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT – THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

## POWER OF ATTORNEY
## NEW YORK STATUTORY SHORT FORM

**(A) CAUTION TO THE PRINCIPAL: YOUR POWER OF ATTORNEY IS AN IMPORTANT DOCUMENT. AS THE "PRINCIPAL," YOU GIVE THE PERSON WHOM YOU CHOOSE (YOUR "AGENT") AUTHORITY TO SPEND YOUR MONEY AND SELL OR DISPOSE OF YOUR PROPERTY DURING YOUR LIFETIME WITHOUT TELLING YOU. YOU DO NOT LOSE YOUR AUTHORITY TO ACT EVEN THOUGH YOU HAVE GIVEN YOUR AGENT SIMILAR AUTHORITY.**

**WHEN YOUR AGENT EXERCISES THIS AUTHORITY, HE OR SHE MUST ACT ACCORDING TO ANY INSTRUCTIONS YOU HAVE PROVIDED OR, WHERE THERE ARE NO SPECIFIC INSTRUCTIONS, IN YOUR BEST INTEREST. "IMPORTANT INFORMATION FOR THE AGENT" AT THE END OF THIS DOCUMENT DESCRIBES YOUR AGENT'S RESPONSIBILITIES.**

**YOUR AGENT CAN ACT ON YOUR BEHALF ONLY AFTER SIGNING THE POWER OF ATTORNEY BEFORE A NOTARY PUBLIC.**

**YOU CAN REQUEST INFORMATION FROM YOUR AGENT AT ANY TIME. IF YOU ARE REVOKING A PRIOR POWER OF ATTORNEY BY EXECUTING THIS POWER OF ATTORNEY, YOU SHOULD PROVIDE WRITTEN NOTICE OF THE REVOCATION TO YOUR PRIOR AGENT(S) AND TO THE FINANCIAL INSTITUTIONS WHERE YOUR ACCOUNTS ARE LOCATED.**

**YOU CAN REVOKE OR TERMINATE YOUR POWER OF ATTORNEY AT ANY TIME FOR ANY REASON AS LONG AS YOU ARE OF SOUND MIND. IF YOU ARE NO LONGER OF SOUND MIND, A COURT CAN REMOVE AN AGENT FOR ACTING IMPROPERLY.**

**YOUR AGENT CANNOT MAKE HEALTH CARE DECISIONS FOR YOU. YOU MAY EXECUTE A "HEALTH CARE PROXY" TO DO THIS.**

**THE LAW GOVERNING POWERS OF ATTORNEY IS CONTAINED IN THE NEW YORK GENERAL OBLIGATIONS LAW, ARTICLE 5, TITLE 15. THIS LAW IS AVAILABLE AT A LAW LIBRARY, OR ONLINE THROUGH THE NEW YORK STATE SENATE OR ASSEMBLY WEBSITES, WWW.SENATE.STATE.NY.US OR WWW.ASSEMBLY.STATE.NY.US.**

**IF THERE IS ANYTHING ABOUT THIS DOCUMENT THAT YOU DO NOT UNDERSTAND, YOU SHOULD ASK A LAWYER OF YOUR OWN CHOOSING TO EXPLAIN IT TO YOU.**

(b) DESIGNATION OF AGENT(S):

I, Robert N. DeBenedictis, residing at 625 Orton Avenue, #7, Ft. Lauderdale, Florida 33304

do hereby appoint:

Simon Kimmelman, in his capacity as Settlement Trustee under the Qualifying Settlement Trust Agreement dated as of May 21, 2010, having an address at c/o Sills Cummis & Gross P.C., 650 College Road East, Princeton, NJ 08540

(If one person is to be appointed agent, insert the name and address of your agent above)

_____residing at _____
_____residing at _____
_____residing at _____

(If more than one person is to be appointed agent, insert the name(s) and address(es) of your additional agent(s) above)

1

If you designate more than one agent above, they must act together unless you initial the statement below.

(   ) My agents may act **SEPARATELY.**

(c) DESIGNATION OF SUCCESSOR AGENT(S): (OPTIONAL) If every agent designated above is unable or unwilling to serve, I appoint as my successor agent(s):

_____residing at _____

_____residing at _____

_____residing at _____

(Insert the name(s) and address(es )of the successor agent(s) above)

Successor agents designated above must act together unless you initial the statement below.

(   ) My successor agents may act **SEPARATELY**.

(d)  This POWER OF ATTORNEY shall not be affected by my subsequent incapacity unless I have stated otherwise below, under "Modifications".

(e) This POWER OF ATTORNEY REVOKES any and all prior Powers of Attorney executed by me unless I have stated otherwise below, under "Modifications."

If you are NOT revoking your prior Powers of Attorney, and if you are granting the same authority in two or more Powers of Attorney, you must also indicate under "Modifications" whether the agents given these powers are to act together or separately.

(f) GRANT OF AUTHORITY:  To grant your agent some or all of the authority below, either

> (1) Initial the bracket at each authority you grant, or
> (2) Write or type the letters for each authority you grant on the blank line at (P), and initial the bracket at (P).  If you initial  (P), you do not need to initial the other lines.

**I grant authority to my agent(s) with respect to the following subjects as defined in sections 5-1502A through 5-1502N of the New York General Obligations Law:**

**( X ) (A) real estate transactions;**

**( X ) (B) chattel and goods transactions;**

**(   ) (C) bond, share, and commodity transactions;**

**( X ) (D) banking transactions;**

**(   ) (E) business operating transactions;**

**(   ) (F) insurance transactions;**

**(   ) (G) estate transactions;**

**(   ) (H) claims and litigation;**

**(   ) (I) personal and family maintenance;**

**(   ) (J) benefits from governmental programs or civil or military service;**

**(   ) (K) health care billing and  payment matters; records, reports, and statements;**

**(   ) (L) retirement benefit transactions;**

**(   ) (M) tax matters;**

**(   ) (N) all other matters;**

**(   ) (O) full and unqualified authority to my agent(s) to  delegate any or all of the foregoing powers to any person or persons whom my agent(s) select;**

**(   ) (P) EACH of the matters identified by the following letters_____**

**You need not initial the other lines if you initial line (P).**

2

(g) MODIFICATIONS: (OPTIONAL) In this section, you may make additional provisions, including language to limit or supplement authority granted to your agent. However, you cannot use this Modifications section to grant your agent authority to make major gifts or changes to interests in your property. If you wish to grant your agent such authority, you MUST complete the Statutory Major Gifts Rider.

The powers granted by this Power of Attorney are limited in that they only apply with respect to and in connection with the assets and property identified on Schedule A hereto which are located within the State of New York, and conversely do not apply to any assets or property of the Principal other than those listed on Schedule A hereto which are located within the State of New York, and are not to be used in any manner which is inconsistent with the terms of that certain Qualifying Settlement Trust Agreement dated as of May 21, 2010.

(h) MAJOR GIFTS AND OTHER TRANSFERS: STATUTORY MAJOR GIFTS RIDER (OPTIONAL) In order to authorize your agent to make major gifts and other transfers of your property, you must initial the statement below and execute a Statutory Major Gifts Rider at the same time as this instrument. Initialing the statement below by itself does not authorize your agent to make major gifts and other transfers.

The preparation of the Statutory Major Gifts Rider should be supervised by a lawyer.

> (   )(SMGR) I grant my agent authority to make major gifts and other transfers of my property, in accordance with the terms and conditions of the Statutory Major Gifts Rider that supplements this Power of Attorney.

(i) DESIGNATION OF MONITOR(S): (OPTIONAL)
I wish to designate _____,
whose address(es) is (are) _____ ,
as monitor(s). Upon the request of the monitor(s), my agent(s) must provide the monitor(s) with a copy of the power of attorney and a record of all transactions done or made on my behalf. Third parties holding records of such transactions shall provide the records to the monitor(s) upon request.

(j) COMPENSATION OF AGENT(S): (OPTIONAL) Your agent is entitled to be reimbursed from your assets for reasonable expenses incurred on your behalf. If you ALSO wish your agent(s) to be compensated from your assets for services rendered on your behalf, initial the statement below. If you wish to define "reasonable compensation", you may do so above, under "Modifications".

(   ) My agent(s) shall be entitled to reasonable compensation for services rendered.

(k) ACCEPTANCE BY THIRD PARTIES: I agree to indemnify the third party for any claims that may arise against the third party because of reliance on this Power of Attorney. I understand that any termination of this Power of Attorney, whether the result of my revocation of the Power of Attorney or otherwise, is not effective as to a third party until the third party has actual notice or knowledge of the termination.

3

(l)  TERMINATION:  This Power of Attorney continues until I revoke it or it is terminated by my death or other event described in section  5-1511 of the General Obligations Law.  Section 5-1511 of the General Obligations Law describes the manner in which you may revoke your Power of Attorney, and the events which terminate the Power of Attorney.

(m) SIGNATURE AND ACKNOWLEDGMENT:

**IN WITNESS WHEREOF I have hereunto signed my name on** May 21, 2010.

> **PRINCIPAL signs here:**

> Robert N. DeBenedictis

*The GENERAL OBLIGATIONS LAW § 5-1501B REQUIRES THAT THIS INSTRUMENT BE ACKNOWLEDGED BY THE PRINCIPAL.*

STATE OF NEW YORK, COUNTY OF_____ } ss.:
On the 21st day of May in the year 2010. before me, the undersigned, personally appeared, Robert N. DeBenedictis personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary Public – Sign Above and Affix Stamp

GEORGE B. PETKANICS
Notary Public, State of New York
No. 31-4901319
Qualified in New York County
Commission Expires June 29, 10.20 11

(n) IMPORTANT INFORMATION FOR THE AGENT: When you accept the authority granted under this Power of Attorney, a special legal relationship is created between you and the principal. This relationship imposes on you legal responsibilities that continue until you resign or the Power of Attorney is terminated or revoked. You must:

> (1) act according to any instructions from the principal, or, where there are no instructions, in the principal's best interest;
> (2) avoid conflicts that would impair your ability to act in the principal's best interest;
> (3) keep the principal's property separate and distinct from any assets you own or control, unless otherwise permitted by law;
> (4) keep a record or all receipts, payments, and transactions conducted for the principal; and
> (5) disclose your identity as an agent whenever you act for the principal by writing or printing the principal's name and signing your own name as "agent" in either of the following manner: (Principal's Name) by (Your Signature) as Agent, or (your signature) as Agent for (Principal's Name).

> You may not use the principal's assets to benefit yourself or give major gifts to yourself or anyone else unless the principal has specifically granted you that authority in this Power of Attorney or in a Statutory Major Gifts Rider attached to this Power of Attorney. If you have that authority, you must act according to any instructions of the principal or, where there are no such instructions, in the principal's best interest. You may resign by giving written notice to the principal and to any co-agent, successor agent, monitor if one has been named in this document, or the principal's guardian if one has been appointed. If there is anything about this document or your

4

responsibilities that you do not understand, you should seek legal advice.

LIABILITY OF AGENT: The meaning of the authority given to you is defined in New York's General Obligations Law, Article 5, Title 15. If it is found that you have violated the law or acted outside the authority granted to you in the Power of Attorney, you may be liable under the law for your violation.

(o) AGENT'S SIGNATURE AND ACKNOWLEDGMENT OF APPOINTMENT:

It is not required that the principal and the agent(s) sign at the same time, nor that multiple agents sign at the same time.

I, Simon Kimmelman, in my capacity as Settlement Trustee under the Qualifying Settlement Trust Agreement dated as of May 21, 2010, have read the foregoing Power of Attorney. I am the person(s) identified therein as agent(s) for the principal named therein. I acknowledge my legal responsibilities.

AGENT(S) sign(s) here: _____

Simon Kimmelman, Settlement Trustee

_____

_____

*STATE OF _____, COUNTY OF_____ ) ss.:*
*On the _____ day of_____ in the year 2010. before me, the undersigned, personally appeared, Simon Kimmelman personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.*

_____
*Notary Public – Sign Above and Affix Stamp*

5

**AFFIDAVIT OF EFFECTIVENESS**
**(TO BE COMPLETED BY AGENT(S) UPON DELIVERY OF THIS POWER)**

STATE OF NEW YORK, COUNTY OF _____} ss.:

_____, residing at _____
_____
(each) being duly sworn do(es) depose and say that I am (we are) the Agent(s) under the above Power of Attorney and that the power of attorney is in full force and effect.  That (a) I/we do not have, at the time of the transaction, actual notice of the termination or revocation of the Power of Attorney, or notice of any facts indicating that the power of attorney has been terminated or revoked; (b) I/we do not have, at the time of the transaction, actual notice that the Power of Attorney has been modified in any way that would affect the ability of the AGENT to authorize or engage in the transaction, or notice of any facts indicating that the Power of Attorney has been so modified; and (c) if I/we was/were named as successor Agent(s), the prior Agent(s) is no longer able or willing to serve.  This affidavit if given for the purpose of the Agent executing a _____
_____ [describe documents that are executed] knowing that _____, will rely upon the representations made herein as inducement to accept such instrument(s) and this Power of Attorney as evidence of my/our authority to act..

_____
Agent

_____
Agent

**Sworn to and Subscribed before me**
**this _____ day of _____, _____**

_____
**(Notary Sign above and Affix Stamp)**


# Statutory Power of Attorney

**(Pursuant to General Obligations Law § 5-1513)**

TITLE NO. _____

*Robert N. DeBenedictis*

**TO**

*Simon Kimmelman, as Settlement Trustee*

*District:*
*Section:*
*Block:*
*Lot:*
*County or Town:*

**RETURN BY MAIL TO:**

6

Schedule A

202 Eighth Ave, NYC
635 Ninth Ave, NYC
654 Ninth Ave, NYC
Chelsea Tomato, Inc.
Ninth Avenue Tomato, Inc.
654 Ninth Avenue Restaurant Corp.
20 Orchard Hill Dr.
638 Bayway Ave, NJ
1077 Elizabeth Ave, NJ
221 East 50th St # 5E
2909 Vistamar, LLC
1164 E Oakland Park Blvd, FL
2301 NE 16th St, FL
3801 N. Ocean Blvd
501 Orton Ave
3016 Windamar Ave
505 Orton, LLC
528 Antioch Avenue
1215 N. Ocean Dr
533 Orton, LLC
Next Printing & Design, Inc.
RND Enterprises, Inc.
RevClick, LLC
620 NE 20th St
2041 NE 9th Ave
3209 Pleasant Ave, NJ
511 Bayshore Drive # 404
2801 Rio Mar St.
543 Breakers Ave
230 East 58th St, NYC
550 NE 20th St, FL
835 NE 18th Ct, FL
Avacor Products, LLC
540 River St, NY
5 Executive Park Dr., NY
3036 El Cajon Blvd, CA
45 Tudor City Pl. # 1618, NYC
321 East 43rd St. # PH12, NYC
Maracas Greenwich Partners, LLC
Maracas Ft. Lauderdale, Inc.
Lips Lauderdale Partners, LLC
321 West 13th St. # 1C NYC
2-4 Bank Street
Cowo, Inc.
River Street Club, Inc.
East Side Club, LLC
House Laundry Inc.
W S Club, LLC
Upstairs, Downstairs of NY Inc.
Hanford & Henderson Management, LLC

7

EXHIBIT 2-B

**NEW JERSEY GENERAL DURABLE POWER OF ATTORNEY**

**THE POWERS YOU GRANT BELOW ARE EFFECTIVE
EVEN IF YOU BECOME DISABLED OR INCOMPETENT**

NOTICE:  THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING.  THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE.  THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Robert N. DeBenedictis, having an address at 625 Orton Avenue, #7, Ft. Lauderdale, Florida 33304, appoint Simon Kimmelman, in his capacity as Settlement Trustee under the Qualifying Trust Agreement dated as of May 21, 2010, having an address at c/o Sills Cummis & Gross P.C., 650 College Road East, Princeton, New Jersey 08540 as my Agent (attorney-in-fact) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

**Note:  If you initial Item A or Item B, which follow, a notarized signature will be required on behalf of the Principal.**

INITIAL

_____ **(A) Real property transactions.**  To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, tear down, alter, rebuild, improve manage, insure, move, rent, lease, sell, convey, subject to liens, mortgages, and security deeds, and in any way or manner deal with all or any part of any interest in real property whatsoever, including specifically, but without limitation, real property lying and being situated in the State of New Jersey, under such terms and conditions, and under such covenants, as my Agent shall deem proper and may for all deferred payments accept purchase money notes payable to me and secured by mortgages or deeds to secure debt, and may from time to time collect and cancel any of said notes, mortgages, security interests, or deeds to secure debt.

_____ **(B) Tangible personal property transactions.**  To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or to take any other security interests in said property which are recognized under the Uniform Commercial Code as adopted at that time under the laws of the State of New Jersey or any applicable state, or otherwise hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem proper.

_____ **(C) Stock and bond transactions.**  To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business,

1739216 v2

association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

_____ **(D) Commodity and option transactions.** To buy, sell, exchange, assign, convey, settle and exercise commodities futures contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions; establish or continue option accounts for the principal with any securities or futures broker; and, in general, exercise all powers with respect to commodities and options which the principal could if present and under no disability.

_____ **(E) Banking and other financial institution transactions.** To make, receive, sign, endorse, execute, acknowledge, deliver and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations. To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent. To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part. To have free access at any time or times to any safe deposit box or vault to which I might have access.

_____ **(F) Business operating transactions.** To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust or other legal entity; operate, buy, sell, expand, contract, terminate or liquidate any business; direct, control, supervise, manage or participate in the operation of any business and engage, compensate and discharge business managers, employees, agents, attorneys, accountants and consultants; and, in general, exercise all powers with respect to business interests and operations which the principal could if present and under no disability.

_____ **(G) Insurance and annuity transactions.** To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts.

_____ **(H) Estate, trust, and other beneficiary transactions.** To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim and recover any legacy, bequest, devise, gift or other property interest or payment due or payable to or for the principal; assert any interest in and exercise any power over any trust, estate or property subject to fiduciary control; establish a revocable trust solely for the benefit of the principal that terminates at the death of the principal and is then distributable to the legal representative of the estate of the principal; and, in general, exercise all powers with respect to estates and trusts which the principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the principal or require the trustee of any trust for the benefit of the principal to pay income or principal to the Agent unless specific authority to that end is given.

_____ **(I) Claims and litigation.** To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my Agent shall deem proper.

_____ **(J) Personal and family maintenance.** To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

_____ **(K) Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.** To prepare, sign and file any claim or application for Social Security, unemployment or

military service benefits; sue for, settle or abandon any claims to any benefit or assistance under any federal, state, local or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service or other state, federal, local or foreign statute or regulation; and, In general, exercise all powers with respect to Social Security, unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the principal could exercise if present and under no disability.

_____ **(L) Retirement plan transactions.**  To contribute to, withdraw from and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and other retirement plan, individual retirement account, deferred compensation plan and any other type of employee benefit plan); select and change payment options for the principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the principal could if present and under no disability.

_____ **(M) Tax matters.**  To prepare, to make elections, to execute and to file all tax, social security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

_____ **(N) ALL OF THE POWERS LISTED ABOVE.** YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

## SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

The powers granted by this Power of Attorney are limited in that they only apply with respect to and in connection with the assets and property identified on Schedule A hereto which are located within the State of New Jersey, and conversely do not apply to any assets or property of the Principal other than those listed on Schedule A hereto which are located within the State of New Jersey, and are not to be used in any manner which is inconsistent with the terms of that certain Qualifying Settlement Trust Agreement dated as of May 21, 2010.

THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

THIS POWER OF ATTORNEY SHALL BE CONSTRUED AS A GENERAL DURABLE POWER OF ATTORNEY AND SHALL CONTINUE TO BE EFFECTIVE EVEN IF I BECOME DISABLED, INCAPACITATED, OR INCOMPETENT.

(YOUR AGENT WILL HAVE AUTHORITY TO EMPLOY OTHER PERSONS AS NECESSARY TO ENABLE THE AGENT TO PROPERLY EXERCISE THE POWERS GRANTED IN THIS FORM, BUT YOUR AGENT WILL HAVE TO MAKE ALL DISCRETIONARY DECISIONS. IF YOU WANT TO GIVE YOUR AGENT THE RIGHT TO DELEGATE DISCRETIONARY DECISION-MAKING POWERS TO OTHERS, YOU SHOULD KEEP THE NEXT SENTENCE, OTHERWISE IT SHOULD BE STRICKEN.)

**Authority to Delegate.**  My Agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my Agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference.

(YOUR AGENT WILL BE ENTITLED TO REIMBURSEMENT FOR ALL REASONABLE EXPENSES INCURRED IN ACTING UNDER THIS POWER OF ATTORNEY. STRIKE OUT THE NEXT SENTENCE IF YOU DO NOT WANT YOUR AGENT TO ALSO BE ENTITLED TO REASONABLE COMPENSATION FOR

SERVICES AS AGENT.)

**Right to Compensation.** My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

**Successor Agent.** If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

**Choice of Law.** THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE STATE OF NEW JERSEY AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _21_ day of May, 2010

_____
Robert N. DeBenedictis

_____

[Notary Seal, if any]:

_____
(Signature of Notarial Officer)

BRYAN G. PETKANICS
Notary Public, State of New York       Notary Public for the State of New York
No. 31-4901319
Qualified in New York County            My commission expires: _____
Commission Expires June 29, 1911

_____

## ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____
Simon Kimmelman, as Settlement Trustee

1739216 v2

SERVICES AS AGENT.)

**Right to Compensation.** My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

**Successor Agent.** If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

**Choice of Law.** THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE COMMONWEALTH OF MASSACHUSETTS AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _____ day of May, 2010

_____
Robert N. DeBenedictis

_____

[Notary Seal, if any]:

_____
(Signature of Notarial Officer)

Notary Public

My commission expires: _____

_____

### ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____
Simon Kimmelman, as Settlement Trustee

1762658 v1

**PREPARATION STATEMENT**

This document was prepared by the following individual:

Robert Hempstead, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102

Schedule A

202 Eighth Ave, NYC
635 Ninth Ave, NYC
654 Ninth Ave, NYC
Chelsea Tomato, Inc.
Ninth Avenue Tomato, Inc.
654 Ninth Avenue Restaurant Corp.
20 Orchard Hill Dr.
638 Bayway Ave, NJ
1077 Elizabeth Ave, NJ
221 East 50th St # 5E
2909 Vistamar, LLC
1164 E Oakland Park Blvd, FL
2301 NE 16th St, FL
3801 N. Ocean Blvd
501 Orton Ave
3016 Windamar Ave
505 Orton, LLC
528 Antioch Avenue
1215 N. Ocean Dr
533 Orton, LLC
Next Printing & Design, Inc.
RND Enterprises, Inc.
RevClick, LLC
620 NE 20th St
2041 NE 9th Ave
3209 Pleasant Ave, NJ
511 Bayshore Drive # 404
2801 Rio Mar St.
543 Breakers Ave
230 East 58th St, NYC
550 NE 20th St, FL
835 NE 18th Ct, FL
Avacor Products, LLC
540 River St, NY
5 Executive Park Dr., NY
3036 El Cajon Blvd, CA
45 Tudor City Pl. # 1618, NYC
321 East 43rd St. # PH12, NYC
Maracas Greenwich Partners, LLC
Maracas Ft. Lauderdale, Inc.
Lips Lauderdale Partners, LLC
321 West 13th St. # 1C NYC
2-4 Bank Street
Cowo, Inc.

River Street Club, Inc.
East Side Club, LLC
House Laundry Inc.
W S Club, LLC
Upstairs, Downstairs of NY Inc.
Hanford & Henderson Management, LLC

EXHIBIT 2-C

**FLORIDA GENERAL DURABLE POWER OF ATTORNEY**

**THE POWERS YOU GRANT BELOW ARE EFFECTIVE
EVEN IF YOU BECOME DISABLED OR INCOMPETENT**

**This durable power of attorney is not affected by subsequent incapacity of the principal
except as provided in §709.08, Florida Statutes.**

NOTICE:  THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING.  THEY ARE
EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT.  IF YOU HAVE ANY
QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE.  THIS DOCUMENT
DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR
YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Robert N. DeBenedictis, residing at 625 Orton Avenue, #7, Ft. Lauderdale, Florida 33304, appoint Simon
Kimmelman, in his capacity as Settlement Trustee under the Qualifying Settlement Trust Agreement dated
as of May 21, 2010, having an address at c/o Sills Cummis & Gross P.C., 650 College Road East,
Princeton, New Jersey 08540, as my Agent (attorney-in-fact) to act for me in any lawful way with respect to
the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE
THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE
LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT,
CROSS OUT EACH POWER WITHHELD.

**Note:  If you initial Item A or Item B, which follow, a notarized signature will be required on behalf of
the Principal.**

INITIAL

_____   **(A) Real property transactions.**  To lease, sell, mortgage, purchase, exchange, and acquire, and
to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept,
take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and
under such covenants, as my Agent shall deem proper; and to maintain, repair, tear down, alter, rebuild,
improve manage, insure, move, rent, lease, sell, convey, subject to liens, mortgages, and security deeds,
and in any way or manner deal with all or any part of any interest in real property whatsoever, including
specifically, but without limitation, real property lying and being situated in the State of Florida, under such
terms and conditions, and under such covenants, as my Agent shall deem proper and may for all deferred
payments accept purchase money notes payable to me and secured by mortgages or deeds to secure debt,
and may from time to time collect and cancel any of said notes, mortgages, security interests, or deeds to
secure debt.

_____   **(B) Tangible personal property transactions.**  To lease, sell, mortgage, purchase, exchange,
and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of,
and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or
interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper;
and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or
to take any other security interests in said property which are recognized under the Uniform Commercial
Code as adopted at that time under the laws of the State of Florida or any applicable state, or otherwise
hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property
whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may
thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem
proper.

1739226 v2

_____ **(C) Stock and bond transactions.**  To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business, association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

_____ **(D) Commodity and option transactions.** To buy, sell, exchange, assign, convey, settle and exercise commodities futures contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions; establish or continue option accounts for the principal with any securities or futures broker; and, in general, exercise all powers with respect to commodities and options which the principal could if present and under no disability.

_____ **(E) Banking and other financial institution transactions.**  To make, receive, sign, endorse, execute, acknowledge, deliver and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations.  To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent.  To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part.  To have free access at any time or times to any safe deposit box or vault to which I might have access.

_____ **(F) Business operating transactions.**  To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust or other legal entity; operate, buy, sell, expand, contract, terminate or liquidate any business; direct, control, supervise, manage or participate in the operation of any business and engage, compensate and discharge business managers, employees, agents, attorneys, accountants and consultants; and, in general, exercise all powers with respect to business interests and operations which the principal could if present and under no disability.

_____ **(G) Insurance and annuity transactions.**  To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts.

_____ **(H) Estate, trust, and other beneficiary transactions.**  To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim and recover any legacy, bequest, devise, gift or other property interest or payment due or payable to or for the principal; assert any interest in and exercise any power over any trust, estate or property subject to fiduciary control; establish a revocable trust solely for the benefit of the principal that terminates at the death of the principal and is then distributable to the legal representative of the estate of the principal; and, in general, exercise all powers with respect to estates and trusts which the principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the principal or require the trustee of any trust for the benefit of the principal to pay income or principal to the Agent unless specific authority to that end is given.

_____ **(I) Claims and litigation.**  To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned.  To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my Agent shall deem proper.

_____ **(J) Personal and family maintenance.**  To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

_____ **(K) Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.** To prepare, sign and file any claim or application for Social Security, unemployment or military service benefits; sue for, settle or abandon any claims to any benefit or assistance under any federal, state, local or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service or other state, federal, local or foreign statute or regulation; and, in general, exercise all powers with respect to Social Security, unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the principal could exercise if present and under no disability.

_____ **(L) Retirement plan transactions.** To contribute to, withdraw from and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and other retirement plan, individual retirement account, deferred compensation plan and any other type of employee benefit plan); select and change payment options for the principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the principal could if present and under no disability.

_____ **(M) Tax matters.** To prepare, to make elections, to execute and to file all tax, social security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

_____ **(N) ALL OF THE POWERS LISTED ABOVE.** YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

**SPECIAL INSTRUCTIONS:**

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

The powers granted by this Power of Attorney are limited in that they only apply with respect to and in connection with the assets and property identified on Schedule A hereto which are located within the State of Florida, and conversely do not apply to any assets or property of the Principal other than those listed on Schedule A hereto which are located within the State of Florida, and are not to be used in any manner which is inconsistent with the terms of that certain Qualifying Settlement Trust Agreement dated as of May 21, 2010.

THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

THIS POWER OF ATTORNEY SHALL BE CONSTRUED AS A GENERAL DURABLE POWER OF ATTORNEY AND SHALL CONTINUE TO BE EFFECTIVE EVEN IF I BECOME DISABLED, INCAPACITATED, OR INCOMPETENT.

(YOUR AGENT WILL HAVE AUTHORITY TO EMPLOY OTHER PERSONS AS NECESSARY TO ENABLE THE AGENT TO PROPERLY EXERCISE THE POWERS GRANTED IN THIS FORM, BUT YOUR AGENT WILL HAVE TO MAKE ALL DISCRETIONARY DECISIONS. IF YOU WANT TO GIVE YOUR AGENT THE RIGHT TO DELEGATE DISCRETIONARY DECISION-MAKING POWERS TO OTHERS, YOU SHOULD KEEP THE NEXT SENTENCE, OTHERWISE IT SHOULD BE STRICKEN.)

**Authority to Delegate.** My Agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my Agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference.

(YOUR AGENT WILL BE ENTITLED TO REIMBURSEMENT FOR ALL REASONABLE EXPENSES

INCURRED IN ACTING UNDER THIS POWER OF ATTORNEY. STRIKE OUT THE NEXT SENTENCE IF YOU DO NOT WANT YOUR AGENT TO ALSO BE ENTITLED TO REASONABLE COMPENSATION FOR SERVICES AS AGENT.)

**Right to Compensation.** My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

**Successor Agent.** If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

**Choice of Law.** THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE STATE OF FLORIDA WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE STATE OF FLORIDA AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _2 1_ day of May, 2010

Robert N. DeBenedictis

_____

**STATEMENT OF WITNESS**

On the date written above, the principal declared to me in my presence that this instrument is his general durable power of attorney and that he or she had willingly signed or directed another to sign for him or her, and that he or she executed it as his or her free and voluntary act for the purposes therein expressed.

_____  [Signature of Witness #1]
_____  [Printed or typed name of Witness #1]
_____  [Address of Witness #1, Line 1]
_____  [Address of Witness #1, Line 2]


_____  [Signature of Witness #2]
_____  [Printed or typed name of Witness #2]
_____  [Address of Witness #2, Line 1]
_____  [Address of Witness #2, Line 2]

1739226 v2

## CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

STATE OF _N Y_

COUNTY OF _N Y_

Sworn to (or affirmed) and subscribed before me this _21st_ day of May, 2010 by Robert N. DeBenedictis. The affiant is [choose one:] _____ personally known to me, or _✓___ produced the following identification: _FL Drivers License_  _D153-760-34-307-0_

[Notary Seal, if any]:

_____
(Signature of Notarial Officer)

BRYAN G. PETKANICS
Notary Public, State of New York
No. 31-4901319
Qualified in New York County
Commission Expires June 29, 20~~10~~11

Notary Public for the State of ~~Florida~~ N Y

My commission expires: _____

## ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____
Simon Kimmelman, as Settlement Trustee

## PREPARATION STATEMENT

This document was prepared by the following individual:

Robert Hempstead, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102

## AFFIDAVIT OF AGENT (ATTORNEY IN FACT)

STATE OF _____
COUNTY OF _____

Before me, the undersigned authority, personally appeared Simon Kimmelman, ("Affiant"), who swore or affirmed that:

1739226 v2

## CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

STATE OF _____
COUNTY OF _____

Sworn to (or affirmed) and subscribed before me this _____day of May, 2010 by Robert N. DeBenedictis. The affiant is [choose one:] ____ personally known to me, or ____ produced the following identification: _____.

[Notary Seal, if any]:

_____
(Signature of Notarial Officer)

Notary Public for the State of Florida

My commission expires: _____

## ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____
Simon Kimmelman, as Settlement Trustee

## PREPARATION STATEMENT

This document was prepared by the following individual:

Robert Hempstead, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102

## AFFIDAVIT OF AGENT (ATTORNEY IN FACT)

STATE OF _____
COUNTY OF _____

Before me, the undersigned authority, personally appeared Simon Kimmelman, ("Affiant"), who swore or affirmed that:

1739226 v2

1. Affiant is the attorney in fact named in the Florida General Durable Power of Attorney executed by Robert N. DeBenedictis ("Principal") on May __, 2010.

2. This Florida General Durable Power of Attorney is currently exercisable by Affiant. The principal is domiciled in Florida.

3. To the best of the Affiant's knowledge after diligent search and inquiry:

a. The Principal is not deceased; and

b. There has been no revocation, partial or complete termination by adjudication of incapacity or by the occurrence of an event referenced in the durable power of attorney, or suspension by initiation of proceedings to determine incapacity or to appoint a guardian.

4. Affiant agrees not to exercise any powers granted by the Florida General Durable Power of Attorney if Affiant attains knowledge that it has been revoked, partially or completely terminated, suspended, or is no longer valid because of the death or adjudication of incapacity of the Principal.


_____
Simon Kimmelman, as Settlement Trustee

### CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

Sworn to (or affirmed) and subscribed before me this _____day of _____ [month], _____ [year] by _____ [name of agent]. The affiant is [*choose one:*] _____ personally known to me, or _____ produced the following identification: _____.

[Notary Seal, if any]:


_____
(Signature of Notarial Officer)

Notary Public

My commission expires: _____

1739226 v2

Schedule A

202 Eighth Ave, NYC
635 Ninth Ave, NYC
654 Ninth Ave, NYC
Chelsea Tomato, Inc.
Ninth Avenue Tomato, Inc.
654 Ninth Avenue Restaurant Corp.
20 Orchard Hill Dr.
638 Bayway Ave, NJ
1077 Elizabeth Ave, NJ
221 East 50th St # 5E
2909 Vistamar, LLC
1164 E Oakland Park Blvd, FL
2301 NE 16th St, FL
3801 N. Ocean Blvd
501 Orton Ave
3016 Windamar Ave
505 Orton, LLC
528 Antioch Avenue
1215 N. Ocean Dr
533 Orton, LLC
Next Printing & Design, Inc.
RND Enterprises, Inc.
RevClick, LLC
620 NE 20th St
2041 NE 9th Ave
3209 Pleasant Ave, NJ
511 Bayshore Drive # 404
2801 Rio Mar St.
543 Breakers Ave
230 East 58th St, NYC
550 NE 20th St, FL
835 NE 18th Ct, FL
Avacor Products, LLC
540 River St, NY
5 Executive Park Dr., NY
3036 El Cajon Blvd, CA
45 Tudor City Pl. # 1618, NYC
321 East 43rd St. # PH12, NYC
Maracas Greenwich Partners, LLC
Maracas Ft. Lauderdale, Inc.
Lips Lauderdale Partners, LLC
321 West 13th St. # 1C NYC
2-4 Bank Street
Cowo, Inc.

River Street Club, Inc.
East Side Club, LLC
House Laundry Inc.
W S Club, LLC
Upstairs, Downstairs of NY Inc.
Hanford & Henderson Management, LLC

<u>EXHIBIT 2-D</u>

**MASSACHUSETTS GENERAL DURABLE POWER OF ATTORNEY**

**THE POWERS YOU GRANT BELOW ARE EFFECTIVE
EVEN IF YOU BECOME DISABLED OR INCOMPETENT**

NOTICE:  THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING.  THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE.  THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Robert N. DeBenedictis, having an address at 625 Orton Avenue, #7, Ft. Lauderdale, Florida 33304, appoint Simon Kimmelman, in his capacity as Settlement Trustee under the Qualifying Trust Agreement dated as of May 21, 2010, having an address at c/o Sills Cummis & Gross P.C., 650 College Road East, Princeton, New Jersey 08540 as my Agent (attorney-in-fact) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

**Note:  If you initial Item A or Item B, which follow, a notarized signature will be required on behalf of the Principal.**

INITIAL

_____  **(A) Real property transactions.**  To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, tear down, alter, rebuild, improve manage, insure, move, rent, lease, sell, convey, subject to liens, mortgages, and security deeds, and in any way or manner deal with all or any part of any interest in real property whatsoever, including specifically, but without limitation, real property lying and being situated in the Commonwealth of Massachusetts, under such terms and conditions, and under such covenants, as my Agent shall deem proper and may for all deferred payments accept purchase money notes payable to me and secured by mortgages or deeds to secure debt, and may from time to time collect and cancel any of said notes, mortgages, security interests, or deeds to secure debt.

_____  **(B) Tangible personal property transactions.**  To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or to take any other security interests in said property which are recognized under the Uniform Commercial Code as adopted at that time under the laws of the Commonwealth of Massachusetts or any applicable state, or otherwise hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem proper.

_____  **(C) Stock and bond transactions.**  To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business,

association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

_____ **(D) Commodity and option transactions.** To buy, sell, exchange, assign, convey, settle and exercise commodities futures contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions; establish or continue option accounts for the principal with any securities or futures broker; and, in general, exercise all powers with respect to commodities and options which the principal could if present and under no disability.

_____ **(E) Banking and other financial institution transactions.** To make, receive, sign, endorse, execute, acknowledge, deliver and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations. To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent. To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part. To have free access at any time or times to any safe deposit box or vault to which I might have access.

_____ **(F) Business operating transactions.** To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust or other legal entity; operate, buy, sell, expand, contract, terminate or liquidate any business; direct, control, supervise, manage or participate in the operation of any business and engage, compensate and discharge business managers, employees, agents, attorneys, accountants and consultants; and, in general, exercise all powers with respect to business interests and operations which the principal could if present and under no disability.

_____ **(G) Insurance and annuity transactions.** To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts.

_____ **(H) Estate, trust, and other beneficiary transactions.** To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim and recover any legacy, bequest, devise, gift or other property interest or payment due or payable to or for the principal; assert any interest in and exercise any power over any trust, estate or property subject to fiduciary control; establish a revocable trust solely for the benefit of the principal that terminates at the death of the principal and is then distributable to the legal representative of the estate of the principal; and, in general, exercise all powers with respect to estates and trusts which the principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the principal or require the trustee of any trust for the benefit of the principal to pay income or principal to the Agent unless specific authority to that end is given.

_____ **(I) Claims and litigation.** To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my Agent shall deem proper.

_____ **(J) Personal and family maintenance.** To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

_____ **(K) Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.** To prepare, sign and file any claim or application for Social Security, unemployment or

military service benefits; sue for, settle or abandon any claims to any benefit or assistance under any federal, state, local or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service or other state, federal, local or foreign statute or regulation; and, in general, exercise all powers with respect to Social Security, unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the principal could exercise if present and under no disability.

_____ **(L) Retirement plan transactions.**  To contribute to, withdraw from and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and other retirement plan, individual retirement account, deferred compensation plan and any other type of employee benefit plan); select and change payment options for the principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the principal could if present and under no disability.

_____ **(M) Tax matters.**  To prepare, to make elections, to execute and to file all tax, social security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

_____ **(N) ALL OF THE POWERS LISTED ABOVE.** YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).


**SPECIAL INSTRUCTIONS:**

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

The powers granted by this Power of Attorney are limited in that they only apply with respect to and in connection with the assets and property identified on Schedule A hereto which are located within the Commonwealth of Massachusetts, and conversely do not apply to any assets or property of the Principal other than those listed on Schedule A hereto which are located within the Commonwealth of Massachusetts, and are not to be used in any manner which is inconsistent with the terms of that certain Qualifying Settlement Trust Agreement dated as of May 21, 2010.

THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

THIS POWER OF ATTORNEY SHALL BE CONSTRUED AS A GENERAL DURABLE POWER OF ATTORNEY AND SHALL CONTINUE TO BE EFFECTIVE EVEN IF I BECOME DISABLED, INCAPACITATED, OR INCOMPETENT.

(YOUR AGENT WILL HAVE AUTHORITY TO EMPLOY OTHER PERSONS AS NECESSARY TO ENABLE THE AGENT TO PROPERLY EXERCISE THE POWERS GRANTED IN THIS FORM, BUT YOUR AGENT WILL HAVE TO MAKE ALL DISCRETIONARY DECISIONS. IF YOU WANT TO GIVE YOUR AGENT THE RIGHT TO DELEGATE DISCRETIONARY DECISION-MAKING POWERS TO OTHERS, YOU SHOULD KEEP THE NEXT SENTENCE, OTHERWISE IT SHOULD BE STRICKEN.)

**Authority to Delegate.**  My Agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my Agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference.

(YOUR AGENT WILL BE ENTITLED TO REIMBURSEMENT FOR ALL REASONABLE EXPENSES INCURRED IN ACTING UNDER THIS POWER OF ATTORNEY. STRIKE OUT THE NEXT SENTENCE IF YOU DO NOT WANT YOUR AGENT TO ALSO BE ENTITLED TO REASONABLE COMPENSATION FOR

SERVICES AS AGENT.)

**Right to Compensation.** My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

**Successor Agent.** If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

**Choice of Law.** THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE COMMONWEALTH OF MASSACHUSETTS AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _21_ day of May, 2010

_____
Robert N. DeBenedictis

_____

[Notary Seal, if any]:

_____
(Signature of Notarial Officer)

Notary Public

My commission expires: _____

BRYAN G. PETKANICS
Notary Public, State of New York
No. 31-4901319
Qualified in New York County
Commission Expires June 29, 2011

_____

## ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____
Simon Kimmelman, as Settlement Trustee

1762658 v1

SERVICES AS AGENT.)

**Right to Compensation.** My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

**Successor Agent.** If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

**Choice of Law.** THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE STATE OF NEW JERSEY AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _____ day of May, 2010

_____
Robert N. DeBenedictis

_____

[Notary Seal, if any]:

_____
(Signature of Notarial Officer)

Notary Public for the State of New Jersey

My commission expires: _____

_____

### ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____
Simon Kimmelman, as Settlement Trustee

1739216 v2

**PREPARATION STATEMENT**

This document was prepared by the following individual:

Robert Hempstead, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102

Schedule A

202 Eighth Ave, NYC
635 Ninth Ave, NYC
654 Ninth Ave, NYC
Chelsea Tomato, Inc.
Ninth Avenue Tomato, Inc.
654 Ninth Avenue Restaurant Corp.
20 Orchard Hill Dr.
638 Bayway Ave, NJ
1077 Elizabeth Ave, NJ
221 East 50th St # 5E
2909 Vistamar, LLC
1164 E Oakland Park Blvd, FL
2301 NE 16th St, FL
3801 N. Ocean Blvd
501 Orton Ave
3016 Windamar Ave
505 Orton, LLC
528 Antioch Avenue
1215 N. Ocean Dr
533 Orton, LLC
Next Printing & Design, Inc.
RND Enterprises, Inc.
RevClick, LLC
620 NE 20th St
2041 NE 9th Ave
3209 Pleasant Ave, NJ
511 Bayshore Drive # 404
2801 Rio Mar St.
543 Breakers Ave
230 East 58th St, NYC
550 NE 20th St, FL
835 NE 18th Ct, FL
Avacor Products, LLC
540 River St, NY
5 Executive Park Dr., NY
3036 El Cajon Blvd, CA
45 Tudor City Pl. # 1618, NYC
321 East 43rd St. # PH12, NYC
Maracas Greenwich Partners, LLC
Maracas Ft. Lauderdale, Inc.
Lips Lauderdale Partners, LLC
321 West 13th St. # 1C NYC
2-4 Bank Street
Cowo, Inc.

River Street Club, Inc.
East Side Club, LLC
House Laundry Inc.
W S Club, LLC
Upstairs, Downstairs of NY Inc.
Hanford & Henderson Management, LLC

Exhibit 2-E

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102
Attn: Robert Hempstead, Esq.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## POWER OF ATTORNEY
### (SPECIAL)

WARNING:   THIS DOCUMENT GIVES YOUR ATORNEY-IN-FACT THE POWER
TO ACT FOR YOU IN ANY WAY YOU COULD ACT FOR YOURSELF.  IT MAY
BE IN YOUR BEST INTEREST TO CONSULT WITH AN ATTORNEY TO EXPLAIN
ANYTHING ABOUT THIS FORM THAT YOU DO NOT UNDERSTAND.  YOU
HAVE THE RIGHT TO REVOKE OR TERMINATE THIS POWER OF ATTORNEY
AT ANY TIME.

KNOWN ALL MEN BY THESE PRESENTS:   That: I, Robert N. DeBenedictis, having
an address at 625 Orton Avenue, #7, Ft. Lauderdale, Florida 33304, do hereby appoint
Simon Kimmelman, in his capacity as Settlement Trustee under the Qualifying
Settlement Trust Agreement dated as of May 21, 2010, having an address at c/o Sills
Cummis & Gross P.C., 650 College Road East, Princeton, New Jersey 08540, as my
exclusive, true and lawful Attorney-in-Fact in my capacity, for me and in my name,
continuing until the Qualifying Settlement Trust Agreement has terminated in accordance
with its terms, when this power shall expire, for the special and limited purpose(s) of the
sale of certain assets or property more particularly described on Schedule A hereto, to the
extent such assets or property are located within the State of California.

The powers granted by this Power of Attorney are limited in that they only apply with
respect to and in connection with the assets and property identified on Schedule A hereto
which are located within the State of California, and conversely do not apply to any assets
or property of the Principal other than those listed on Schedule A hereto which are
located within the State of California, and are not to be used in any manner which is
inconsistent with the terms of that certain Qualifying Settlement Trust Agreement dated
as of May 21, 2010.

For such limited and special purposes, said Attorney(s) is/are hereby authorized in
Principal's name, and for Principal's use and benefit:

(A)   to loan, advance, defer payment of, demand, sue for, collect, and receive all sums of money, debts, accounts, legacies, bequests, interests, dividends, annuities, and demands as are now or shall hereafter become due, owing, payable, or belonging to Principal, and take all lawful means in the name of Principal for the recovery thereof and to compromise the same, and give satisfaction, releases or discharges for the same;

(B)   to buy and sell land, exchange, mortgage, hypothecate, foreclose, assign, transfer, convey and in any lawful manner deal in and with land, make contracts of every kind relative to land, any interests therein or the possession thereof, and take possession and exercise control over the use thereof;

(C)   to buy, sell, exchange, mortgage, hypothecate, foreclose, assign, transfer, and in any lawful manner deal in and with goods, wares, and merchandise, choses in action, certificates or shares of capital stock, and other property in possession or in action, and to make, do, and transact all and every kind of business of whatever nature;

(D)   to execute, acknowledge and deliver contracts of sale, escrow instructions, deeds, leases (including both oil and gas and community oil and gas leases), assignments of leases, covenants, agreements, assignments of agreements, mortgages, assignments of mortgages, conveyances in trust to secure indebtedness or other obligations, and assign the beneficial interest thereunder, subordinations of liens or encumbrances, indemnities, bills of lading, bills, bonds, notes, receipts, evidences of debt, requests for partial or full reconveyance of deeds of trust, releases and satisfactions of mortgages, judgments, and other debts, and other instruments in writing of whatever kind and nature, all upon such terms and conditions and under such covenants as said Attorney shall provide.

**GIVING AND GRANTING** to said Attorney full power and authority to do all and every act and thing whatsoever requisite and necessary to be done relative to any of the foregoing as fully to all intents and purposes as Principal might or could do if personally present.

All that the said Attorney shall lawfully do or cause to be done under the authority of this Power of Attorney is expressly approved, ratified and confirmed.

Signature:  Robert N. DeBenedictis

CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC

STATE OF _N Y_____ )
COUNTY OF _N Y_____ )

On _May 21_, 2010, before me, _a N Y Notary_____, (here insert name and title of the officer), personally appeared Robert N. DeBenedictis, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

BRYAN G. PETKANICS
Notary Public, State of New York
No. 31-4901319
Qualified in New York County
Commission Expires June 29, ~~10~~ 20 11

Schedule A

202 Eighth Ave, NYC
635 Ninth Ave, NYC
654 Ninth Ave, NYC
Chelsea Tomato, Inc.
Ninth Avenue Tomato, Inc.
654 Ninth Avenue Restaurant Corp.
20 Orchard Hill Dr.
638 Bayway Ave, NJ
1077 Elizabeth Ave, NJ
221 East 50th St # 5E
2909 Vistamar, LLC
1164 E Oakland Park Blvd, FL
2301 NE 16th St, FL
3801 N. Ocean Blvd
501 Orton Ave
3016 Windamar Ave
505 Orton, LLC
528 Antioch Avenue
1215 N. Ocean Dr
533 Orton, LLC
Next Printing & Design, Inc.
RND Enterprises, Inc.
RevClick, LLC
620 NE 20th St
2041 NE 9th Ave
3209 Pleasant Ave, NJ
511 Bayshore Drive # 404
2801 Rio Mar St.
543 Breakers Ave
230 East 58th St, NYC
550 NE 20th St, FL
835 NE 18th Ct, FL
Avacor Products, LLC
540 River St, NY
5 Executive Park Dr., NY
3036 El Cajon Blvd, CA
45 Tudor City Pl. # 1618, NYC
321 East 43rd St. # PH12, NYC
Maracas Greenwich Partners, LLC
Maracas Ft. Lauderdale, Inc.
Lips Lauderdale Partners, LLC
321 West 13th St. # 1C NYC
2-4 Bank Street
Cowo, Inc.
River Street Club, Inc.
East Side Club, LLC
House Laundry Inc.
W S Club, LLC
Upstairs, Downstairs of NY Inc.
Hanford & Henderson Management, LLC

**EXHIBIT D**

EXHIBIT 2-A

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT – THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

# POWER OF ATTORNEY
## NEW YORK STATUTORY SHORT FORM

**(A) CAUTION TO THE PRINCIPAL: YOUR POWER OF ATTORNEY IS AN IMPORTANT DOCUMENT. AS THE "PRINCIPAL," YOU GIVE THE PERSON WHOM YOU CHOOSE (YOUR "AGENT") AUTHORITY TO SPEND YOUR MONEY AND SELL OR DISPOSE OF YOUR PROPERTY DURING YOUR LIFETIME WITHOUT TELLING YOU.  YOU DO NOT LOSE YOUR AUTHORITY TO ACT EVEN THOUGH YOU HAVE GIVEN YOUR AGENT SIMILAR AUTHORITY.**

**WHEN YOUR AGENT EXERCISES THIS AUTHORITY, HE OR SHE MUST ACT ACCORDING TO ANY INSTRUCTIONS YOU HAVE PROVIDED OR, WHERE THERE ARE NO SPECIFIC INSTRUCTIONS, IN YOUR BEST INTEREST.  "IMPORTANT INFORMATION FOR THE AGENT" AT THE END OF THIS DOCUMENT DESCRIBES YOUR AGENT'S RESPONSIBILITIES.**

**YOUR AGENT CAN ACT ON YOUR BEHALF ONLY AFTER SIGNING THE POWER OF ATTORNEY BEFORE A NOTARY PUBLIC.**

**  YOU CAN REQUEST INFORMATION FROM YOUR AGENT AT ANY TIME.  IF YOU ARE REVOKING A PRIOR POWER OF ATTORNEY BY EXECUTING THIS POWER OF ATTORNEY, YOU SHOULD PROVIDE WRITTEN NOTICE OF THE REVOCATION TO YOUR PRIOR AGENT(S) AND TO THE FINANCIAL INSTITUTIONS WHERE YOUR ACCOUNTS ARE LOCATED.**

**YOU CAN REVOKE OR TERMINATE YOUR POWER OF ATTORNEY AT ANY TIME FOR ANY REASON AS LONG AS YOU ARE OF SOUND MIND.  IF YOU ARE NO LONGER OF SOUND MIND, A COURT CAN REMOVE AN AGENT FOR ACTING IMPROPERLY.**

**YOUR AGENT CANNOT MAKE HEALTH CARE DECISIONS FOR YOU.  YOU MAY EXECUTE A "HEALTH CARE PROXY" TO DO THIS.**

**THE LAW GOVERNING POWERS OF ATTORNEY IS CONTAINED IN THE NEW YORK GENERAL OBLIGATIONS LAW, ARTICLE 5, TITLE 15. THIS LAW IS AVAILABLE AT A LAW LIBRARY, OR ONLINE THROUGH THE NEW YORK STATE SENATE OR ASSEMBLY WEBSITES, WWW.SENATE.STATE.NY.US OR WWW.ASSEMBLY.STATE.NY.US.**

**IF THERE IS ANYTHING ABOUT THIS DOCUMENT THAT YOU DO NOT UNDERSTAND, YOU SHOULD ASK A LAWYER OF YOUR OWN CHOOSING TO EXPLAIN IT TO YOU.**

(b) DESIGNATION OF AGENT(S):
I, Robert N. DeBenedictis, residing at 625 Orton Avenue, #7, Ft. Lauderdale, Florida 33304

do hereby appoint:

Simon Kimmelman, in his capacity as Settlement Trustee under the Qualifying Settlement Trust Agreement dated as of May 21, 2010, having an address at c/o Sills Cummis & Gross P.C., 650 College Road East, Princeton, NJ 08540
(If one person is to be appointed agent, insert the name and address of your agent above)

_____residing at _____
_____residing at _____
_____residing at _____
(If more than one person is to be appointed agent, insert the name(s) and address(es) of your additional agent(s) above)

1

If you designate more than one agent above, they must act together unless you initial the statement below.

(   ) My agents may act **SEPARATELY.**

(c) DESIGNATION OF SUCCESSOR AGENT(S): (OPTIONAL) If every agent designated above is unable or unwilling to serve, I appoint as my successor agent(s):

_____residing at _____
_____residing at _____
_____residing at _____
(Insert the name(s) and address(es )of the successor agent(s) above)

Successor agents designated above must act together unless you initial the statement below.

(   ) My successor agents may act **SEPARATELY.**

(d) This POWER OF ATTORNEY shall not be affected by my subsequent incapacity unless I have stated otherwise below, under "Modifications".

(e) This POWER OF ATTORNEY REVOKES any and all prior Powers of Attorney executed by me unless I have stated otherwise below, under "Modifications."

If you are NOT revoking your prior Powers of Attorney, and if you are granting the same authority in two or more Powers of Attorney, you must also indicate under "Modifications" whether the agents given these powers are to act together or separately.

(f) GRANT OF AUTHORITY:  To grant your agent some or all of the authority below, either

      (1) Initial the bracket at each authority you grant, or
      (2) Write or type the letters for each authority you grant on the blank line at (P), and initial the bracket at (P).  If you initial  (P), you do not need to initial the other lines.

**I grant authority to my agent(s) with respect to the following subjects as defined in sections 5-1502A through 5-1502N of the New York General Obligations Law:**

**( X ) (A) real estate transactions;**
**( X ) (B) chattel and goods transactions;**
**(   ) (C) bond, share, and commodity transactions;**
**( X ) (D) banking transactions;**
**(   ) (E) business operating transactions;**
**(   ) (F) insurance transactions;**
**(   ) (G) estate transactions;**
**(   ) (H) claims and litigation;**
**(   ) (I) personal and family maintenance;**
**(   ) (J) benefits from governmental programs or civil or military service;**

**(   ) (K) health care billing and  payment matters; records, reports, and statements;**
**(   ) (L) retirement benefit transactions;**
**(   ) (M) tax matters;**
**(   ) (N) all other matters;**
**(   ) (O) full and unqualified authority to my agent(s) to  delegate any or all of the foregoing powers to any person or persons whom my agent(s) select;**
**(   ) (P) EACH of the matters identified by the following letters_____**
**You need not initial the other lines if you initial line (P).**

2

(g) MODIFICATIONS: (OPTIONAL) In this section, you may make additional provisions, including language to limit or supplement authority granted to your agent. However, you cannot use this Modifications section to grant your agent authority to make major gifts or changes to interests in your property. If you wish to grant your agent such authority, you MUST complete the Statutory Major Gifts Rider.

The powers granted by this Power of Attorney are limited in that they only apply with respect to and in connection with the assets and property identified on Schedule A hereto which are located within the State of New York, and conversely do not apply to any assets or property of the Principal other than those listed on Schedule A hereto which are located within the State of New York, and are not to be used in any manner which is inconsistent with the terms of that certain Qualifying Settlement Trust Agreement dated as of May 21, 2010.

(h) MAJOR GIFTS AND OTHER TRANSFERS: STATUTORY MAJOR GIFTS RIDER (OPTIONAL) In order to authorize your agent to make major gifts and other transfers of your property, you must initial the statement below and execute a Statutory Major Gifts Rider at the same time as this instrument. Initialing the statement below by itself does not authorize your agent to make major gifts and other transfers.

The preparation of the Statutory Major Gifts Rider should be supervised by a lawyer.

  (  )(SMGR) I grant my agent authority to make major gifts and other transfers of my property, in accordance with the terms and conditions of the Statutory Major Gifts Rider that supplements this Power of Attorney.

(i) DESIGNATION OF MONITOR(S): (OPTIONAL)
I wish to designate _____,
whose address(es) is (are) _____ ,
as monitor(s). Upon the request of the monitor(s), my agent(s) must provide the monitor(s) with a copy of the power of attorney and a record of all transactions done or made on my behalf. Third parties holding records of such transactions shall provide the records to the monitor(s) upon request.

(j) COMPENSATION OF AGENT(S): (OPTIONAL) Your agent is entitled to be reimbursed from your assets for reasonable expenses incurred on your behalf. If you ALSO wish your agent(s) to be compensated from your assets for services rendered on your behalf, initial the statement below. If you wish to define "reasonable compensation", you may do so above, under "Modifications".

(  ) My agent(s) shall be entitled to reasonable compensation for services rendered.

(k) ACCEPTANCE BY THIRD PARTIES: I agree to indemnify the third party for any claims that may arise against the third party because of reliance on this Power of Attorney. I understand that any termination of this Power of Attorney, whether the result of my revocation of the Power of Attorney or otherwise, is not effective as to a third party until the third party has actual notice or knowledge of the termination.

3

(l)  TERMINATION:  This Power of Attorney continues until I revoke it or it is terminated by my death or other event described in section 5-1511 of the General Obligations Law.  Section 5-1511 of the General Obligations Law describes the manner in which you may revoke your Power of Attorney, and the events which terminate the Power of Attorney.

(m) SIGNATURE AND ACKNOWLEDGMENT:

**IN WITNESS WHEREOF I have hereunto signed my name on** May 21, 2010.

**PRINCIPAL signs here**

Robert N. DeBenedictis

*The GENERAL OBLIGATIONS LAW § 5-1501B REQUIRES THAT THIS INSTRUMENT BE ACKNOWLEDGED BY THE PRINCIPAL.*

STATE OF NEW YORK, COUNTY OF_____ N Y _____} ss.:
On the 21st day of ___May___ in the year 2010. before me, the undersigned, personally appeared, Robert N. DeBenedictis personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

BRYAN G. PETKANAS
Notary Public, State of New York — *Sign Above and Affix Stamp*
No. 31-4901319
Qualified in New York County
Commission Expires June 29, 19. 20 11

(n) IMPORTANT INFORMATION FOR THE AGENT: When you accept the authority granted under this Power of Attorney, a special legal relationship is created between you and the principal. This relationship imposes on you legal responsibilities that continue until you resign or the Power of Attorney is terminated or revoked. You must:

> (1) act according to any instructions from the principal, or, where there are no instructions, in the principal's best interest;
> (2) avoid conflicts that would impair your ability to act in the principal's best interest;
> (3) keep the principal's property separate and distinct from any assets you own or control, unless otherwise permitted by law;
> (4) keep a record or all receipts, payments, and transactions conducted for the principal; and
> (5) disclose your identity as an agent whenever you act for the principal by writing or printing the principal's name and signing your own name as "agent" in either of the following manner: (Principal's Name) by (Your Signature) as Agent, or (your signature) as Agent for (Principal's Name).

You may not use the principal's assets to benefit yourself or give major gifts to yourself or anyone else unless the principal has specifically granted you that authority in this Power of Attorney or in a Statutory Major Gifts Rider attached to this Power of Attorney. If you have that authority, you must act according to any instructions of the principal or, where there are no such instructions, in the principal's best interest. You may resign by giving written notice to the principal and to any co-agent, successor agent, monitor if one has been named in this document, or the principal's guardian if one has been appointed. If there is anything about this document or your

4

responsibilities that you do not understand, you should seek legal advice.

LIABILITY OF AGENT: The meaning of the authority given to you is defined in New York's General Obligations Law, Article 5, Title 15. If it is found that you have violated the law or acted outside the authority granted to you in the Power of Attorney, you may be liable under the law for your violation.

(o) AGENT'S SIGNATURE AND ACKNOWLEDGMENT OF APPOINTMENT:

It is not required that the principal and the agent(s) sign at the same time, nor that multiple agents sign at the same time.

I, Simon Kimmelman, in my capacity as Settlement Trustee under the Qualifying Settlement Trust Agreement dated as of May 21, 2010, have read the foregoing Power of Attorney. I am the person(s) identified therein as agent(s) for the principal named therein. I acknowledge my legal responsibilities.

AGENT(S) sign(s) here: _____

Simon Kimmelman, Settlement Trustee

_____

_____

*STATE OF _____, COUNTY OF_____} ss.:*
*On the _____ day of_____ in the year 2010. before me, the undersigned, personally appeared, Simon Kimmelman personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.*

_____

*Notary Public – Sign Above and Affix Stamp*

5

**AFFIDAVIT OF EFFECTIVENESS**
**(TO BE COMPLETED BY AGENT(S) UPON DELIVERY OF THIS POWER)**

STATE OF NEW YORK, COUNTY OF _____ } ss.:

_____, residing at _____

(each) being duly sworn do(es) depose and say that I am (we are) the Agent(s) under the above Power of Attorney and that the power of attorney is in full force and effect.  That (a) I/we do not have, at the time of the transaction, actual notice of the termination or revocation of the Power of Attorney, or notice of any facts indicating that the power of attorney has been terminated or revoked; (b) I/we do not have, at the time of the transaction, actual notice that the Power of Attorney has been modified in any way that would affect the ability of the AGENT to authorize or engage in the transaction, or notice of any facts indicating that the Power of Attorney has been so modified; and (c) if I/we was/were named as successor Agent(s), the prior Agent(s) is no longer able or willing to serve.  This affidavit if given for the purpose of the Agent executing a _____
_____ [describe documents that are executed] knowing that _____, will rely upon the representations made herein as inducement to accept such instrument(s) and this Power of Attorney as evidence of my/our authority to act..

_____
Agent

_____
Agent

Sworn to and Subscribed before me
this _____ day of _____, _____

_____
**(Notary Sign above and Affix Stamp)**

## Statutory Power of Attorney

(Pursuant to General Obligations Law § 5-1513)

TITLE NO. _____

*Robert N. DeBenedictis*

**TO**

*Simon Kimmelman, as Settlement Trustee*

*District:*
*Section:*
*Block:*
*Lot:*
*County or Town:*

**RETURN BY MAIL TO:**

6

Schedule A

202 Eighth Ave, NYC
635 Ninth Ave, NYC
654 Ninth Ave, NYC
Chelsea Tomato, Inc.
Ninth Avenue Tomato, Inc.
654 Ninth Avenue Restaurant Corp.
20 Orchard Hill Dr.
638 Bayway Ave, NJ
1077 Elizabeth Ave, NJ
221 East 50th St # 5E
2909 Vistamar, LLC
1164 E Oakland Park Blvd, FL
2301 NE 16th St, FL
3801 N. Ocean Blvd
501 Orton Ave
3016 Windamar Ave
505 Orton, LLC
528 Antioch Avenue
1215 N. Ocean Dr
533 Orton, LLC
Next Printing & Design, Inc.
RND Enterprises, Inc.
RevClick, LLC
620 NE 20th St
2041 NE 9th Ave
3209 Pleasant Ave, NJ
511 Bayshore Drive # 404
2801 Rio Mar St.
543 Breakers Ave
230 East 58th St, NYC
550 NE 20th St, FL
835 NE 18th Ct, FL
Avacor Products, LLC
540 River St, NY
5 Executive Park Dr., NY
3036 El Cajon Blvd, CA
45 Tudor City Pl. # 1618, NYC
321 East 43rd St. # PH12, NYC
Maracas Greenwich Partners, LLC
Maracas Ft. Lauderdale, Inc.
Lips Lauderdale Partners, LLC
321 West 13th St. # 1C NYC
2-4 Bank Street
Cowo, Inc.
River Street Club, Inc.
East Side Club, LLC
House Laundry Inc.
W S Club, LLC
Upstairs, Downstairs of NY Inc.
Hanford & Henderson Management, LLC

7

EXHIBIT 2-B

**NEW JERSEY GENERAL DURABLE POWER OF ATTORNEY**

**THE POWERS YOU GRANT BELOW ARE EFFECTIVE
EVEN IF YOU BECOME DISABLED OR INCOMPETENT**

NOTICE:  THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING.  THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE.  THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Robert N. DeBenedictis, having an address at 625 Orton Avenue, #7, Ft. Lauderdale, Florida 33304, appoint Simon Kimmelman, in his capacity as Settlement Trustee under the Qualifying Trust Agreement dated as of May 21, 2010, having an address at c/o Sills Cummis & Gross P.C., 650 College Road East, Princeton, New Jersey 08540 as my Agent (attorney-in-fact) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

**Note:  If you initial Item A or Item B, which follow, a notarized signature will be required on behalf of the Principal.**

INITIAL

_____ **(A) Real property transactions.**  To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, tear down, alter, rebuild, improve manage, insure, move, rent, lease, sell, convey, subject to liens, mortgages, and security deeds, and in any way or manner deal with all or any part of any interest in real property whatsoever, including specifically, but without limitation, real property lying and being situated in the State of New Jersey, under such terms and conditions, and under such covenants, as my Agent shall deem proper and may for all deferred payments accept purchase money notes payable to me and secured by mortgages or deeds to secure debt, and may from time to time collect and cancel any of said notes, mortgages, security interests, or deeds to secure debt.

_____ **(B) Tangible personal property transactions.**  To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or to take any other security interests in said property which are recognized under the Uniform Commercial Code as adopted at that time under the laws of the State of New Jersey or any applicable state, or otherwise hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem proper.

_____ **(C) Stock and bond transactions.**  To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business,

association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

_____ **(D) Commodity and option transactions.** To buy, sell, exchange, assign, convey, settle and exercise commodities futures contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions; establish or continue option accounts for the principal with any securities or futures broker; and, in general, exercise all powers with respect to commodities and options which the principal could if present and under no disability.

_____ **(E) Banking and other financial institution transactions.**   To make, receive, sign, endorse, execute, acknowledge, deliver and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations.  To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent. To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part.  To have free access at any time or times to any safe deposit box or vault to which I might have access.

_____ **(F) Business operating transactions.**  To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust or other legal entity; operate, buy, sell, expand, contract, terminate or liquidate any business; direct, control, supervise, manage or participate in the operation of any business and engage, compensate and discharge business managers, employees, agents, attorneys, accountants and consultants; and, in general, exercise all powers with respect to business interests and operations which the principal could if present and under no disability.

_____ **(G) Insurance and annuity transactions.**  To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts.

_____ **(H) Estate, trust, and other beneficiary transactions.**  To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim and recover any legacy, bequest, devise, gift or other property interest or payment due or payable to or for the principal; assert any interest in and exercise any power over any trust, estate or property subject to fiduciary control; establish a revocable trust solely for the benefit of the principal that terminates at the death of the principal and is then distributable to the legal representative of the estate of the principal; and, in general, exercise all powers with respect to estates and trusts which the principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the principal or require the trustee of any trust for the benefit of the principal to pay income or principal to the Agent unless specific authority to that end is given.

_____ **(I) Claims and litigation.** To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, In such manner and in all respects as my Agent shall deem proper.

_____ **(J) Personal and family maintenance.**  To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

_____ **(K) Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.**  To prepare, sign and file any claim or application for Social Security, unemployment or

military service benefits; sue for, settle or abandon any claims to any benefit or assistance under any federal, state, local or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service or other state, federal, local or foreign statute or regulation; and, in general, exercise all powers with respect to Social Security, unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the principal could exercise if present and under no disability.

_____ **(L) Retirement plan transactions.** To contribute to, withdraw from and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and other retirement plan, individual retirement account, deferred compensation plan and any other type of employee benefit plan); select and change payment options for the principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the principal could if present and under no disability.

_____ **(M) Tax matters.** To prepare, to make elections, to execute and to file all tax, social security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

_____ **(N) ALL OF THE POWERS LISTED ABOVE.** YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

**SPECIAL INSTRUCTIONS:**

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

The powers granted by this Power of Attorney are limited in that they only apply with respect to and in connection with the assets and property identified on Schedule A hereto which are located within the State of New Jersey, and conversely do not apply to any assets or property of the Principal other than those listed on Schedule A hereto which are located within the State of New Jersey, and are not to be used in any manner which is Inconsistent with the terms of that certain Qualifying Settlement Trust Agreement dated as of May 21, 2010.

THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

THIS POWER OF ATTORNEY SHALL BE CONSTRUED AS A GENERAL DURABLE POWER OF ATTORNEY AND SHALL CONTINUE TO BE EFFECTIVE EVEN IF I BECOME DISABLED, INCAPACITATED, OR INCOMPETENT.

(YOUR AGENT WILL HAVE AUTHORITY TO EMPLOY OTHER PERSONS AS NECESSARY TO ENABLE THE AGENT TO PROPERLY EXERCISE THE POWERS GRANTED IN THIS FORM, BUT YOUR AGENT WILL HAVE TO MAKE ALL DISCRETIONARY DECISIONS. IF YOU WANT TO GIVE YOUR AGENT THE RIGHT TO DELEGATE DISCRETIONARY DECISION-MAKING POWERS TO OTHERS, YOU SHOULD KEEP THE NEXT SENTENCE, OTHERWISE IT SHOULD BE STRICKEN.)

**Authority to Delegate.** My Agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my Agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference.

(YOUR AGENT WILL BE ENTITLED TO REIMBURSEMENT FOR ALL REASONABLE EXPENSES INCURRED IN ACTING UNDER THIS POWER OF ATTORNEY. STRIKE OUT THE NEXT SENTENCE IF YOU DO NOT WANT YOUR AGENT TO ALSO BE ENTITLED TO REASONABLE COMPENSATION FOR

SERVICES AS AGENT.)

**Right to Compensation.** My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

**Successor Agent.** If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

**Choice of Law.** THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE STATE OF NEW JERSEY AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _21_ day of May, 2010

_____

Robert N. DeBenedictis

_____

[Notary Seal, if any]:

BRYAN G. PETKANICS
Notary Public, State of New York
No. 31-4901319
Qualified in New York County
Commission Expires June 29, ~~19~~ 2011

_____

(Signature of Notarial Officer)

Notary Public for the State of New Jersey *York*

My commission expires: _____

_____

## ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____

Simon Kimmelman, as Settlement Trustee

1739216 v2

SERVICES AS AGENT.)

**Right to Compensation.** My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

**Successor Agent.** If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

**Choice of Law.** THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE COMMONWEALTH OF MASSACHUSETTS AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _____ day of May, 2010

_____
Robert N. DeBenedictis

_____

[Notary Seal, if any]:

_____
(Signature of Notarial Officer)

Notary Public

My commission expires: _____

_____

### ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____
Simon Kimmelman, as Settlement Trustee

1762658 v1

**PREPARATION STATEMENT**

This document was prepared by the following individual:

Robert Hempstead, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102

Schedule A

202 Eighth Ave, NYC
635 Ninth Ave, NYC
654 Ninth Ave, NYC
Chelsea Tomato, Inc.
Ninth Avenue Tomato, Inc.
654 Ninth Avenue Restaurant Corp.
20 Orchard Hill Dr.
638 Bayway Ave, NJ
1077 Elizabeth Ave, NJ
221 East 50th St # 5E
2909 Vistamar, LLC
1164 E Oakland Park Blvd, FL
2301 NE 16th St, FL
3801 N. Ocean Blvd
501 Orton Ave
3016 Windamar Ave
505 Orton, LLC
528 Antioch Avenue
1215 N. Ocean Dr
533 Orton, LLC
Next Printing & Design, Inc.
RND Enterprises, Inc.
RevClick, LLC
620 NE 20th St
2041 NE 9th Ave
3209 Pleasant Ave, NJ
511 Bayshore Drive # 404
2801 Rio Mar St.
543 Breakers Ave
230 East 58th St, NYC
550 NE 20th St, FL
835 NE 18th Ct, FL
Avacor Products, LLC
540 River St, NY
5 Executive Park Dr., NY
3036 El Cajon Blvd, CA
45 Tudor City Pl. # 1618, NYC
321 East 43rd St. # PH12, NYC
Maracas Greenwich Partners, LLC
Maracas Ft. Lauderdale, Inc.
Lips Lauderdale Partners, LLC
321 West 13th St. # 1C NYC
2-4 Bank Street
Cowo, Inc.

River Street Club, Inc.
East Side Club, LLC
House Laundry Inc.
W S Club, LLC
Upstairs, Downstairs of NY Inc.
Hanford & Henderson Management, LLC

EXHIBIT 2-C

**FLORIDA GENERAL DURABLE POWER OF ATTORNEY**

**THE POWERS YOU GRANT BELOW ARE EFFECTIVE**
**EVEN IF YOU BECOME DISABLED OR INCOMPETENT**

**This durable power of attorney is not affected by subsequent incapacity of the principal**
**except as provided in §709.08, Florida Statutes.**

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE
EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT. IF YOU HAVE ANY
QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT
DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR
YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Robert N. DeBenedictis, residing at 625 Orton Avenue, #7, Ft. Lauderdale, Florida 33304, appoint Simon
Kimmelman, in his capacity as Settlement Trustee under the Qualifying Settlement Trust Agreement dated
as of May 21, 2010, having an address at c/o Sills Cummis & Gross P.C., 650 College Road East,
Princeton, New Jersey 08540, as my Agent (attorney-in-fact) to act for me in any lawful way with respect to
the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE
THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE
LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT,
CROSS OUT EACH POWER WITHHELD.

**Note: If you initial Item A or Item B, which follow, a notarized signature will be required on behalf of
the Principal.**

INITIAL

_____ **(A) Real property transactions.** To lease, sell, mortgage, purchase, exchange, and acquire, and
to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept,
take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and
under such covenants, as my Agent shall deem proper; and to maintain, repair, tear down, alter, rebuild,
improve manage, insure, move, rent, lease, sell, convey, subject to liens, mortgages, and security deeds,
and in any way or manner deal with all or any part of any interest in real property whatsoever, including
specifically, but without limitation, real property lying and being situated in the State of Florida, under such
terms and conditions, and under such covenants, as my Agent shall deem proper and may for all deferred
payments accept purchase money notes payable to me and secured by mortgages or deeds to secure debt,
and may from time to time collect and cancel any of said notes, mortgages, security interests, or deeds to
secure debt.

_____ **(B) Tangible personal property transactions.** To lease, sell, mortgage, purchase, exchange,
and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of,
and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or
interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper;
and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or
to take any other security interests in said property which are recognized under the Uniform Commercial
Code as adopted at that time under the laws of the State of Florida or any applicable state, or otherwise
hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property
whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may
thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem
proper.

_____ **(C) Stock and bond transactions.** To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business, association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

_____ **(D) Commodity and option transactions.** To buy, sell, exchange, assign, convey, settle and exercise commodities futures contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions; establish or continue option accounts for the principal with any securities or futures broker; and, in general, exercise all powers with respect to commodities and options which the principal could if present and under no disability.

_____ **(E) Banking and other financial Institution transactions.** To make, receive, sign, endorse, execute, acknowledge, deliver and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations. To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent. To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part. To have free access at any time or times to any safe deposit box or vault to which I might have access.

_____ **(F) Business operating transactions.** To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust or other legal entity; operate, buy, sell, expand, contract, terminate or liquidate any business; direct, control, supervise, manage or participate in the operation of any business and engage, compensate and discharge business managers, employees, agents, attorneys, accountants and consultants; and, in general, exercise all powers with respect to business interests and operations which the principal could if present and under no disability.

_____ **(G) Insurance and annuity transactions.** To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts.

_____ **(H) Estate, trust, and other beneficiary transactions.** To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim and recover any legacy, bequest, devise, gift or other property interest or payment due or payable to or for the principal; assert any interest in and exercise any power over any trust, estate or property subject to fiduciary control; establish a revocable trust solely for the benefit of the principal that terminates at the death of the principal and is then distributable to the legal representative of the estate of the principal; and, in general, exercise all powers with respect to estates and trusts which the principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the principal or require the trustee of any trust for the benefit of the principal to pay income or principal to the Agent unless specific authority to that end is given.

_____ **(I) Claims and litigation.** To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my Agent shall deem proper.

_____ **(J) Personal and family maintenance.** To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others In their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

_____ **(K) Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.**  To prepare, sign and file any claim or application for Social Security, unemployment or military service benefits; sue for, settle or abandon any claims to any benefit or assistance under any federal, state, local or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service or other state, federal, local or foreign statute or regulation; and, in general, exercise all powers with respect to Social Security, unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the principal could exercise if present and under no disability.

_____ **(L) Retirement plan transactions.**  To contribute to, withdraw from and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and other retirement plan, individual retirement account, deferred compensation plan and any other type of employee benefit plan); select and change payment options for the principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the principal could if present and under no disability.

_____ **(M) Tax matters.**  To prepare, to make elections, to execute and to file all tax, social security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

_____ **(N) ALL OF THE POWERS LISTED ABOVE.** YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).


**SPECIAL INSTRUCTIONS:**

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

The powers granted by this Power of Attorney are limited in that they only apply with respect to and in connection with the assets and property identified on Schedule A hereto which are located within the State of Florida, and conversely do not apply to any assets or property of the Principal other than those listed on Schedule A hereto which are located within the State of Florida, and are not to be used in any manner which is inconsistent with the terms of that certain Qualifying Settlement Trust Agreement dated as of May 21, 2010.

THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

THIS POWER OF ATTORNEY SHALL BE CONSTRUED AS A GENERAL DURABLE POWER OF ATTORNEY AND SHALL CONTINUE TO BE EFFECTIVE EVEN IF I BECOME DISABLED, INCAPACITATED, OR INCOMPETENT.

(YOUR AGENT WILL HAVE AUTHORITY TO EMPLOY OTHER PERSONS AS NECESSARY TO ENABLE THE AGENT TO PROPERLY EXERCISE THE POWERS GRANTED IN THIS FORM, BUT YOUR AGENT WILL HAVE TO MAKE ALL DISCRETIONARY DECISIONS. IF YOU WANT TO GIVE YOUR AGENT THE RIGHT TO DELEGATE DISCRETIONARY DECISION-MAKING POWERS TO OTHERS, YOU SHOULD KEEP THE NEXT SENTENCE, OTHERWISE IT SHOULD BE STRICKEN.)

**Authority to Delegate.**  My Agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my Agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference.

(YOUR AGENT WILL BE ENTITLED TO REIMBURSEMENT FOR ALL REASONABLE EXPENSES

INCURRED IN ACTING UNDER THIS POWER OF ATTORNEY. STRIKE OUT THE NEXT SENTENCE IF YOU DO NOT WANT YOUR AGENT TO ALSO BE ENTITLED TO REASONABLE COMPENSATION FOR SERVICES AS AGENT.)

**Right to Compensation.** My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

**Successor Agen**t.  If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

**Choice of Law.**  THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE STATE OF FLORIDA WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE STATE OF FLORIDA AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _____ day of May, 2010

_____
Robert N. DeBenedictis

_____

### STATEMENT OF WITNESS

On the date written above, the principal declared to me in my presence that this instrument is his general durable power of attorney and that he or she had willingly signed or directed another to sign for him or her, and that he or she executed it as his or her free and voluntary act for the purposes therein expressed.

_____ [Signature of Witness #1]
_____ [Printed or typed name of Witness #1]
_____ [Address of Witness #1, Line 1]
_____ [Address of Witness #1, Line 2]


_____ [Signature of Witness #2]
_____ [Printed or typed name of Witness #2]
_____ [Address of Witness #2, Line 1]
_____ [Address of Witness #2, Line 2]

## CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

STATE OF _N Y_
COUNTY OF _N Y_

Sworn to (or affirmed) and subscribed before me this _2 1 5_ day of May, 2010 by Robert N. DeBenedictis. The affiant is [choose one:] _____ personally known to me, or _✓_ produced the following identification: _FL Drivers License_

[Notary Seal, if any]:

        BRYAN G. PETKANICS
    Notary Public, State of New York
            No. 31-4901319
        Qualified in New York County
    Commission Expires June 29, 19 2Q 11

_____
(Signature of Notarial Officer)

Notary Public for the State of ~~Florida~~ N Y

My commission expires: _____

---

## ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____
Simon Kimmelman, as Settlement Trustee

---

## PREPARATION STATEMENT

This document was prepared by the following individual:

Robert Hempstead, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102

---

## AFFIDAVIT OF AGENT (ATTORNEY IN FACT)

STATE OF _____
COUNTY OF _____

Before me, the undersigned authority, personally appeared Simon Kimmelman, ("Affiant"), who swore or affirmed that:

1739226 v2

SERVICES AS AGENT.)

**Right to Compensation.** My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

**Successor Agent.** If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

**Choice of Law.** THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE STATE OF NEW JERSEY WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE STATE OF NEW JERSEY AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this _____ day of May, 2010

_____

Robert N. DeBenedictis

_____

[Notary Seal, if any]:

_____

(Signature of Notarial Officer)

Notary Public for the State of New Jersey

My commission expires: _____

_____

## ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____

Simon Kimmelman, as Settlement Trustee

1739216 v2

1. Affiant is the attorney in fact named in the Florida General Durable Power of Attorney executed by Robert N. DeBenedictis ("Principal") on May __, 2010.

2. This Florida General Durable Power of Attorney is currently exercisable by Affiant. The principal is domiciled in Florida.

3. To the best of the Affiant's knowledge after diligent search and inquiry:

a. The Principal is not deceased; and

b. There has been no revocation, partial or complete termination by adjudication of incapacity or by the occurrence of an event referenced in the durable power of attorney, or suspension by initiation of proceedings to determine incapacity or to appoint a guardian.

4. Affiant agrees not to exercise any powers granted by the Florida General Durable Power of Attorney if Affiant attains knowledge that it has been revoked, partially or completely terminated, suspended, or is no longer valid because of the death or adjudication of incapacity of the Principal.

_____
Simon Kimmelman, as Settlement Trustee

### CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC

Sworn to (or affirmed) and subscribed before me this _____day of _____ [month], _____ [year] by _____ [name of agent]. The affiant is [*choose one:*] _____ personally known to me, or _____ produced the following identification: _____.

[Notary Seal, if any]:


_____
(Signature of Notarial Officer)

Notary Public

My commission expires: _____

1739226 v2

Schedule A

202 Eighth Ave, NYC
635 Ninth Ave, NYC
654 Ninth Ave, NYC
Chelsea Tomato, Inc.
Ninth Avenue Tomato, Inc.
654 Ninth Avenue Restaurant Corp.
20 Orchard Hill Dr.
638 Bayway Ave, NJ
1077 Elizabeth Ave, NJ
221 East 50th St # 5E
2909 Vistamar, LLC
1164 E Oakland Park Blvd, FL
2301 NE 16th St, FL
3801 N. Ocean Blvd
501 Orton Ave
3016 Windamar Ave
505 Orton, LLC
528 Antioch Avenue
1215 N. Ocean Dr
533 Orton, LLC
Next Printing & Design, Inc.
RND Enterprises, Inc.
RevClick, LLC
620 NE 20th St
2041 NE 9th Ave
3209 Pleasant Ave, NJ
511 Bayshore Drive # 404
2801 Rio Mar St.
543 Breakers Ave
230 East 58th St, NYC
550 NE 20th St, FL
835 NE 18th Ct, FL
Avacor Products, LLC
540 River St, NY
5 Executive Park Dr., NY
3036 El Cajon Blvd, CA
45 Tudor City Pl. # 1618, NYC
321 East 43rd St. # PH12, NYC
Maracas Greenwich Partners, LLC
Maracas Ft. Lauderdale, Inc.
Lips Lauderdale Partners, LLC
321 West 13th St. # 1C NYC
2-4 Bank Street
Cowo, Inc.

River Street Club, Inc.
East Side Club, LLC
House Laundry Inc.
W S Club, LLC
Upstairs, Downstairs of NY Inc.
Hanford & Henderson Management, LLC

EXHIBIT 2-D

**MASSACHUSETTS GENERAL DURABLE POWER OF ATTORNEY**

**THE POWERS YOU GRANT BELOW ARE EFFECTIVE
EVEN IF YOU BECOME DISABLED OR INCOMPETENT**

NOTICE: THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. THEY ARE EXPLAINED IN THE UNIFORM STATUTORY FORM POWER OF ATTORNEY ACT. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU. YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

I, Robert N. DeBenedictis, having an address at 625 Orton Avenue, #7, Ft. Lauderdale, Florida 33304, appoint Simon Kimmelman, in his capacity as Settlement Trustee under the Qualifying Trust Agreement dated as of May 21, 2010, having an address at c/o Sills Cummis & Gross P.C., 650 College Road East, Princeton, New Jersey 08540 as my Agent (attorney-in-fact) to act for me in any lawful way with respect to the following initialed subjects:

TO GRANT ALL OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF (N) AND IGNORE THE LINES IN FRONT OF THE OTHER POWERS.

TO GRANT ONE OR MORE, BUT FEWER THAN ALL, OF THE FOLLOWING POWERS, INITIAL THE LINE IN FRONT OF EACH POWER YOU ARE GRANTING.

TO WITHHOLD A POWER, DO NOT INITIAL THE LINE IN FRONT OF IT. YOU MAY, BUT NEED NOT, CROSS OUT EACH POWER WITHHELD.

**Note: If you initial Item A or Item B, which follow, a notarized signature will be required on behalf of the Principal.**

INITIAL

_____ **(A) Real property transactions.** To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any interest in real property whatsoever, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, tear down, alter, rebuild, improve manage, insure, move, rent, lease, sell, convey, subject to liens, mortgages, and security deeds, and in any way or manner deal with all or any part of any interest in real property whatsoever, including specifically, but without limitation, real property lying and being situated in the Commonwealth of Massachusetts, under such terms and conditions, and under such covenants, as my Agent shall deem proper and may for all deferred payments accept purchase money notes payable to me and secured by mortgages or deeds to secure debt, and may from time to time collect and cancel any of said notes, mortgages, security interests, or deeds to secure debt.

_____ **(B) Tangible personal property transactions.** To lease, sell, mortgage, purchase, exchange, and acquire, and to agree, bargain, and contract for the lease, sale, purchase, exchange, and acquisition of, and to accept, take, receive, and possess any personal property whatsoever, tangible or intangible, or interest thereto, on such terms and conditions, and under such covenants, as my Agent shall deem proper; and to maintain, repair, improve, manage, insure, rent, lease, sell, convey, subject to liens or mortgages, or to take any other security interests in said property which are recognized under the Uniform Commercial Code as adopted at that time under the laws of the Commonwealth of Massachusetts or any applicable state, or otherwise hypothecate (pledge), and in any way or manner deal with all or any part of any real or personal property whatsoever, tangible or intangible, or any interest therein, that I own at the time of execution or may thereafter acquire, under such terms and conditions, and under such covenants, as my Agent shall deem proper.

_____ **(C) Stock and bond transactions.** To purchase, sell, exchange, surrender, assign, redeem, vote at any meeting, or otherwise transfer any and all shares of stock, bonds, or other securities in any business,

1762658 v1

association, corporation, partnership, or other legal entity, whether private or public, now or hereafter belonging to me.

_____ **(D) Commodity and option transactions.** To buy, sell, exchange, assign, convey, settle and exercise commodities futures contracts and call and put options on stocks and stock indices traded on a regulated options exchange and collect and receipt for all proceeds of any such transactions; establish or continue option accounts for the principal with any securities or futures broker; and, in general, exercise all powers with respect to commodities and options which the principal could if present and under no disability.

_____ **(E) Banking and other financial institution transactions.** To make, receive, sign, endorse, execute, acknowledge, deliver and possess checks, drafts, bills of exchange, letters of credit, notes, stock certificates, withdrawal receipts and deposit instruments relating to accounts or deposits in, or certificates of deposit of banks, savings and loans, credit unions, or other institutions or associations. To pay all sums of money, at any time or times, that may hereafter be owing by me upon any account, bill of exchange, check, draft, purchase, contract, note, or trade acceptance made, executed, endorsed, accepted, and delivered by me or for me in my name, by my Agent. To borrow from time to time such sums of money as my Agent may deem proper and execute promissory notes, security deeds or agreements, financing statements, or other security instruments in such form as the lender may request and renew said notes and security instruments from time to time in whole or in part. To have free access at any time or times to any safe deposit box or vault to which I might have access.

_____ **(F) Business operating transactions.** To conduct, engage in, and otherwise transact the affairs of any and all lawful business ventures of whatever nature or kind that I may now or hereafter be involved in. To organize or continue and conduct any business which term includes, without limitation, any farming, manufacturing, service, mining, retailing or other type of business operation in any form, whether as a proprietorship, joint venture, partnership, corporation, trust or other legal entity; operate, buy, sell, expand, contract, terminate or liquidate any business; direct, control, supervise, manage or participate in the operation of any business and engage, compensate and discharge business managers, employees, agents, attorneys, accountants and consultants; and, in general, exercise all powers with respect to business interests and operations which the principal could if present and under no disability.

_____ **(G) Insurance and annuity transactions.** To exercise or perform any act, power, duty, right, or obligation, in regard to any contract of life, accident, health, disability, liability, or other type of insurance or any combination of insurance; and to procure new or additional contracts of insurance for me and to designate the beneficiary of same; provided, however, that my Agent cannot designate himself or herself as beneficiary of any such insurance contracts.

_____ **(H) Estate, trust, and other beneficiary transactions.** To accept, receipt for, exercise, release, reject, renounce, assign, disclaim, demand, sue for, claim and recover any legacy, bequest, devise, gift or other property interest or payment due or payable to or for the principal; assert any interest in and exercise any power over any trust, estate or property subject to fiduciary control; establish a revocable trust solely for the benefit of the principal that terminates at the death of the principal and is then distributable to the legal representative of the estate of the principal; and, in general, exercise all powers with respect to estates and trusts which the principal could exercise if present and under no disability; provided, however, that the Agent may not make or change a will and may not revoke or amend a trust revocable or amendable by the principal or require the trustee of any trust for the benefit of the principal to pay income or principal to the Agent unless specific authority to that end is given.

_____ **(I) Claims and litigation.** To commence, prosecute, discontinue, or defend all actions or other legal proceedings touching my property, real or personal, or any part thereof, or touching any matter in which I or my property, real or personal, may be in any way concerned. To defend, settle, adjust, make allowances, compound, submit to arbitration, and compromise all accounts, reckonings, claims, and demands whatsoever that now are, or hereafter shall be, pending between me and any person, firm, corporation, or other legal entity, in such manner and in all respects as my Agent shall deem proper.

_____ **(J) Personal and family maintenance.** To hire accountants, attorneys at law, consultants, clerks, physicians, nurses, agents, servants, workmen, and others and to remove them, and to appoint others in their place, and to pay and allow the persons so employed such salaries, wages, or other remunerations, as my Agent shall deem proper.

_____ **(K) Benefits from Social Security, Medicare, Medicaid, or other governmental programs, or military service.** To prepare, sign and file any claim or application for Social Security, unemployment or

military service benefits; sue for, settle or abandon any claims to any benefit or assistance under any federal, state, local or foreign statute or regulation; control, deposit to any account, collect, receipt for, and take title to and hold all benefits under any Social Security, unemployment, military service or other state, federal, local or foreign statute or regulation; and, in general, exercise all powers with respect to Social Security, unemployment, military service, and governmental benefits, including but not limited to Medicare and Medicaid, which the principal could exercise if present and under no disability.

_____ **(L) Retirement plan transactions.** To contribute to, withdraw from and deposit funds in any type of retirement plan (which term includes, without limitation, any tax qualified or nonqualified pension, profit sharing, stock bonus, employee savings and other retirement plan, individual retirement account, deferred compensation plan and any other type of employee benefit plan); select and change payment options for the principal under any retirement plan; make rollover contributions from any retirement plan to other retirement plans or individual retirement accounts; exercise all investment powers available under any type of self-directed retirement plan; and, in general, exercise all powers with respect to retirement plans and retirement plan account balances which the principal could if present and under no disability.

_____ **(M) Tax matters.** To prepare, to make elections, to execute and to file all tax, social security, unemployment insurance, and informational returns required by the laws of the United States, or of any state or subdivision thereof, or of any foreign government; to prepare, to execute, and to file all other papers and instruments which the Agent shall think to be desirable or necessary for safeguarding of me against excess or illegal taxation or against penalties imposed for claimed violation of any law or other governmental regulation; and to pay, to compromise, or to contest or to apply for refunds in connection with any taxes or assessments for which I am or may be liable.

_____ **(N) ALL OF THE POWERS LISTED ABOVE.** YOU NEED NOT INITIAL ANY OTHER LINES IF YOU INITIAL LINE (N).

## SPECIAL INSTRUCTIONS:

ON THE FOLLOWING LINES YOU MAY GIVE SPECIAL INSTRUCTIONS LIMITING OR EXTENDING THE POWERS GRANTED TO YOUR AGENT.

The powers granted by this Power of Attorney are limited in that they only apply with respect to and in connection with the assets and property identified on Schedule A hereto which are located within the Commonwealth of Massachusetts, and conversely do not apply to any assets or property of the Principal other than those listed on Schedule A hereto which are located within the Commonwealth of Massachusetts, and are not to be used in any manner which is inconsistent with the terms of that certain Qualifying Settlement Trust Agreement dated as of May 21, 2010.

THIS POWER OF ATTORNEY IS EFFECTIVE IMMEDIATELY AND WILL CONTINUE UNTIL IT IS REVOKED.

THIS POWER OF ATTORNEY SHALL BE CONSTRUED AS A GENERAL DURABLE POWER OF ATTORNEY AND SHALL CONTINUE TO BE EFFECTIVE EVEN IF I BECOME DISABLED, INCAPACITATED, OR INCOMPETENT.

(YOUR AGENT WILL HAVE AUTHORITY TO EMPLOY OTHER PERSONS AS NECESSARY TO ENABLE THE AGENT TO PROPERLY EXERCISE THE POWERS GRANTED IN THIS FORM, BUT YOUR AGENT WILL HAVE TO MAKE ALL DISCRETIONARY DECISIONS. IF YOU WANT TO GIVE YOUR AGENT THE RIGHT TO DELEGATE DISCRETIONARY DECISION-MAKING POWERS TO OTHERS, YOU SHOULD KEEP THE NEXT SENTENCE, OTHERWISE IT SHOULD BE STRICKEN.)

**Authority to Delegate.** My Agent shall have the right by written instrument to delegate any or all of the foregoing powers involving discretionary decision-making to any person or persons whom my Agent may select, but such delegation may be amended or revoked by any agent (including any successor) named by me who is acting under this power of attorney at the time of reference.

(YOUR AGENT WILL BE ENTITLED TO REIMBURSEMENT FOR ALL REASONABLE EXPENSES INCURRED IN ACTING UNDER THIS POWER OF ATTORNEY. STRIKE OUT THE NEXT SENTENCE IF YOU DO NOT WANT YOUR AGENT TO ALSO BE ENTITLED TO REASONABLE COMPENSATION FOR

SERVICES AS AGENT.)

**Right to Compensation.** My Agent shall be entitled to reasonable compensation for services rendered as agent under this power of attorney.

(IF YOU WISH TO NAME SUCCESSOR AGENTS, INSERT THE NAME(S) AND ADDRESS(ES) OF SUCH SUCCESSOR(S) IN THE FOLLOWING PARAGRAPH.)

**Successor Agent.** If any Agent named by me shall die, become incompetent, resign or refuse to accept the office of Agent, I name the following (each to act alone and successively, in the order named) as successor(s) to such Agent:

_____

_____

**Choice of Law.** THIS POWER OF ATTORNEY WILL BE GOVERNED BY THE LAWS OF THE COMMONWEALTH OF MASSACHUSETTS WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. IT WAS EXECUTED IN THE COMMONWEALTH OF MASSACHUSETTS AND IS INTENDED TO BE VALID IN ALL JURISDICTIONS OF THE UNITED STATES OF AMERICA AND ALL FOREIGN NATIONS.

I am fully informed as to all the contents of this form and understand the full import of this grant of powers to my Agent.

I agree that any third party who receives a copy of this document may act under it. Revocation of the power of attorney is not effective as to a third party until the third party learns of the revocation. I agree to indemnify the third party for any claims that arise against the third party because of reliance on this power of attorney.

Signed this 21 day of May, 2010

_____
Robert N. DeBenedictis

_____

[Notary Seal, if any]:

BRYAN G. PETKANICS
Notary Public, State of New York
No. 31-4901319
Qualified in New York County
Commission Expires June 29, 2011

_____
(Signature of Notarial Officer)

Notary Public

My commission expires: _____

_____

## ACKNOWLEDGMENT OF AGENT

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____
Simon Kimmelman, as Settlement Trustee

1762658 v1

**CERTIFICATE OF ACKNOWLEDGMENT OF NOTARY PUBLIC**

STATE OF _____
COUNTY OF _____

Sworn to (or affirmed) and subscribed before me this _____day of May, 2010 by Robert N. DeBenedictis. The affiant is [choose one:] _____ personally known to me, or _____ produced the following identification: _____.

[Notary Seal, if any]:

_____
(Signature of Notarial Officer)

Notary Public for the State of Florida

My commission expires: _____

---

**ACKNOWLEDGMENT OF AGENT**

BY ACCEPTING OR ACTING UNDER THE APPOINTMENT, THE AGENT ASSUMES THE FIDUCIARY AND OTHER LEGAL RESPONSIBILITIES OF AN AGENT.

_____
Simon Kimmelman, as Settlement Trustee

---

**PREPARATION STATEMENT**

This document was prepared by the following individual:

Robert Hempstead, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102

---

**AFFIDAVIT OF AGENT (ATTORNEY IN FACT)**

STATE OF _____
COUNTY OF _____

Before me, the undersigned authority, personally appeared Simon Kimmelman, ("Affiant"), who swore or affirmed that:

1739226 v2

---

**PREPARATION STATEMENT**

This document was prepared by the following individual:

Robert Hempstead, Esq.
Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102

Schedule A

202 Eighth Ave, NYC
635 Ninth Ave, NYC
654 Ninth Ave, NYC
Chelsea Tomato, Inc.
Ninth Avenue Tomato, Inc.
654 Ninth Avenue Restaurant Corp.
20 Orchard Hill Dr.
638 Bayway Ave, NJ
1077 Elizabeth Ave, NJ
221 East 50th St # 5E
2909 Vistamar, LLC
1164 E Oakland Park Blvd, FL
2301 NE 16th St, FL
3801 N. Ocean Blvd
501 Orton Ave
3016 Windamar Ave
505 Orton, LLC
528 Antioch Avenue
1215 N. Ocean Dr
533 Orton, LLC
Next Printing & Design, Inc.
RND Enterprises, Inc.
RevClick, LLC
620 NE 20th St
2041 NE 9th Ave
3209 Pleasant Ave, NJ
511 Bayshore Drive # 404
2801 Rio Mar St.
543 Breakers Ave
230 East 58th St, NYC
550 NE 20th St, FL
835 NE 18th Ct, FL
Avacor Products, LLC
540 River St, NY
5 Executive Park Dr., NY
3036 El Cajon Blvd, CA
45 Tudor City Pl. # 1618, NYC
321 East 43rd St. # PH12, NYC
Maracas Greenwich Partners, LLC
Maracas Ft. Lauderdale, Inc.
Lips Lauderdale Partners, LLC
321 West 13th St. # 1C NYC
2-4 Bank Street
Cowo, Inc.

River Street Club, Inc.
East Side Club, LLC
House Laundry Inc.
W S Club, LLC
Upstairs, Downstairs of NY Inc.
Hanford & Henderson Management, LLC

Exhibit 2-E

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

Sills Cummis & Gross P.C.
One Riverfront Plaza
Newark, NJ 07102
Attn: Robert Hempstead, Esq.

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## POWER OF ATTORNEY
### (SPECIAL)

WARNING:   THIS DOCUMENT GIVES YOUR ATORNEY-IN-FACT THE POWER
TO ACT FOR YOU IN ANY WAY YOU COULD ACT FOR YOURSELF.  IT MAY
BE IN YOUR BEST INTEREST TO CONSULT WITH AN ATTORNEY TO EXPLAIN
ANYTHING ABOUT THIS FORM THAT YOU DO NOT UNDERSTAND.  YOU
HAVE THE RIGHT TO REVOKE OR TERMINATE THIS POWER OF ATTORNEY
AT ANY TIME.

KNOWN ALL MEN BY THESE PRESENTS:   That: I, Robert N. DeBenedictis, having
an address at 625 Orton Avenue, #7, Ft. Lauderdale, Florida 33304, do hereby appoint
Simon Kimmelman, in his capacity as Settlement Trustee under the Qualifying
Settlement Trust Agreement dated as of May 21, 2010, having an address at c/o Sills
Cummis & Gross P.C., 650 College Road East, Princeton, New Jersey 08540, as my
exclusive, true and lawful Attorney-in-Fact in my capacity, for me and in my name,
continuing until the Qualifying Settlement Trust Agreement has terminated in accordance
with its terms, when this power shall expire, for the special and limited purpose(s) of the
sale of certain assets or property more particularly described on Schedule A hereto, to the
extent such assets or property are located within the State of California.

The powers granted by this Power of Attorney are limited in that they only apply with
respect to and in connection with the assets and property identified on Schedule A hereto
which are located within the State of California, and conversely do not apply to any assets
or property of the Principal other than those listed on Schedule A hereto which are
located within the State of California, and are not to be used in any manner which is
inconsistent with the terms of that certain Qualifying Settlement Trust Agreement dated
as of May 21, 2010.

For such limited and special purposes, said Attorney(s) is/are hereby authorized in
Principal's name, and for Principal's use and benefit:

(A)   to loan, advance, defer payment of, demand, sue for, collect, and receive all sums of money, debts, accounts, legacies, bequests, interests, dividends, annuities, and demands as are now or shall hereafter become due, owing, payable, or belonging to Principal, and take all lawful means in the name of Principal for the recovery thereof and to compromise the same, and give satisfaction, releases or discharges for the same;

(B)   to buy and sell land, exchange, mortgage, hypothecate, foreclose, assign, transfer, convey and in any lawful manner deal in and with land, make contracts of every kind relative to land, any interests therein or the possession thereof, and take possession and exercise control over the use thereof;

(C)   to buy, sell, exchange, mortgage, hypothecate, foreclose, assign, transfer, and in any lawful manner deal in and with goods, wares, and merchandise, choses in action, certificates or shares of capital stock, and other property in possession or in action, and to make, do, and transact all and every kind of business of whatever nature;

(D)   to execute, acknowledge and deliver contracts of sale, escrow instructions, deeds, leases (including both oil and gas and community oil and gas leases), assignments of leases, covenants, agreements, assignments of agreements, mortgages, assignments of mortgages, conveyances in trust to secure indebtedness or other obligations, and assign the beneficial interest thereunder, subordinations of liens or encumbrances, indemnities, bills of lading, bills, bonds, notes, receipts, evidences of debt, requests for partial or full reconveyance of deeds of trust, releases and satisfactions of mortgages, judgments, and other debts, and other instruments in writing of whatever kind and nature, all upon such terms and conditions and under such covenants as said Attorney shall provide.

**GIVING AND GRANTING** to said Attorney full power and authority to do all and every act and thing whatsoever requisite and necessary to be done relative to any of the foregoing as fully to all intents and purposes as Principal might or could do if personally present.

All that the said Attorney shall lawfully do or cause to be done under the authority of this Power of Attorney is expressly approved, ratified and confirmed.

Signature:  Robert N. DeBenedictis

CERTIFICATE OF ACKNOWLEDGEMENT OF NOTARY PUBLIC

STATE OF _____N Y_____ )
COUNTY OF _____N Y_____ )

On _Ma__2/_, 2010, before me, _N Y Notary_____, (here insert
name and title of the officer), personally appeared Robert N. DeBenedictis, who proved to me on the basis
of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

BRYAN G. PETKANICS
Notary Public, State of New York
No. 31-4901319
Qualified in New York County
Commission Expires June 29, 19. 2011

Schedule A

202 Eighth Ave, NYC
635 Ninth Ave, NYC
654 Ninth Ave, NYC
Chelsea Tomato, Inc.
Ninth Avenue Tomato, Inc.
654 Ninth Avenue Restaurant Corp.
20 Orchard Hill Dr.
638 Bayway Ave, NJ
1077 Elizabeth Ave, NJ
221 East 50th St # 5E
2909 Vistamar, LLC
1164 E Oakland Park Blvd, FL
2301 NE 16th St, FL
3801 N. Ocean Blvd
501 Orton Ave
3016 Windamar Ave
505 Orton, LLC
528 Antioch Avenue
1215 N. Ocean Dr
533 Orton, LLC
Next Printing & Design, Inc.
RND Enterprises, Inc.
RevClick, LLC
620 NE 20th St
2041 NE 9th Ave
3209 Pleasant Ave, NJ
511 Bayshore Drive # 404
2801 Rio Mar St.
543 Breakers Ave
230 East 58th St, NYC
550 NE 20th St, FL
835 NE 18th Ct, FL
Avacor Products, LLC
540 River St, NY
5 Executive Park Dr., NY
3036 El Cajon Blvd, CA
45 Tudor City Pl. # 1618, NYC
321 East 43rd St. # PH12, NYC
Maracas Greenwich Partners, LLC
Maracas Ft. Lauderdale, Inc.
Lips Lauderdale Partners, LLC
321 West 13th St. # 1C NYC
2-4 Bank Street
Cowo, Inc.
River Street Club, Inc.
East Side Club, LLC
House Laundry Inc.
W S Club, LLC
Upstairs, Downstairs of NY Inc.
Hanford & Henderson Management, LLC

**EXHIBIT E**

<u>LEGAL NOTICE</u>

# If you bought the Avacor® hair regrowth system, you could get a payment from a class action settlement.

A proposed settlement is pending in a class action lawsuit relating to the marketing and sale of the Avacor hair regrowth system. The lawsuit is entitled *Thomas v. Global Vision Products, Inc., et al.*, Alameda County Superior Court Case No. RG03091195. The defendants include Global Vision Products, Inc., Anthony Imbriolo, David L. Gordon, Robert N. DeBenedictis ("DeBenedictis"), Henry Edelson and Powertel Technologies, Inc. This settlement is with Defendant DeBenedictis only.

### ARE YOU AFFECTED?

You are a class member if you purchased Avacor from January 1, 2000 through April 12, 2007 while you were a California resident.

### WHAT IS THIS CASE ABOUT?

This lawsuit is about whether the defendants violated California's Unfair Competition Law and the California Consumers Legal Remedies Act by making unsubstantiated, false and misleading statements in connection with the marketing and sale of Avacor. The lawsuit also alleges that certain individual defendants used the corporate form of Global Vision Products, Inc. for fraudulent purposes.

### WHAT DOES THE SETTLEMENT PROVIDE?

Class members who submit a timely and valid claim form (enclosed with this notice) will receive $190.00 in cash. DeBenedictis will transfer cash and assets to a Settlement Trust. The cash and assets so contributed by DeBenedictis will be used for the payment of valid and timely class member claims and administrative expenses, including expenses of notice and administration, attorneys' fees and expenses and incentive awards. The settlement also provides for the entry of an injunction prohibiting defendant Robert N. DeBenedictis from advertising or selling Avacor in the State of California unless and until the United States Food and Drug Administration (the "FDA") approves a New Drug Application ("NDA") or an Abbreviated New Drug Application ("ANDA") authorizing the sale of Avacor, including each of its component parts. The settlement also provides the payment by DeBenedictis of attorneys' fees and expenses of up to $10,463,000.

### WHAT ARE MY LEGAL RIGHTS

You have three options:

- **Remain in the settlement class**. If you are a class member and you do not exclude yourself from the settlement class, you will be bound by the terms of the settlement and give up your right to sue regarding issues in this case. You will also have the right to file a claim for $190 in cash. Claims must be received by the settlement administrator on or before December 31, 2010. Claim forms, with instructions for filing, are available at www.avacorlawsuit.com.

- **Request to be excluded**. The Court will exclude you from the settlement class if you mail a request for exclusion to Defendant's Counsel and Class Counsel at the addresses below. Requests must be received by [date].

- **Object to the Settlement**. If you do not exclude yourself from the settlement class, you may object to it by yourself or through an attorney that you hire at your own expense. Objections must be written and mailed to the Court at Clerk of the Court, Alameda County Superior Court, 1225 Fallon Street, Oakland, CA 95612, and Class Counsel and Defendant's Counsel at the addresses below. Objections received by [date] will be considered at the fairness hearing. You will be bound by the terms of the settlement even if your objection is rejected.

The Court will determine whether to approve the settlement at a fairness hearing held on [date]. If you filed an objection through an attorney, your attorney may appear at the hearing to explain your objection.

### HOW CAN YOU GET MORE INFORMATION?

If you have questions or want a detailed notice or other documents about this lawsuit and your rights, visit www.avacorlawsuit.com, or write to: *Avacor Class Action Settlement*, P.O. Box 000, City, ST 00000-0000. Please do not contact the Court concerning this lawsuit.

Class Counsel:
Scott A. Bursor
Law Offices of Scott A Bursor
369 Lexington Avenue, 10th Floor
New York, NY 10017

www.bursor.com

**EXHIBIT F**

## SETTLEMENT AGREEMENT RE: BANKRUPTCY CLAIMS AFFECTING ROBERT N. DEBENEDICTIS

This stipulation and settlement agreement ("Settlement Agreement") is made and entered into this 21st day of May 2010, by and between Robert N. DeBenedictis ("DeBenedictis") and Hobart G. Truesdell, in his capacity as chapter 11 trustee (the "Chapter 11 Trustee") of the estate of Global Vision Products, Inc. ("Global").

WHEREAS, on August 17, 2007, Global filed a voluntary petition for chapter 11 relief with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), Case No. 07-12628 (RDD) (the "Bankruptcy Case");

WHEREAS, on or about July 11, 2008, the Chapter 11 Trustee filed an adversary complaint in the matter entitled: Global Vision Products, Inc. v. Robert DeBenedictis, et al., Adv. Pro. No. 08-01342 (RDD) alleging claims against DeBenedictis and others relating to Triton Technologies, Inc. (the "Triton Case");

WHEREAS, on or about September 26, 2008, DeBenedictis filed an answer in which he denied the allegations made by the Chapter 11 Trustee in the Triton Case complaint and asserted counterclaims against the Global estate;

WHEREAS, on or about November 13, 2009, the Bankruptcy Court issued an order granting summary judgment in favor of DeBenedictis on his first counterclaim providing for an allowed claim against the Global Estate and in favor of DeBenedictis (the "Loan Claim");

WHEREAS, on or about March 13, 2009, the Bankruptcy Court issued an order granting a claim for payment of rent to 227 East 56th Company, LLC, a portion of which remains unpaid (the "Rent Claim");

WHEREAS, on or about July 24, 2009, the Chapter 11 Trustee filed an adversary complaint in the matter entitled: Global Vision Products, Inc. v. Robert DeBenedictis, et al., Adv. Pro. No. 09-01387 (RDD) alleging claims against DeBenedictis and others relating to alleged breaches of fiduciary duty (the "Fiduciary Duty Case");

WHEREAS, on or about November 14, 2008 the Bankruptcy Court approved a settlement by the Global estate with James Thomas (the "Class Representative"), whereby the Class Representative, among other things, was allowed to proceed with his claims against DeBenedictis and others in that certain case in the Superior Court of the State of California, County of Alameda, entitled: *James Thomas v. Global Vision Products, Inc., et al.*, Case No. RG-03-091195 (the "Class Action") and in exchange, a portion of any recovery of the Class Representative in the Class Action would be paid to the Global Estate.

WHEREAS, to avoid the further expense of continued litigation arising from, and related to, the matters that are the subject of the Trustee's claims against DeBenedictis, and DeBenedictis' claims against the Global estate, the parties hereto have reached a compromise and consensual settlement of any and all claims, potential claims and objections thereto that the parties hereto have or may have against each other.

NOW, THEREFORE, in consideration of the mutual covenants, agreements and promises and for other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

1.     <u>Proceeds of the Triton transaction held in escrow</u>.  The Global estate shall receive any and all funds that exist in the escrow account relative to the Triton transaction which is currently frozen by Order of the Bankruptcy Court.

2.     <u>Additional Payment from the Class Action Settlement Trust</u>.  One million dollars ($1,000,000.00) shall be paid to the Global estate pursuant to that certain Stipulation And Settlement Agreement in the Class Action (the "Class Settlement") signed contemporaneously herewith in accordance with the terms stated therein, and subject to the terms of the Qualifying Settlement Trust Agreement (the "Settlement Trust") attached as Exhibit C to the Class Settlement.  Payments from the Class Settlement are the responsibility of Settlement Trust Trustee and not DeBenedictis personally.  The Global estate shall be, assuming the Class Settlement and this Settlement Agreement each receive final approval, a beneficiary of the Settlement Trust and the Global estate's right to any payment pursuant to this paragraph will be limited to the rights of a beneficiary as against a trust.  In the event of a dispute concerning any payment to be made to the Global Estate under this paragraph, said dispute shall be solely between the Global estate and the Settlement Trust Trustee.  DeBenedictis shall have no liability for non-payment of any amount due from the Settlement Trust, is not a necessary party to any dispute regarding such payment or non-payment, nor shall he be made a party to such dispute.  A claim by the Global estate against the Settlement Trust or the Settlement Trust Trustee shall not invalidate or otherwise have any effect on releases exchanged in this Settlement Agreement.

3.     <u>Mutual Release of Claims</u>.  DeBenedictis hereby releases all claims he has asserted, or may assert, known or unknown, against the Global estate including, but not limited to, any filed or scheduled claims and any claims of entities affiliated or associated with DeBenedictis including, but not limited to:  227 East 56th Company LLC (f/k/a 227 East 56th Company), Millbrook Equities, Inc. and Hanford & Henderson Management, LLC (f/k/a Hanford & Henderson Corp.) (collectively, the "DeBenedictis Releasing Parties") except any claims arising from this Settlement Agreement.  The Global estate hereby releases all claims it has asserted, or may assert, known or unknown, against the DeBenedictis Releasing Parties except any claims arising from this Settlement Agreement.  It is expressly understood and agreed that this release is intended to be interpreted broadly and, to the extent there is any ambiguity in the scope of these releases, such release shall be interpreted to be inclusive of any such claim.

4.     <u>Cooperation in prosecuting estate claims against Robert and Enrico Malta</u>.  DeBenedictis will provide reasonable cooperation and assistance in the prosecution of the Global estate's claims against Robert and/or Enrico Malta or any other third party.  Such cooperation and assistance will include (i) providing all documents in his possession, custody or control concerning the merits of the claims in the action, (ii) making himself available to meet with counsel to prepare for trial and for significant pretrial events, and (iii) making himself available to testify without requiring a subpoena or other process, (iv) making himself available to testify or assist as necessary in any post-trial proceedings seeking satisfaction of any judgment that may be obtained.

2

5. <u>Court Approval</u>. The terms of this Settlement Agreement shall be subject to and will not become binding upon the parties hereto until such date (the "Effective Date") as it is approved by the Bankruptcy Court and such order becomes final and non-appealable. Any litigation in the Global bankruptcy case, including without limitation the Triton Case and the Fiduciary Duty Case, shall be stayed as to the DeBenedictis Releasing Parties until the earlier of the Effective Date or the date on which it is determined that this Settlement Agreement has become null and void as set forth in paragraph 10, below.

6. <u>Counterparts</u>. This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A signature transmitted by electronic mail or facsimile shall be deemed an original signature for purposes of this Settlement Agreement.

7. <u>Entire Agreement</u>. This Settlement Agreement shall constitute the entire agreement between the Parties with respect to the subject matter hereof and shall supersede any previous negotiations, commitments, writings, orders or judgments with respect to such subject matter and no provision of this Settlement Agreement may be changed except by a written instrument executed by the Parties. This Settlement Agreement is expressly conditioned on approval of, and incorporates the Class Settlement.

8. <u>Due Authorization</u>. The Parties represent and warrant to each other that this Settlement Agreement has been signed by a duly authorized officer, agent or representative of said party and this Settlement Agreement is binding and enforceable in accordance with the terms hereof. DeBenedictis further represents and warrants that he has the requisite power and authority to bind the DeBenedictis Releasing Parties in the release of claims against the Global estate.

9. <u>9019 Motion.</u> The Chapter 11 Trustee shall file a motion seeking approval of this Settlement Agreement pursuant to Federal Rule of Bankruptcy Procedure, 9019(a) on or before June 1, 2010 (the "Motion"). The Chapter 11 Trustee shall provide counsel for DeBenedictis and counsel for the Class Representative a draft of the Motion and form of order granting same and a reasonable opportunity to review and comment on them. The Motion and order approving the Motion submitted by the Chapter 11 Trustee as contemplated herein shall not be inconsistent with the terms of this Settlement Agreement or the Class Settlement.

10. <u>Final Approval.</u> If the Bankruptcy Court denies final approval of this settlement, this agreement shall be null and void and the parties' shall revert to their respective positions as of the *status quo ante*.

The foregoing is acknowledged and agreed to this 21st day of May, 2010 by:

GLOBAL VISION PRODUCTS, INC.

By: _Hobart G. Truesdell_

Hobart G. Truesdell, Chapter 11 Trustee

Robert N. DeBenedictis, on behalf of himself individually and the DeBenedictis Releasing Parties

3

# EXHIBIT B

1

2

3

IN THE UNITED STATES DISTRICT COURT

4

FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

| | |
|---|---|
| JAMES THOMAS, on behalf of himself and all those similarly situated,<br><br>        Plaintiff,<br><br>     v.<br><br>ROBERT N. DEBENEDICTIS, individually and as Trustee of the Opportunity Trust, THE ROBERT N. DEBENEDICTIS FOUNDATION, ROGER SNYDER a/k/a ROGELIO SNYDER, individually and as Trustee of the Opportunity Trust, GINA HARRISON, as Trustee of the Opportunity Trust, SUSAN MARTINO, individually and as Trustee of the Opportunity Trust, MARYETTA SUNNI PREKUP, individually and as Trustee of the Opportunity Trust, JULIE MARTINO individually and as Trustee of the Opportunity Trust, PAUL GALLUCCIO individually and as Trustee of the Opportunity Trust, AVACOR PRODUCTS, LLC, ANTHONY IMBRIOLO, SEA HOLDINGS, LLC, EAST SIDE CLUB LLC, 230 E. 58th ASSOCIATES, LLC, SUNCHASER PROPERTIES, LLC, 9th AVENUE WILTON MANORS, LLC, B&B REALTY DEVELOPMENT, LLC, HANFORD AND HENDERSON MANAGEMENT, LLC, 234 TOWNHOUSE, LLC, WEST SIDE CLUB, LLC, RIVER STREET CLUB, LLC, CND PROPERTIES, LLC, THE BLUE LAGOON MOTEL, LLC, 3016 WINDAMAR, LLC, 227 E. 56th COMPANY, LLC, 835 RIVER BEND, LLC, 1215, LLC, 511-404, LLC, 511-405, LLC, 505 ORTON, LLC, 533 ORTON, LLC, 543 BREAKERS, LLC, 717 BREAKERS, LLC, 528 ANTIOCH, LLC, 2909 VISTAMAR, LLC, 710 N. BIRTH, LLC, 1164 ASSOCIATES, LLC, HOLLYWOOD ACQUISITIONS, LLC, LORELEI PROPERTY MANAGEMENT, LLC, and JOHN DOES 1-100,<br><br>        Defendants. | Case No.  C09-05664 MHP<br><br>**[PROPOSED]<br>FOURTH MODIFIED TEMPORARY<br>RESTRAINING ORDER** |

**FOURTH MODIFIED TEMPORARY RESTRAINING ORDER**

This Fourth Modified Temporary Restraining Order shall supersede the Third Modified Temporary Restraining Order issued by this Court on February 12, 2010 in the above-captioned matter.

Pending a further hearing on a date to be set by the Court, **ALL ASSETS**, including real and personal property, bank and all other financial or monetary accounts, business receivables, other receivables and business interests including stocks or limited liability interests, **of Robert N. DeBenedictis, the Robert N. DeBenedictis Foundation, and The Opportunity Trust ARE HEREBY FROZEN**. You, your employees and agents, and any other persons acting with you or in your behalf are restrained and enjoined from withdrawing, removing, transferring, assigning, pledging, encumbering, disbursing, dissipating, converting, selling or otherwise disposing of any assets, including but not limited to cash, real and personal property, bank and all other financial or monetary accounts, business receivables, other receivables, and business interests including stocks, or limited liability interests except that the payments referenced in Schedules A-D, annexed hereto, may be made from the bank accounts identified in such Schedules.

Mr. DeBenedictis may also incur reasonable expenses and attorney's fees in the prosecution, defense or compliance with court orders issued in the following actions pending:

In re James Thomas, et al., RG03-091195

In re James Thomas, et al. Case No. C09-05664 MHP

In re Global Vision Products, Inc., Case No. 07-12628 (RDD)

In re 635 9th Avenue Corp., Index No. 603981/07

In re Robert Malta and 654 Restaurant Corp., Index No. 604140/07

In re Robert Malta and Chelsea Tomato Inc., Index No. 604141/07

In re Robert Malta and 635 9th Avenue Corp., Index No. 604142/07

In re Robert Malta and 9th Avenue Tomato Inc., Index No. 604143/07

In re Global Vision Products, Inc., Adv. Proc. No. 08-01342 (RDD)

In re Gross Belsky Alonso LLP, Case No. 08-4666 SBA

1    In re Van De Poel, Levy & Allen, LLP, Case No.: 09-02138 SC (NDCA)

2    In re Global Vision Products, Inc., Adv. Proc. No. 09-01387 (RDD)

3    In re DeBenedictis v. Malta, et al., Index No.: 602537/08

4    In re Cabellero, et al., 09-5875 JSR (SDNY)

5    In re James Thomas, et al., RG0 9482587.

6         Where necessary, portions of the assets, including real and personal property, bank and all

7    other financial or monetary accounts, business receivables, other receivables and business interests

8    including stocks or limited liability interests, made be transferred into the accounts identified in

9    Schedules A-D as necessary to allow Robert N. DeBenedictis, the Robert N. DeBenedictis

10   Foundation or The Opportunity Trust to make the payments allowed by this Order.

11        Nothing herein shall prevent Mr. DeBenedictis from making application to this Court for

12   further modification of this Temporary Restraining Order to address additional personal expenses

13   or expenses of the Robert N. DeBenedictis Foundation and/or The Opportunity Trust not

14   considered by Schedules A-D.

15        . Mr. DeBenedictis' interest in each and every business entity in which he has any interest

16   or ownership shall be frozen.  The business operating accounts shall not be frozen so as to restrain

17   any such business from paying its ordinary business expenses, including without limitation, payroll

18   and wages, trade vendors, utilities and ongoing periodic payments of loans and mortgages to

19   financial institutions.  But such businesses shall be restrained from making any transfers other than

20   ordinary business expenses and shall report no less frequently than monthly by providing the bank

21   account statements within 5 days from receipt.

22

23   **IT IS FURTHER ORDERED THAT:**

24        The restraining order granted herein shall expire on a date to be set by the Court, unless

25   extended by a subsequent order.

26        Mr. DeBenedictis and/or the Robert N. DeBenedictis Foundation and/or The Opportunity

27   Trust shall provide to counsel for plaintiff by e-mail copies of all bank account statements for the

28   bank accounts referenced in Schedules A-D, and all accounts held by entities identified in Mr.

---

[PROPOSED] FOURTH MODIFIED TEMPORARY RESTRAINING ORDER                2
Case No. C09-05664 MHP

1    DeBenedictis' January 13, 2010 declaration (stating the percentage of his interest in each and every

2    business entity in which he has any interest or ownership)  within 5 days of receipt during the

3    period that this Temporary Restraining Order is in force.  Mr. DeBenedictis and all persons acting

4    under his direction or control or on his behalf shall act diligently in providing the bank account

5    statements, and Mr. DeBenedictis shall submit a declaration to the Court by February 19, 2010

6    stating the day of the month that he typically receives bank account statements for each account

7    subject to this order.

8

9    **IT IS FURTHER ORDERED THAT:**

10        The sale or transfer of any asset subject to this Fourth Modified Temporary Restraining

11   Order shall be permitted for purposes of effectuating the settlement of this action, provided

12   (i) plaintiff's counsel provides written consent for the sale or transfer, and (ii) the proceeds of the

13   sale or transfer are deposited in escrow with an escrow agent selected by plaintiff's counsel, or

14   alternatively are held in trust pursuant to the terms of a settlement agreement or settlement trust

15   agreement executed by the parties.

16

17

18   Dated:  _____        _____
                                         THE HONORABLE MARILYN H. PATEL
19                                       UNITED STATES DISTRICT COURT JUDGE

20

21

22

23

24

25

26

27

28

1

## **Schedule A**

2

THE OPPORTUNITY TRUST PROJECTED MONTHLY EXPENSES

3

To be paid from Signature Bank checking # 1500970894

4

5

| RND FOUNDATION | 700.00 |
|---|---|

6

9th Avenue Wilton Manors, LLC

| mortgage | 612.00 |
|---|---|
| utilities | 40.00 |
| re taxes due 11/30 | 3,268.00 |

7

8

B & B Realty Development

| mortgage | 2,170.00 |
|---|---|
| utilities | 80.00 |
| re taxes due 11/30 | 7,792.00 |

9

10

11

511 Bayshore Dr # 404

| maint | 368.00 |
|---|---|
| assess due 11/20 | 713.00 |
| assess due 12/20 | 713.00 |
| mortgage interest | 858.00 |
| re taxes due 11/30 | 4,815.00 |

12

13

14

15

511 Bayshore Dr # 405

| maint | 368.00 |
|---|---|
| assess due 11/20 | 713.00 |
| assess due 12/20 | 713.00 |
| mortgage interest | 1,334.00 |
| re taxes due 11/30 | 4,815.00 |

16

17

18

19

CND Properties, LLC

| monthly overhead | 400.00 |
|---|---|

20

The Blue Lagoon Motel, LLC

| mortgage | 4,792.00 |
|---|---|

21

22

3016 Windamar,LLC

| mortgage | 7,650.00 |
|---|---|

23

835 Riverbend, LLC

| re taxes due 11/30 | 10,290.00 |
|---|---|

24

25

550 NE 20th St, LLC

| re taxes due 11/30 | 23,429.00 |
|---|---|

26

505 Orton Ave, LLC

| mortgage | 4,388.00 |
|---|---|

27

28

533 Orton Avenue, LLC

1

    mortgage                               6,030.00

2

543 Breakers, LLC

3

    mortgage                               3,395.00

4

717 Breakers, LLC

    mortgage                             11,560.00

5

528 Antioch, LLC

6

    re taxes due 11/30                    7,486.00

7

8

1215, LLC

    mortgage                               6,919.00

9

2909 Vistamar, LLC

10

    mortgage                            13,132.00

11

710 No Birch, LLC

    mortgage                             5,171.00

12

    re taxes due 11/30             22,128.00

13

1164 Associates, LLC           6,410.00

14

Hollywood Acquisitions, LLC     5,387.00

15

Lorelei Property Mgmt Group, LLC    3,103.00

16

17

   TOTAL                         181,042.00

18

19

   LESS ONE TIME EXPENSES    (86,875.00)

   (Real Estate Taxes & Assessments)

20

   AVERAGE MONTHLY EXPENSES   94,167.00

21

22

23

24

25

26

27

28

**Schedule B**

ROBERT DEBENEDICTIS PROJECTED MONTHLY BUSINESS EXPENSES

To be paid from Signature Bank checking # 1500875336

9th Avenue Wilton Manors, LLC
| | |
|---|---|
| mortgage | 153.00 |
| utilities | 10.00 |
| re taxes due 11/30 | 817.00 |

B & B Realty Development
| | |
|---|---|
| mortgage | 271.00 |
| utilities | 20.00 |
| re taxes due 11/30 | 1,948.00 |

511 Bayshore Dr # 404
| | |
|---|---|
| maint | 92.00 |
| assess due 11/20 | 178.00 |
| assess due 12/20 | 178.00 |
| mortgage interest | 215.00 |
| re taxes due 11/30 | 1,204.00 |

511 Bayshore Dr # 405
| | |
|---|---|
| maint | 92.00 |
| assess due 11/20 | 178.00 |
| assess due 12/20 | 178.00 |
| mortgage interest | 333.00 |
| re taxes due 11/30 | 1,204.00 |

CND Properties, LLC
| | |
|---|---|
| monthly overhead | 100.00 |

The Blue Lagoon Motel, LLC
| | |
|---|---|
| mortgage | 1,198.00 |

3016 Windamar,LLC
| | |
|---|---|
| mortgage | 1,912.00 |

835 Riverbend, LLC
| | |
|---|---|
| re taxes due 11/30 | 2,572.00 |

550 NE 20th St, LLC
| | |
|---|---|
| re taxes due 11/30 | 5,857.00 |

505 Orton Ave, LLC
| | |
|---|---|
| mortgage | 1,097.00 |

533 Orton Avenue, LLC
| | |
|---|---|
| mortgage | 1,508.00 |

1

2 543 Breakers, LLC
    mortgage                          849.00

3

4 717 Breakers, LLC
    mortgage                        2,890.00

5 528 Antioch, LLC
    re taxes due 11/30              1,872.00

6

7 1215, LLC
    mortgage                        1,730.00

8

9 2909 Vistamar, LLC
    mortgage                        3,283.00

10 710 No Birch, LLC
    mortgage                        1,293.00

11    re taxes due 11/30            5,532.00

12 1164 Associates, LLC             1,602.00

13 Hollywood Acquisitions, LLC      1,347.00

14 Lorelei Property Mgmt Group, LLC   776.00

15

16

    TOTAL                          42,489.00

17

18 LESS ONE TIME EXPENSES         (21,718.00)
    (Real Estate Taxes & Assessments)

19

    AVERAGE MONTHLY EXPENSES       20,771.00

20

21

22

23

24

25

26

27

28

1

## __Schedule C__

2

ROBERT DEBENEDICTIS PERSONAL MONTHLY EXPENSES

3

To be paid from Citibank checking # 64520267 or Signature Bank checking # 1500875336

4

39 Gramercy Park

5
| | | |
|---|---|---|
| | maint | 1,385.00 |
| | cable | 61.00 |

6
| | | |
|---|---|---|
| | phone/internet | 167.00 |
| | electric | 60.00 |

7
| | | |
|---|---|---|
| | equity line interest only | 1,225.00 |

8

99 Red Creek Road
| | | |
|---|---|---|
| | cable | 50.00 |

9
| | | |
|---|---|---|
| | phone | 50.00 |
| | electric | 50.00 |

10
| | | |
|---|---|---|
| | repairs | 75.00 |
| | re taxes due 1/1/10 (est) | 6,000.00 |

11

12

625 Orton
| | | |
|---|---|---|
| | maint | 586.00 |
| | cable | 75.00 |

13
| | | |
|---|---|---|
| | phone | 75.00 |

14
| | | |
|---|---|---|
| | electric | 80.00 |
| | re taxes due 11/30 | 3,490.00 |

15

16

20 Orchard Hill Drive
| | | |
|---|---|---|
| | mortgage | 7,244.00 |

17

279 So Tradewinds Ave
| | | |
|---|---|---|
| | mortgage | 2,403.00 |

18

19

221 East 50th St
| | | |
|---|---|---|
| | maint | 684.00 |
| | electric | 50.00 |

20

21

321 West 13th St
| | | |
|---|---|---|
| | maint | 376.00 |

22

321 E 43rd St
| | | |
|---|---|---|
| | maint | 2,149.00 |

23

24

45 Tudor City Place
| | | |
|---|---|---|
| | maint | 1,084.00 |

25

Auto Insurance                    676.00

26

Credit Cards                      4,275.84

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Other Monthly Expenses
    Airfare to FL (roundtrip)          300.00
    Groceries/Household Items          200.00
    Gas & Auto Exp                     100.00
    Medical Expense                    100.00
    Miscellaneous Spending             250.00
                                                    950.00

              TOTAL                              33,320.84


TOTAL EXPENSES CARRIED FORWARD          33,320.84


LESS ONE TIME EXPENSES                  (13,765.84)
(Real Estate Taxes & Credit Cards)

              SUB TOTAL                          19,555.00

LESS MONTHLY RENTAL INCOME:
    321 E 43rd St                    1,492.00
    45 Tudor City Place                923.00

                                                (2,415.00)


AVERAGE MONTHLY EXPENSES                         17,140.00

1

## **Schedule D**

2

ROBERT N DEBENEDICTIS FOUNDATION PROJECTED MONTHLY EXPENSES

3

To be paid from Signature Bank checking # 1500876677

4

Total Income from The Opportunity Trust

5

Expenses

6

Rent                                          450.00

Phone                                        250.00

7

Pet Project For Pets, Inc. (food -

400 animals)                            3,000.00

8

TOTAL EXPENSES                   3,700.00

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28